**EPSTEIN DRANGEL LLP**
Jason M. Drangel (*pro hac vice forthcoming*)
jdrangel@ipcounselors.com
Ashly E. Sands (*pro hac vice forthcoming*)
asands@ipcounselors.com
60 East 42nd Street, Suite 1250
New York, New York 10165
Telephone:  212-292-5390
Facsimile:   212-292-5391

Peter J. Farnese (SBN 251204)
pfarnese@ipcounselors.com
700 South Flower Street, Suite 1000
Los Angeles, California 90017
Telephone:  310-356-4668
Facsimile:   310-388-1232

Attorneys for Plaintiff,
AirDoctor, LLC

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIRDOCTOR, LLC, a Delaware Limited Liability Company, | CASE NO. 2:23-cv-00353 |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | 1.  VIOLATION OF LANHAM ACT (15. U.S.C. § 1125(a)) |
| LONNI, INC., a Colorado Corporation, SHENZHENSHIDAZHANPENGTUHULI ANWANGYOUXIANGONGSI and JOBA 1, | 2.  VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code, § 17200, et seq.) |
| Defendants. | 3.  VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW (Cal. Bus. & Prof. Code § 17500, et seq.) |
| | **JURY TRIAL DEMANDED** |

CASE NO. 2:23-cv-00353

COMPLAINT

Plaintiff AirDoctor, LLC ("Plaintiff" or "AirDoctor") hereby complains against Lonni, Inc., Shenzhenshidazhanpengtuhulianwangyouxiangongsi and Joba 1 (sometimes hereafter "LINNIW" or "Defendants") and alleges as follows:

## INTRODUCTION

1.      This is an action seeking injunctive relief and damages to halt Defendants' false and misleading advertising of purported "replacement" air filters for Plaintiff's popular AirDoctor 3000 mechanical air purifiers which are designed with a 3-Stage Filtration System, including a UltraHEPA filter that captures the ultra-fine contaminants such as dust, pollen, mold spores, smoke, pet hair, and dander, bacteria and viruses which are sold under Plaintiff's AIRDOCTOR brand and trademark (as defined *infra*) (hereinafter, "AirDoctor Air Purifiers" and "AirDoctor Brand," respectively).

2.      "HEPA" is an acronym for "high efficiency particulate air [filter]" defined by the U.S. Dept. of Energy to "remove at least 99.97% of dust, pollen, mold, bacteria, and any airborne particles with a size of 0.3 microns." (emphasis added).[1]

3.      Plaintiff's genuine UltraHEPA filters, sold under the ULTRAHEPA Mark (as defined infra), are made especially for its AirDoctor Air Purifiers, and are designed to meet or exceed the U.S. Dept. of Energy HEPA standard ("AirDoctor UltraHEPA Filters").

4.      Plaintiff's AirDoctor Air Purifiers have earned the trust of health-conscious consumers, allergy sufferers, and others with medical or respiratory conditions, to provide powerful and effective air filtration for their homes and businesses.

5.      In fact, unlike many competitors, Plaintiff advertises independent third-party laboratory testing showing the AirDoctor Air Purifiers' effectiveness-- allowing consumers to view the testing results on the AirDoctor website, https://airdoctorpro.com/ ("AirDoctor Website").  For instance, AirDoctor advertises that:

[1] https://www.epa.gov/indoor-air-quality-iaq/what-hepa-filter.

a. AirDoctor 3000 is tested and proven to remove 99.97% of the live SARS-CoV-2 virus from the air in a test chamber (*See* **Exhibit B**);

b. AirDoctor 3000 is tested and proven to remove 99.99% of tested bacteria & viruses, including H1N1 (*See* **Exhibit C**);

c. AirDoctor 3000 is tested and proven to capture airborne particles as small as 0.003 microns in size (*See* **Exhibit D**).

6. Plaintiff AirDoctor owns all registered and unregistered intellectual property rights in and to its AirDoctor Brand and AirDoctor Air Purifiers and AirDoctor UltraHEPA Filters, including both registered and unregistered copyrights and trademarks.

