**EPSTEIN DRANGEL LLP**
Ashly E. Sands (*pro hac vice*)
asands@ipcounselors.com
Danielle Futterman (*pro hac vice*)
dfutterman@ipcounselors.com
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone: 212-292-5390
Facsimile: 212-292-5391

Peter J. Farnese (SBN 251204)
pfarnese@ipcounselors.com
700 South Flower Street, Suite 1000
Los Angeles, CA 90017
Telephone: 310-356-4668
Facsimile: 310-388-1232

*Attorneys for Plaintiff and*
*Non-party Ideal Living Management LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIRDOCTOR, LLC,<br><br>              Plaintiff,<br><br>v.<br><br>LONNI, INC., et al,<br><br>              Defendant. | Case No. 2:23-cv-00353-GW-AS<br><br>**DISCOVERY MATTER**<br><br>***EX PARTE* APPLICATION FOR PROTECTIVE ORDER RE: SUBPOENA TO MYRA NISHIZAKI**<br><br>Judge: Hon. George H. Wu<br>Magistrate: Hon. Alka Sagar<br><br>Deposition Date: September 29, 2025<br><br>Fact Disc. Cutoff: September 30, 2025<br>Expert Disc. Cutoff: November 7, 2025<br>Pretrial Conf: January 29, 2026<br>Trial Date:   February 10, 2026 |

EX PARTE APPLICATION FOR PROTECTIVE ORDER

Plaintiff AirDoctor LLC ("Plaintiff" or "AirDoctor") and non-party Ideal Living Holdings LLC ("Ideal Living"), submit this *ex parte* application for a protective order, or in the alternative to quash, the subpoena issued by Defendants to non-party Myra Nishizaki (returnable on September 29, 2025).

## I. INTRODUCTION

This is a straightforward case involving Defendants' false, misleading and deceptive advertising of Defendants' sub-standard purported "replacement" filters for Plaintiff's popular AirDoctor 3000 mechanical air purifiers. In an attempt to muddy the waters and divert judicial scrutiny of Defendants' suspect and damaging business practices, Defendants issued a subpoena to non-party Myra Nishizaki[1] ("Defendants' Subpoena")—a former employee of Ideal Living who sued the company in 2023 (the "*Nishizaki* Lawsuit") in what is nothing more than a fishing expedition intended to harass Plaintiff. *See* Declaration of Peter Farnese ("Farnese PO Dec.") at Exhibit B.

Defendants' subpoena seeks Ms. Nishizaki's testimony on two "Topics for Examination" based on unfounded allegations she made in the *Nishizaki* Lawsuit that the company and its founders were improperly affiliated with a religious "cult" organization engaged in criminal conduct. As a consequence of her accusations and actions of her boyfriend, David Najar, Ideal Living and its founders were forced to file a complaint against Mr. Najar for extortion and harassment, ultimately obtaining a restraining order against him (the "*Najar* Lawsuit"). *See* Najar Complaint, Farnese PO Dec. at Ex. C. Needless to say, the allegations in the *Najar* Lawsuit speak for themselves. Ultimately, these matters were settled in April 2025. There is no question that neither the *Nishizaki* Lawsuit, nor the *Najar* Lawsuit has anything at all to do with the false advertising claims that form the basis of this action.

---

[1] The date of Ms. Nishizaki's deposition was set for Rosh Hashanah (September 23), one of the holiest Jewish holidays of the year, and Plaintiff's counsel was not available that date. Plaintiff's counsel advised Defendants of this issue and the deposition was rescheduled for September 29, 2025.

1

EX PARTE APPLICATION FOR PROTECTIVE ORDER

Further, any testimony from Ms. Nishizaki on the noticed topics is disproportionate to the needs of the case. Her complaint in the *Nishizaki* Lawsuit (which is the basis of the "Topics for Examination" in Defendants' Subpoena) has absolutely no discussion of the AirDoctor Air Purifiers[2], testing or marketing of the AirDoctor UltraHEPA Filters, or the advertising of "replacement" filters by companies like Defendants. *See Id.* at Ex. D.  Defendants' attempt to drudge up Ms. Nishisaki's accusations in an entirely unrelated litigation is the textbook scenario where courts have recognized that parties have standing to seek a protective order for a non-party subpoena. *In re REMEC, Inc. Sec. Litig.,* No. CIV 04CV1948 JLS AJB, 2008 U.S. Dist. LEXIS 47412, 2008 WL 2282647, at *1 (S.D. Cal. May 30, 2008) ("A party can move for a protective order in regard to a subpoena issued to a non-party if it believes its own interests are jeopardized by discovery sought from a third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to nonparties which seek irrelevant information."); *see also Woodall v. Walt Disney Co.*, No. CV 20-3772-CBM(Ex), 2023 LX 25325 (C.D. Cal. Oct. 10, 2023) (granting party's motion and issuing protective order with respect to non-party subpoenas).