7. Plaintiff AirDoctor has protected its valuable rights by filing for, and obtaining, federal trademark registrations covering its AIRDOCTOR and ULTRAHEPA trademark. For example, Plaintiff AirDoctor owns U.S. Trademark Reg. No. 5177385 for AIRDOCTOR in Class 11 ("AIRDOCTOR Registration" and "AIRDOCTOR Mark", respectively)[2] and U.S. Trademark Reg. No. 6300545 for ULTRAHEPA in Class 11 ("ULTRAHEPA Registration" and "ULTRAHEPA Mark", respectively).

8. True and correct copies of the AIRDOCTOR Registration and the ULTRAHEPA Registration are attached hereto as **Exhibit A** and incorporated herein by reference

9. In an effort to profit off Plaintiff's AirDoctor Brand, AIRDOCTOR Mark, ULTRAHEPA Mark, AirDoctor Air Purifiers and AirDoctor UltraHEPA Filters, Defendants have flooded the marketplace with cheap, flimsy filters that they advertise can "replace"; are "compatible with"; and/or "fit" Plaintiff's AirDoctor Air Purifiers; and/or meet the HEPA standard -- but they are neither "compatible with", nor properly "fit" in Plaintiff's AirDoctor Air Purifiers; nor do they meet the HEPA standard.

10. Most troublesome, by advertising that their filters "replace" genuine AirDoctor UltraHEPA Filters, are "compatible with" with AirDoctor Air Purifiers, and/or

[2] The AIRDOCTOR Registration was originally filed by one of Plaintiff's affiliates, Ideal Living Ventures Limited, and was assigned to Plaintiff on December 31, 2018.

are "HEPA" grade filters, Defendants falsely claim that they provide the same filtration performance and efficiency as Plaintiff's AirDoctor UltraHEPA Filters.

11. In truth, Defendants' "replacement", "compatible with" and "HEPA" claims, are demonstrably false. Third-party laboratory testing of Defendants' filters within the AirDoctor Air Purifiers confirms that they are made with ineffective materials that do not meet the minimum HEPA filtration standards, do not properly fit and seal within the AirDoctor Air Purifiers, and can cause inefficient air flow that may damage consumers' AirDoctor Air Purifiers.

12. In short, Defendants' filters do not meet the minimum industry standard for HEPA air filtration and are significantly inferior to genuine AirDoctor UltraHEPA Filters.

13. Defendants' conduct is causing irreparable harm to Plaintiff and its reputation. Further, Defendants are tricking AirDoctor's customers into purchasing Defendants' filters with false promises that they provide the same level of filtration as genuine AirDoctor UltraHEPA Filters.

14. In sum, not only do Defendants' falsely advertised filters decrease performance of the AirDoctor Air Purifiers and can cause damage to consumers' AirDoctor Air Purifiers, but Defendants' conduct poses potentially serious health risks for people with certain medical issues, including those with respiratory and allergy conditions, who rely on the high (HEPA and other) filtration standards and validated third party testing of the AirDoctor Air Purifiers and AirDoctor UltraHEPA Filters.

## PARTIES

15. Plaintiff AirDoctor, LLC is a Delaware limited liability company with its principal place of business in Sherman Oaks, California.

16. Upon information and belief, Defendant Lonni, Inc. ("Lonni") is a Colorado corporation with its principal place of business at 320 S Main St, Hasty, CO, 81044. Defendant Lonni is conducting substantial business throughout the United States, and this District, including on Amazon.com.

17.   Upon information and belief, Defendant Shenzhenshidazhanpengtuhulianwangyouxiangongsi is a China-based entity operating the Amazon.com webstore "Joba 1" with an address of 407, Building 11, Bai Men Qian Industrial Zone, Longgang District, Shenzhen City, Guangdong Province, 518144 China. Defendant Shenzhenshidazhanpengtuhulianwangyouxiangongsi is conducting substantial business throughout the United States, and this District, including on Amazon.com.

18.   Upon information and belief, Defendant Joba 1 is a China-based entity conducting substantial business throughout the United States, and this District, including on Amazon.com.