In short, Plaintiff and Ideal Living's application for a protective order should be granted for several reasons:

1. Nothing in the complaint in the *Nishizaki* Lawsuit indicates she has relevant information related to the false advertising claims in this case—Defendants are not entitled to a baseless fishing expedition;

2. Ms. Nishizaki's employment with Ideal Living ended nearly three years ago. Since that time, Plaintiff and Ideal Living have gone through a restructuring in July 2025. *See* Farnese PO Dec. Ex. E at 11:2-18. Therefore, she does not (and cannot) posesses knowledge of the current corporate and/or financial structure of Plaintiff, Ideal Living, or any related companies; nor did she hold a position while

---

[2] All capitalized terms, unless otherwise defined herein, shall be given the definitions set forth in Plaintiff's Complaint or FAC.

EX PARTE APPLICATION FOR PROTECTIVE ORDER

employed by Ideal Living that would have given her knowledge of corporate and/or financial structure of Plaintiff, Ideal Living, or any related companies;

3. Defendants' Subpoena is an improper attempt to circumvent party discovery. Defendants have had the opportunity to question company witnesses on corporate and financial structure issues and, in an attempt to avoid this motion, Plaintiff offered an additional 30(b)(6) deposition on those issues. Defendants declined this proposal.

4. Ms. Nishizaki executed a confidentiality agreement covering any proprietary business and financial information she learned during her employment as part of her employment with Ideal Living—the very testimony sought by the Defendants' Subpoena.

Plaintiff anticipates that Defendants will claim they need this non-party testimony due to the allegedly lacking testimony of Plaintiff's Rule 30(b)(6) witness on corporate structure, but that argument rings hollow as Defendants served Defendants' Subpoena on September 2, 2025 -- the day before Defendants took the deposition of Plaintiff's corporate representative designated for the discussion of corporate structure and related topics. Second, Defendants may attempt to argue that they do not wish to question Ms. Nishizaki on her prior allegations against Ideal Living; but this is directly belied by Defendants' Subpoena, which specifically references those paragraphs in the complaint filed in the *Nishizaki* Lawsuit in which she made false allegations against Ideal Living regarding its and/or its founders' affiliation with a religious "cult" organization engaged in criminal conduct . *See* Farnese PO Decl. at Ex D.

Accordingly, Plaintiff and Ideal Living seek a protective order and/or an order to quash Defendants' Subpoena.  In the alternative, Plaintiff and Ideal Living seek a stay of any deposition of Ms. Nishizaki so that the parties can fully brief these issues under Local Rule 37.

EX PARTE APPLICATION FOR PROTECTIVE ORDER

///

## II. RELIEF SOUGHT

Plaintiff and Ideal Living request the following relief:

1. A protective order for the subpoena to Ms. Nishizaki; or, in the alternative,

2. An order staying the deposition so that the parties can complete full briefing on these issues under Local Rule 37 and 45.

## III.    BRIEF FACTUAL AND PROCEDURAL BACKGROUND

### A. The *Nishizaki* Lawsuit and Related Actions

On September 1, 2023, Ms. Nishizaki filed a complaint against Ideal Living in Los Angeles Superior Court, *see Nishizaki v. Ideal Living*, No. 23VECV03833 (Van Nuys Super. Ct. filed Sept. 1, 2023) pleading various causes of action arising from Nishizaki's employment relationship with Ideal Living. Farnese Dec., Ex. D.  On or about November 15, 2023 the parties to the *Nishizaki* Lawsuit stipulated to an order compelling it to arbitration before JAMS in Los Angeles, California and staying the civil action. *Id.*

On September 26, 2023, Ideal Living and its founders filed a complaint against Ms. Nashizak's boyfriend, David Najar in Los Angeles Superior Court, *see Ideal Living, LLC et al. v David Najar*, 23VECV04262 (Van Nuys Super. Ct. filed Sept. 26, 2023) pleading various causes of action arising from Najar's alleged extortion and harassment. *Id.* at Ex. C.   In a separate action, *Spiegel v. Najar*, No. 23VERO01608 (Van Nuys Super. Ct. filed Sept. 26, 2023) (the "Restraining Order Proceeding"), on January 17, 2024, the Superior Court, after a four-day hearing, entered a restraining order against Najar. In April 2025, the parties in the *Nishizaki* Lawsuit, the *Najar* Lawsuit and the Restraining Order Proceeding reached a settlement agreement, which included a confidentiality provision related to proprietary information stemming from Ms. Nishizaki's employment with Ideal Living. *Id.* at ¶20.