## JURISDICTION AND VENUE

19.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

20.   This Court has personal jurisdiction over each of the Defendants, each of whom has engaged in business activities in this District and the State of California, offered for sale their replacement filter products in this District and the State of California, knowingly and purposefully directed business activities to this District and the State of California, and availed themselves of the benefits afforded by California laws, and committed tortious acts, knowing that Plaintiff would suffer injuries in this District and the State of California.

21.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. Defendants have conducted, and continue to conduct, business in this District, and a substantial part of the events or omissions, including Plaintiff's injuries, giving rise to the claim occurred in this District.

## STATEMENT OF FACTS

### I.   Plaintiff and Its AirDoctor Air Purifiers

22.   The COVID-19 pandemic, which has now claimed over 1 million lives,

along with the smoke generated by the surge in wildfires, has brought indoor air quality to the forefront for consumers in the last three years.

23.     More than just the COVID-19 pandemic, indoor air quality is critical to the health and wellness of millions worldwide.  In 2019, asthma affected an estimated 262 million people in 2019 and caused 455,000 deaths throughout the world. *See* https://www.who.int/news-room/fact-sheets/detail/asthma.

24.     More than 50 million people across the United States suffer from at least one type of allergy. *See* https://www.aafa.org/allergy-facts/. Allergies are the sixth leading chronic illness in the country.  Many studies show that homes can have more allergens indoors than outdoors.

25.     Plaintiff AirDoctor is a purpose-driven consumer goods company based in Sherman Oaks, California.  Plaintiff's mission is to create affordable and accessible products, relying on science and independent third-party testing.

26.     Plaintiff's research-driven approach helps create the most cutting-edge and effective air filtration solutions for consumers at affordable prices.

27.     One of Plaintiff's most popular and trusted products is its professional-grade AirDoctor Air Purifiers.

28.     Plaintiff has invested millions of dollars in the development and promotion of the AirDoctor Air Purifiers and its AirDoctor UltraHEPA Filters.

29.     The AirDoctor Air Purifiers are mechanical air purifiers that incorporate a 3-Stage filtration system that combines a cleanable pre-filter with AirDoctor's

Total 3-Stage Filtration + Quiet Performance

1. Cleanable Pre-Filter
2. Dual-Action, Carbon/Gas Trap/VOC Filter
3. UltraHEPA™ Filter
4. Whisper-Jet Fans

UltraHEPA filter and proprietary dual-action Carbon/Gas Trap/VOC filter:

30.    The gold-standard of mechanical air filters are so-called "HEPA" filters. As defined by the U.S. Dept. of Energy ("DOE"), high-efficiency particulate air ("HEPA") filters work by forcing air through a fine mesh. Through a combination of diffusion, interception, and impaction, HEPA filters trap harmful airborne particles.

31.    Plaintiff's AirDoctor UltraHEPA Filters capture dust, pollen, pet dander, smoke, mold spores, volatile organic compounds, and household odors with an efficiency exceeding the DOE standard to "remove at least 99.97% of dust, pollen, mold, bacteria, and any airborne particles with a size of 0.3 microns."

32.    Independent laboratory testing of the AirDoctor Air Purifiers and AirDoctor UltraHEPA Filters confirms that they not only meet the HEPA standard (*See* **Exhibits E-F**), but also remove at least 99.99% of particles as small as 0.003 microns (or 100 times smaller than the HEPA standard).

33.    In order to achieve such a high efficiency, Plaintiff designed the AirDoctor Air Purifiers as a sealed system.  A sealed system is critical for air purification because if unfiltered through gaps between the filter and the unit it decreases the effectiveness of the filter and the air purifier.

34.    In order to maintain a sealed system for the AirDoctor Air Purifiers, Plaintiff's genuine AirDoctor UltraHEPA Filter frames are designed and constructed with high-quality plastic and rubber to create an air-tight seal with AirDoctor Air Purifiers' housing to ensure that all the air that passes through the unit is filtered through AirDoctor's 3-Stage filtration system.

35.    In addition to AirDoctor's unique design, consumers choose the AirDoctor Air Purifiers because their performance is backed by rigorous, third-party laboratory testing. AirDoctor is one of the few companies in the industry to test and publish its products' effectiveness in removing bacteria and viruses, including SARS-CoV-2, and H1N1.