EX PARTE APPLICATION FOR PROTECTIVE ORDER

**B. The Defendants' Subpoena**

On or about September 2, 2025, Defendants served Defendants' Subpoena on Myra Nishizaki. *Id.* at ¶12.  The subpoena seeks the following "Topics of Examination":

1.  You shall testify regarding your personal knowledge of the financial and corporate relationship between Ideal Living and its affiliates as concerns the production and sale of replacement air filters for AirDoctor air purifiers during the relevant period of 2021 through the end of your employment.

2. You shall testify regarding the allegations made in Your Complaint in paragraph 12 and 13 thereof as concerns the financial interrelationship between Ideal Living and its affiliates insofar as same is relevant to the claims and defenses raised in this action.

*Id.* at Ex. B.

On September 5, 2025, Plaintiff sent Defendants correspondence pursuant to Local Rule 37-1 regarding its objections to the subpoena. *Id.* at ¶13. Defendants responded to Plaintiff's letter on September 15, 2025.  *Id.* at ¶14. The parties met and conferred via Microsoft Teams on these issues on September 19, 2025. *Id.* at ¶14. As part of this process, Plaintiff again offered an additional Rule 30(b)(6) witness to be deposed on Plaintiff's financial and corporate structure for the amount of time requested by Defendants' counsel (*i.e.*, 3.5 hours) in exchange for Defendants' agreement to withdraw Defendants' Subpoena[3]; however,  when Plaintiff's counsel sought to confirm this agreement on, September 22, 2025 and September 23, 2025, counsel for Defendant responded that Defendants' intended to hold Ms. Nishizaki's deposition on September 29, 2025. Given Defendants' insistence that Ms. Nishizaki's deposition move forward on September 29, 2025, Plaintiff had no choice but to

---

[3] In fact, Plaintiff had already offered an additional 30(b)(6) witness on the topics of financial and corporate structure as well as profit and lost profits relevant to this action despite the fact that Defendants' were not entitled to an additional witness or additional time by e-mail dated August 22, 2025 and again by e-mail dated August 25, 2025. Counsel for Defendants refused.

EX PARTE APPLICATION FOR PROTECTIVE ORDER

proceed with this *ex parte* application.

## IV.    ARGUMENT

### A. *Ex Parte* Relief is Appropriate

Plaintiff was served with Defendants' Subpoena on September 2, 2025, with the deposition set for September 23, 2025.  Although Plaintiff promptly initiated the meet and confer process pursuant to Local Rules 37-1 and 45 by letter dated September 5, 2025, Plaintiff could not have completed the Local Rule 37 process and had this matter heard on a regularly noticed motion before the scheduled date of the deposition. *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995). Accordingly, Plaintiff is "without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect." *Id.* at 492.

### B. The Court Should Enter a Protective Order, or in the Alternative, Quash Defendants' Subpoena

Courts "must limit" irrelevant, overly broad, unduly burdensome, cumulative or disproportional discovery. Fed. R. Civ. P. 26(b)(2)(C). These requirements apply to discovery between the parties and to subpoenas issued to non-parties. *E.L. by & through Long v. Fernandez*, No. 2:22-CV-01527 DAD AC, 2024 U.S. Dist. LEXIS 133443, 2024 WL 3569377, at *1 (E.D. Cal. July 29, 2024). The Federal Rules provide significant restrictions on discovery when the requesting party proceeds under a third-party subpoena. *See e.g., Dart Industries Co., Inc. v. Westwood Chemical Co., Inc.*, 649 F.2d 646, 649 (9th Cir. 1980) ("While discovery is a valuable right and should not be unnecessarily restricted…the 'necessary' restriction may be broader when a nonparty is the target of discovery.") (*citing Kyle Engineering Co. v. Kleppe*, 600 F.2d 226, 232 (9th Cir. 1979)).