36.    The AirDoctor Website allows consumers to view the laboratory test results:

*See* The AirDoctor Website (last accessed: January 13, 2022).

37.    In order to ensure that the AirDoctor Air Purifiers function as designed and maintain a sealed system, Plaintiff recommends that its customers replace the filters in their AirDoctor Air Purifiers approximately once a year or every 6 months, depending on usage or other indoor conditions.

38.    Plaintiff sells genuine replacement AirDoctor UltraHEPA Filters on its the AirDoctor Website and third-party sites such as Amazon.com. *See* **Exhibit G**.

39.    Plaintiff advises consumers that the failure to use Plaintiff's genuine AirDoctor UltraHEPA Filters specifically designed for the AirDoctor Air Purifiers can damage the unit and voids the warranty for the product.

II.    **Defendants' Unfair, Unlawful and Misleading Business Practices**

40.    In an effort to capitalize and profit off the goodwill and success of Plaintiff's AirDoctor Brand, AIRDOCTOR Mark, ULTRAHEPA Mark, AirDoctor Air Purifiers and AirDoctor UltraHEPA Filters, Defendants have flooded the marketplace, chiefly on Amazon.com, with flimsy, cheaply-made replacement filters that Defendants claim are "replacements" or "compatible with" or "fit" AirDoctor Air Purifiers, as well as are

HEPA-grade, in order to trick Plaintiff's customers into purchasing Defendants' filters.

41.    As set forth below, Defendants' filters use ineffective materials and, unlike genuine AirDoctor UltraHEPA Filters, do not create the proper seal in the AirDoctor Air Purifiers because they use frames made of inexpensive paper and foam.  Defendants' use of ineffective materials, coupled with the lack of a proper seal, allows unfiltered air to pass directly between the frame and filter materials, thereby further reducing the ability meet HEPA standards or properly filter when used in the AirDoctor Air Purifiers.

42.    Plaintiff purchased Defendants' filters in this District through Amazon.com and had them tested by an independent third-party laboratory.  The testing confirmed that Defendants' advertising claims are false and Defendants' filters fall well short of the HEPA standard (not to mention AirDoctor's own performance and efficiency standards) when used within the AirDoctor Air Purifiers.

43.    Defendants' have used these false and misleading advertisements for their filters to sell hundreds of thousands of dollars' worth of knockoff filters on Amazon.com, alone.  Defendants' conduct has directly diverted sales of Plaintiff's genuine AirDoctor UltraHEPA Filters from Plaintiff to Defendants and has harmed (and continues to harm) Plaintiff's goodwill and reputation.

44.    Defendants' conduct has directly diverted sales of Plaintiff's genuine AirDoctor UltraHEPA Filters from Plaintiff to Defendants and has harmed Plaintiff's goodwill and reputation.

45.    Defendants market and sell a variety of purported replacement air filters under the "LINNIW" brand on Amazon.com.

46.    On Amazon.com, Defendants operate the storefront, "Joba 1"[3].

47.    On Amazon.com, Defendants advertise that their LINNIW filters are "HEPA" grade, are "premium H13 true HEPA", has "upgraded HEPA smart technology",

---

[3]  *See* https://www.amazon.com/sp?ie=UTF8&seller=A39AOEFQGOYZS1&asin=B0B42SDDWZ&ref_=dp_merchant_link&isAmazonFulfilled=1 (last accessed: January 9, 2023).

are "compatible" and "replace" with Plaintiff's AirDoctor Air Purifiers, and has "perfect compatibility" with the AirDoctor Air Purifier unit.  *See* **Exhibit H**.



48.    Defendants also include the "HEPA" claim on the filters themselves, as well as the product packaging:



49.    In their advertising, labeling, and packaging, Defendants convey the message to consumers that their filters meet the HEPA standard to trap 99.97% of airborne particles with a size of 0.3 microns.  Moreover, by claiming its filters are "compatible" and "fit" AirDoctor units, Defendants indicate that their filters perform just as Plaintiff's genuine replacement filters do within the AirDoctor Air Purifiers, and that they properly fit in the AirDoctor Air Purifiers to maintain a sealed system.