The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1). "A party can move for a protective order in regard to a subpoena issued to a non-party if it believes its own interests are jeopardized by discovery sought from the

EX PARTE APPLICATION FOR PROTECTIVE ORDER

third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information." *In re REMEC, Inc. Sec. Litig*., No. CIV 04CV1948 JLS AJB, 2008 U.S. Dist. LEXIS 47412, 2008 WL 2282647, at *1 (S.D. Cal. May 30, 2008); *Woodall v. Walt Disney Co*., No. CV 20-3772-CBM(EX), 2023 U.S. Dist. LEXIS 209720, 2023 WL 8042734, at *1 (C.D. Cal. Oct. 10, 2023) (granting party's motion for protective order to quash non-party subpoenas that sought information "irrelevant to the parties' claims and defenses" and that were "unreasonably overbroad and disproportionate to the needs of the case").

In the context of subpoenas to non-parties, courts also have inherent discretion to manage discovery and authority to issue a protective order under Rule 26(c). *See Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) ("The district court has wide discretion in controlling discovery."); *McCoy v. Southwest Airlines Co., Inc.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002) ("[U]nder Rule 26(c), the Court may *sua sponte* grant a protective order for good cause shown."); *Coleman v. Schwarzenegger*, Nos. CIV S-90-0520 LKK JFM P, C01-1351 THE, 2007 U.S. Dist. LEXIS 99340, 2007 WL 4276554, at *1 (E.D. Cal. Nov. 29, 2007) ("A protective order may include an order that discovery not be had.") (internal quotation marks and citation omitted).

### i.    *The Testimony of Ms. Nishizaki is Wholly Irrelevant to the Claims and Defenses In this Case and is Not Proportional to the Needs of the Case*

Defendants seek Ms. Nishizaki's deposition on two topics that stem from allegations she made in the *Nishizaki* Lawsuit against Ideal Living.  *See* Farnese PO Dec., Ex. B.

As to the first topic identified in Defendants' Subpoena, Ms. Nishizaki's nothing in the complaint against Ideal Living in the *Nishizaki* Lawsuit indicates that she has any personal knowledge of "the financial and corporate relationship between Ideal Living and its affiliates as concerns the production and sale of replacement air filters for AirDoctor air purifiers during the relevant period of 2021 through the end of [her] employment".  *See id*.   In fact, the complaint in the *Nishizaki* Lawsuit does

EX PARTE APPLICATION FOR PROTECTIVE ORDER

not use the word "AirDoctor" one time.  In other words, this topic is the classic fishing expedition prohibited by the Federal Rules.  *Elgindy v. AGA Serv. Co.*, No. 20CV06304JSTRMI, 2021 U.S. Dist. LEXIS 211772, 2021 WL 5083761, at *3 (N.D. Cal. Nov. 2, 2021) ("the relevance gauge of Rule 26(b) cannot be used as a license to engage in a scattershot, burdensome, or speculative fishing expedition").

With respect to the second topic, the referenced paragraphs of the complaint in the *Nishizaki* Lawsuit referenced in Defendants' Subpoena indicate that this topic seeks information related to her baseless accusations regarding Ideal Living and its founders' alleged relationship with a religious organization. *See* Farnese Dec., Ex. C. Such testimony has no discernable relevance to the parties' claims or defenses, particularly since at present Defendants do not have any claims in this action, and is "unreasonably overbroad and disproportionate to the needs of the case." *Woodall*, 2023 U.S. Dist. LEXIS 209720, 2023 WL 8042734, at *1.  Defendants' attempt to manufacture relevancy by using phrase "as same is relevant to the claims and defenses raised in this action" cannot magically convert the topic into one which is the proper subject of discovery.

Moreover, Plaintiff, Ideal Living and its related companies went through a corporate restructuring in July 2025. Farnese Decl., Ex. E at 55:10-23. Thus, as to both topics, because Ms. Nishizaki left the company in or about February 2023, she cannot have knowledge of the current financial structure, or the ability to offer any testimony that relevant or likely to lead to the discovery of admissible evidence.

### ii. *Ms. Nishizaki Previously Testified that She Lacks Knowledge of the Current State of Business*

Not only does Ms. Nishizaki lack information about the *current* financial and corporate structure of Plaintiff and its affiliates as a result of the recent restructuring, but Ms. Nishizaki's testimony in her February 2025 deposition in the *Najar* Action reflects that she never had knowledge of Plaintiff's or its affiliates' financial and corporate structure. For example, Ms. Nishizaki testified that she had "no idea" as to

EX PARTE APPLICATION FOR PROTECTIVE ORDER

how many individuals currently work at Ideal Living. *See* Farnese Dec., Ex. F at 121:1-12; *see Amini Innovation,* 300 F.R.D. at 408-413 (quashing a non-party subpoena as unduly burdensome where the non-party lacked "personal knowledge about every topic listed in the subpoena" and finding that the value of the non-party's testimony was "low or at best unknown").