50.   Indeed, consumer comments on Amazon.com confirm that Defendants' advertising conveys the express message to consumers that the imitation filters meet HEPA standards, provide equivalent performance to genuine AirDoctor filters, and fit properly in the AirDoctor Air Purifiers. For example:



*See* Exhibit H (Amazon.com listing).

51.   Further, by using the terms "AIR DOCTOR." and "AD3000" and "Replacement Filters Compatible with AIRDOCTOR 4-in-1 Home Air Purifier AIR DR. AD3000", Defendants' advertising seeks to create a false association with AirDoctor and conveys the express claims to consumers that its filters provide the equivalent performance to AirDoctor UltraHEPA Filters when used in the AirDoctor Air Purifiers.

52.   However, independent, third-party laboratory testing of the LINNIW filter confirms that Defendants' advertising is demonstrably false.   Namely, testing of Defendants' filter confirms that its performance fails to meet the minimum HEPA standard to filter 99.97% of particles as small as 0.3 microns.   *See* **Exhibits I** (test purchase) and **J** (lab testing results).   In other words, the filter does not meet the

performance and efficiency of genuine AirDoctor UltraHEPA Filters, does not "replace" Air Doctor AirDoctor UltraHEPA Filters, and are not "compatible" or "replacements".

53. Defendants' false advertising has harmed (and continues to harm) AirDoctor, its sales, its goodwill and its reputation. Moreover, Defendants have deceived AirDoctor's customers in purchasing filters that Defendants claim are equivalent to genuine AirDoctor UltraHEPA Filters, when they are not.

54. Defendants' conduct has injured AirDoctor, AirDoctor's customers, and placed the health of those customers at risk who depend on their AirDoctor Air Purifiers to perform at the appropriate and advertised efficiency.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF LANHAM ACT
### FALSE ADVERTISING
### (15. U.S.C. § 1125(a))

55. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

56. Plaintiff and Defendants are direct competitors in the market for the sale of air purifier replacement filters for Plaintiff's AirDoctor Brand AirDoctor Air Purifiers.

57. Defendants have used and, on information and belief, continue to use false and misleading descriptions and representations of fact in commercial advertising and promotion about the nature, characteristics, and qualities of their products. Those false and misleading descriptions and representations of fact have deceived or have the tendency to deceive a substantial portion of the relevant purchasing public.

58. As alleged above, Defendants' advertising and promotion of replacement filters for Plaintiff's AirDoctor Air Purifiers contain demonstrably false statements and misrepresentations, which has caused, and continues to cause, Plaintiff to suffer damages to its business and goodwill, loss of sales, and profits it would have made but for Defendants' wrongful acts. These false and misleading statements by Defendants

constitute false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

59.    Defendants cause, and have cause, their false and misleading advertising to enter interstate commerce, including by making false and misleading statements in advertisement and promotional materials to consumers and others in the distribution chain throughout the United States (including this District), including without limitation, on Amazon.com.

60.    Defendants' false and misleading statements are material in that they have influenced and are likely to influence the purchasing decisions of consumers and others in the distribution chain because they relate to inherent qualities or characteristics of Defendants' products.

61.    As a direct and proximate result of the wrongful acts of Defendants as alleged above, Plaintiff has suffered, and will continue to suffer, substantial damage to its business reputation, goodwill, and market share, as well as loss of profits in an amount not yet ascertained.

62.    Defendants' false advertising will continue to harm Plaintiff (and Plaintiffs' customers), causing irreparable injury for which there is no adequate remedy at law, unless permanently enjoined by this Court.

63.    Plaintiff is entitled to monetary damages in the amount of Plaintiffs' actual damages or Defendants' profits resulting from Defendants' false advertising, in an amount to be proven at trial.

64.    Plaintiff is also entitled to an accounting of Defendants' profits resulting from its Lanham Act violations.

65.    Upon information and belief, Defendants' false advertising is willful, knowing, calculated to deceive, and was undertaken in bad faith. As a result, this Court should determine that this is an exceptional case and award Plaintiff enhanced damages, its attorneys' fees, and costs incurred in prosecuting this action.