### iii. *Defendant Cannot Use a Non-Party Subpoena to Sidestep Party Discovery*

Third-party subpoenas under Fed. R. Civ. P. 45 are subject to the limitations of Fed. R. Civ. P. 26. Fed. R. Civ. P. 26(b)(2)(C)(i).  "In general, there is a preference for parties to obtain discovery from one another before burdening non-parties with discovery requests." *Genus Lifesciences Inc. v. Lannett Co*., 2019 WL 7313047 (N.D. Cal. Dec. 30, 2019) (*citing Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012).  Courts routinely disallow discovery from third parties where the same discovery is easily obtained from a party. *Glass Egg Digital Media v. Gameloft, Inc*., No. 17-cv-04165-MMC-RMI, 2019 U.S. Dist. LEXIS 149896, 2019 WL 4166780, at *5 (N.D. Cal. Sept. 3, 2019); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007). "Courts are particularly reluctant to require a non-party to provide discovery that can be produced by a party." *Amini Innovation,* 300 F.R.D. at 410; *see also Precourt v. Fairbank Reconstruction Corp*., 280 F.R.D. 462, 467 (D.S.D. 2011) ("If the party seeking information can easily obtain the same information without burdening the non-party, the court will quash the subpoena.").

Not only can Defendants obtain discovery on the topics identified in Defendants' Subpoena from Plaintiff, but Plaintiff offered a witness to testify to the same on three (3) different occasions despite the fact that Defendants' were not entitled to an additional witness or additional time, but Defendants refused. *See* Farnese Dec., at ¶14-16, Ex. H. Thus there is no question that given the approaching fact discovery cut-off, Defendants are attempting to use Defendants' Subpoena to end-run party discovery.  To the extent Defendants attempt to argue that they have

EX PARTE APPLICATION FOR PROTECTIVE ORDER

somehow not been able to obtain certain corporate structure information from Plaintiff in discovery, it is telling that Defendants served notice of the subpoena the day before they deposed Plaintiff's 30(b)(6) witness designated on corporate structure issues. Thus, they cannot now argue the subpoena was somehow necessary in light of that deposition.

### iv. *A Protective Order is Appropriate in Light of the Confidentiality Agreement Ms. Nishizaki*

As part of her employment at Ideal Living, in June 2011 Ms. Nishizaki entered into a confidentiality agreement. *See* Dec. of Carlton Newsome at Ex A. Accordingly, the "Topics for Examination" listed in Defendants' Subpoena fall within the scope of this provision as they seek testimony from Ms. Nishizaki regarding proprietary corporate and financial information she learned during her employment. Additional protections are provided by the Federal Rules where such a subpoena seeks "trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(c)(3)(B); Fed. R. Civ. P. 26(c)(1)(G) (court may enter an order requiring that "confidential research, development, or commercial information not be revealed"); *Echostar Comm. Corp. v. The News Corp*., 180 F.R.D. 391, 394 (D. Colo. 1998) (standard for discovery of third party's trade secrets "is heavier than the ordinary burden imposed under Rule 26"). At a minimum, Plaintiff and Ideal Living request the opportunity to provide full briefing on this issue via Local Rule 37 motion.

### C. In the Alternative, the Deposition Should be Stayed Pending Full Briefing in Accordance With Local Rule 37-1

Plaintiff and Defendant have engaged in the meet and confer process under Local Rule 37-1 and 45 related to the subpoena. Given the issues raised herein, the deposition of Ms. Nishizaki should be stayed so that the Parties can fully brief these issues.

## V. CONCLUSION

For the foregoing reasons, Plaintiff and Ideal Living's application should be

EX PARTE APPLICATION FOR PROTECTIVE ORDER

granted.

Dated: September 24, 2025

Respectfully submitted,

EPSTEIN DRANGEL LLP

/s/ Ashly E. Sands
Ashly E. Sands

*Attorneys for Plaintiff and*
*Non-party Ideal Living Management LLC*

11
EX PARTE APPLICATION FOR PROTECTIVE ORDER