## COUNT II
## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
### (Cal. Bus. & Prof. Code, § 17200, et seq.)

66.     Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

67.     California Business and Professions Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

68.     As alleged herein, Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions.

69.     For the reasons discussed above, Defendants have engaged in unfair, deceptive, untrue and misleading advertising and unlawful, unfair and fraudulent business practices in violation of California Business & Professions Code §17200. Defendants' conduct caused substantial injury to Plaintiff. Plaintiff has suffered injury in fact and has lost money as a result of Defendants' unfair conduct.

70.     Pursuant to section 17203 of the California Business & Professions Code, BHRS seeks an order of this court enjoining Defendants from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including, but not limited to: (a) selling, marketing, or advertising the Products with false representations set forth above; (b) engaging in any of the illegal, fraudulent, misleading, unlawful, unfair and/or deceptive conduct described herein; and (c) engaging in any other conduct found by the Court to be illegal, fraudulent, misleading, unlawful, unfair and/or deceptive conduct.

71.     In addition, Plaintiff requests that this Court enter such orders or judgments as may be necessary to restore Plaintiff any money which may have been acquired by means of such unlawful, unfair, or fraudulent practices as provided in Business & Professions Code § 17203, and for such other relief as set forth below.

## COUNT III
## VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW
### (Cal. Bus. & Prof. Code, § 17500, et seq.)

72. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

73. As alleged herein, Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions.

74. Defendants violated Business & Professions Code § 17500 by publicly disseminating false and misleading commercial advertising and promotions about the nature, characteristics, and qualities of their products.

75. Defendants' false and misleading advertisements were disseminated to increase the sales of the Products.

76. Defendants knew or should have known that their advertisements for the Products were false and misleading and that those advertisements would induce consumers to purchase the products. Such advertisements have deceived and are likely to deceive the consuming public, in violation of Business & Professions Code § 17500.

77. Defendants are aware, or by the exercise of reasonable care should have been aware, that the representations in the fraudulent product reviews were untrue or misleading.

78. Plaintiff has suffered injury in fact and has lost money as a result of Defendants' false representations and false advertising.

79. Pursuant to Business & Professions Code § 17535, Plaintiff seeks an order of this Court enjoining Defendants from continuing to engage, use, or employ their advertisement and sale of their purported replacements for genuine AirDoctor UltraHEPA Filters.

80. Plaintiff seeks an order requiring Defendants to disclose such misrepresentations, including all prior representations, and additionally requests an order awarding Plaintiff restitution of the money wrongfully acquired by Defendants by means

of said misrepresentations and false advertising.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment against Defendants as follows:

A.      Finding that Defendants have violated the Lanham Act, the California Unfair Competition Law, and the California False Advertising Law;

B.      Entering Judgment in favor of Plaintiff;

C.      Temporarily, preliminarily, and permanently enjoining, restraining, and forbidding Defendants and their principals, servants, officers, directors, partners, agents, representatives, shareholders, employees, affiliates, successors, assignees, and all others acting in concert, or who participates with Defendants, from further violations of the Lanham Act, the California Unfair Competition Law, and the California False Advertising Law as alleged herein;

D.      Requiring Defendants to disseminate, at their sole and exclusive cost, corrective advertising to consumers;

E.      Awarding to Plaintiff actual, compensatory, consequential, statutory, special, and/or punitive damages in an amount to be proven at trial and/or otherwise provided for by law;

F.      Awarding Plaintiff restitution;

G.      Awarding Plaintiff interest, costs, and reasonable attorneys' fees incurred by Plaintiff in prosecuting this action; and

H.      Awarding any and all further relief that this Court deems just and proper.

Respectfully submitted,

DATED: January 18, 2023          EPSTEIN DRANGEL LLP

By:    *s/ Peter J. Farnese*
          Peter J. Farnese

Attorneys for Plaintiff

EPSTEIN
DRANGEL LLP

CASE NO. 2:23-cv-00353

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

DATED: January 18, 2023          EPSTEIN DRANGEL LLP

By:     *s/ Peter J. Farnese*
            Peter J. Farnese

Attorneys for Plaintiff