# EXHIBIT A

# EXHIBIT A

# CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

This Confidential Information and Inventions Agreement ("Agreement") is entered into by and between Ideal Living Management, LLC ("Company"), and the undersigned employee ("Recipient") (collectively, "Parties"). The "Effective Date" of this Agreement is the earlier of the date on which it is executed by the the Parties or the first date on which Company disclosed, or discloses, to Recipient any "Confidential Information" (as defined below).

## RECITALS

A.   In connection with Recipient's employment by Company, Company has provided or will provide Recipient with access to, or Recipient will otherwise become acquainted with, Confidential Information of Company. Such access to Confidential Information is granted only because it has been deemed essential to Recipient performing the duties of his or her employment.

B.   The business in which Company is engaged is highly competitive, and Company's success is, and will continue to be, based substantially on Company's Confidential Information.

NOW THEREFORE, in consideration for Company allowing Recipient access to Confidential Information, and as an express condition of such access and Recipient's employment or continuing employment by Company, Recipient and Company hereby enter into this Agreement in accordance with the terms below.

## AGREEMENT

1.   <u>Confidential Information Defined.</u> "Confidential Information" means: (a) Company's "trade secrets" as defined in California Civil Code section 3426 et seq. and/or as defined in any applicable jurisdiction; (b) Company's proprietary information; (c) information held in trust or confidence by Company for any third party; and (d) any information relating to Company's business, finances or operations that is not generally known outside of Company. Confidential Information includes, without limitation, information disclosed to Recipient, or known by Recipient, as a direct or indirect result of Recipient's employment with Company, concerning any of the following: Company's trade secrets, technology, current and prospective programs, processes, improvements, research, developments, discoveries, inventions, computer hardware and computer software including, without limitation, source code and object code; Company's current and prospective vendors, suppliers, licensors, licensees and consultants, and the terms of the business relationships between Company and any of them; Company's accounting, sales, marketing and administrative processes and procedures; Company's contemplated trademarks, servicemarks, tradenames and patents; the skills and duties of, and personal information pertaining to, Company's employees; the identities, goals, needs and strategic plans of individuals and entities currently or prospectively served by Company ("Clients"), and the terms on which such Clients do business or seek to do business with Company. Information is Confidential Information whether it is intangible (such as a fact known to Recipient but not recorded), recorded in written form (as in a letter, memo or other document) or otherwise recorded (as in a photograph, film, computer disk or other storage medium). By signing this Agreement, Recipient acknowledges understanding: (i) that the Confidential Information has independent economic value to Company and is not readily ascertainable from public sources;

{00012276}                                                                                            1

Confidentiality & Inventions Agreement
Page 2

(ii) that Company has expended considerable time and effort to develop, compile and protect the secrecy of its Confidential Information; and (iii) that the Confidential Information has been expressly identified to Recipient as a valuable trade secret of Company.

2.    Exceptions to Confidential Information.    Information shall not be Confidential Information if Recipient can document that such information:  (a) is in the public domain through no act or failure to act on the part of Recipient; (b) was lawfully known to Recipient, without any obligation of confidentiality, at the time such information was received from or otherwise disclosed by Company; or (c) was properly disclosed to Recipient by a third party without a breach of any obligation and without restriction, provided that Recipient does not know or have reason to know that such third party was prohibited by contractual, legal or fiduciary obligation from transmitting the information.  Moreover, nothing in this Agreement is intended to or does prevent Recipient from disclosing Confidential Information to the extent such disclosure is required in response to a valid subpoena or other legal process, provided that before making such disclosure, Recipient shall furnish Company with advance notice of such subpoena or other legal process and allow Company sufficient time to obtain, in Company's discretion, an appropriate protective order or otherwise oppose or limit such disclosure.

3.    Safeguarding Confidential Information.    Recipient will hold in confidence and not possess or use any Confidential Information except to the extent actually required to perform the duties of his or her employment with Company, and will not disclose any Confidential Information except as expressly permitted by this Agreement.  Recipient shall not publish, authorize or cause to be published, or otherwise assist or cooperate in the preparation or presentation of, any publication of any kind that includes or makes use of any Confidential Information.  Recipient understands and agrees that all communications in public concerning Confidential Information, even with fellow employees and independent contractors of Company, constitute a breach of this Agreement if such communications might reasonably be overheard by a third party.  Recipient will use Recipient's best efforts at all times to safeguard all Confidential Information from loss, theft, damage and destruction.  Recipient will not reverse engineer or attempt to derive the composition or underlying information, structure or ideas of any Confidential Information, no matter how such Confidential Information was obtained by Recipient.  Recipient hereby acknowledges that Recipient has no right, title or interest in or to any Confidential Information, and no right to make any use of such Confidential Information except as expressly set forth in this Agreement.  Any gain or profit of any kind or nature obtained or derived by Recipient from the use or exploitation of Confidential Information shall be held in trust by Recipient for the express benefit of Company and shall be remitted to Company by Recipient, unless Recipient establishes that such use or exploitation did not violate the terms of this Agreement.

4.    Return of Confidential Information.    Upon the ending of Recipient's employment with Company for any reason, or if requested by Company at any time, Recipient will promptly return to Company all Confidential Information and all copies, extracts and other objects or items in which any Confidential Information is contained or embodied.

5.    Notification of Unauthorized Use.    Recipient will promptly notify Company of any unauthorized use, release or disclosure of Confidential Information.

{00012276}

2

Confidentiality & Inventions Agreement
Page 3

6.    <u>Work Product.</u>

(a)    Company shall be the sole owner, in perpetuity, throughout the universe in any and all languages, of all right, title and interest in and to the results and proceeds of Recipient's services performed for or on behalf of Company ("Work Product"), whether under a current written or oral employment agreement, a prior employment agreement or any other agreement. Such Work Product includes, without limitation, all material of any kind and nature whatsoever — whether tangible or intangible – produced, conceived, developed, acquired, obtained, created and/or furnished by or submitted to Recipient prior to or during Recipient's employment by Company, including without limitation, all materials, ideas, concepts, formats, suggestions, developments, arrangements, packages, computer programs, source code, object code, documentation, plans, drawings, designs, specifications, calculations, renderings, models, prototypes, copyrights and other intellectual property or intangible rights.  Any work in connection with such services shall be considered a "work made for hire" under the Copyright Law of the United States, and Recipient recognizes and agrees that Company is the sole author and copyright holder of such work.  Any Work Product created and/or submitted to Company during Recipient's employment shall automatically become the sole property of Company.

(b)    To avoid any misunderstanding, Recipient has listed on Exhibit A (1) all materials, creations, designs, technology, discoveries, inventions, ideas, information and other subject matter, including, but not limited to, copyrights, trade secrets, patents, trademarks and other intellectual property rights, if any, developed or created by Recipient, alone or with others, before the period of Recipient's employment with the Company in which Recipient claims any ownership or rights, and (2) all agreements or arrangements that may affect the rights to any such subject matter or Recipient's ability to be employed by and perform services for the Company and comply with the requirements of this Agreement.  Recipient acknowledges and agrees that (i) by not listing particular subject matter, Recipient is warranting that the subject matter was not conceived, developed or created before commencement of Recipient's employment, and (ii) by not listing particular agreements or arrangements, Recipient is warranting that no such agreements or arrangements exist.

(c)    To the extent any Work Product is not created as a work-for-hire, Recipient hereby transfers and agrees to transfer and assign to Company all rights and materials related to or comprising the Work Product including, but not limited to, all copyrights and similar protections and renewals and extensions of copyright and any and all causes of action that have accrued or may accrue in Recipient's favor for infringement of copyright.  Recipient shall, at Company's request, execute and deliver to Company such documents or other instruments as Company may from time to time reasonably deem necessary or desirable to evidence, maintain, perfect, protect, enforce or defend Company's right, title and interest in and to the Work Product and to carry out the intent and purposes of this section.  In the event that Recipient fails to promptly execute, acknowledge or deliver to Company any agreements, assignments, quitclaims or other instruments required by Company hereunder, Company is hereby irrevocably appointed Recipient's attorney-in-fact (which agency shall be deemed coupled with an interest) with full right, power and authority to execute, acknowledge, verify and deliver the same in the name of and on behalf of Recipient. Recipient  represents, warrants and agrees that the Work Product is and shall be free and clear of any claims by Recipient (or anyone claiming under Recipient) of any kind or character whatsoever.  Neither the suspension nor termination of Recipient's

{00012276}

3

Confidentiality & Inventions Agreement
Page 4

employment nor the expiration of this Agreement will in any way adversely affect Company's ownership of the Work Product.

(d)    Company shall have the right, but not the duty, to use, adapt and change the Work Product, or any part thereof, and to combine the same with other works, and to vend, copy, publish, reproduce, record, transmit, and to communicate the same by any means now known or hereafter devised, either publicly or otherwise, and for profit or otherwise, throughout the world in perpetuity. Recipient waives any so-called "moral rights" which may now or hereafter be recognized, including, without limitation, any right (i) to approve such revisions, deletions, abridgments or other changes in the Work Product; or (ii) to withdraw the Work Product from distribution. The rights granted herein include, but are not limited to, the right to make foreign versions and translations of the Work Product.

(e)    This Agreement shall inure not only to Company's benefit, but also to the benefit of all parties who may hereafter acquire the right to distribute, exhibit, advertise and/or exploit any Work Product. Company may release the Work Product in which Recipient's services appear under any company name or trademark, trade name, etc., designated by Company.

(f)    Notwithstanding the foregoing, Recipient hereby acknowledges that Company has notified Recipient that any assignment otherwise provided for in this section shall not apply to any invention that qualifies fully for exemption from assignment under the provisions of Section 2870 of the California Labor Code ("Excluded Inventions"), which provides as follows:

> "(a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either: (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer. (b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable."

7.    No Obligation to Disclose. Recipient acknowledges and agrees that this Agreement does not obligate Company to disclose any information to Recipient.

8.    Confirmation Of At-Will Employment; Compliance With Policies. Recipient acknowledges and agrees that: (a) Recipient's employment with the Company is and shall be at all times on an at-will basis, and the Company or Recipient may terminate Recipient's employment at any time, for any reason, with or without cause or advance notice; (b) nothing in this Agreement or in the Company's Employee manuals, handbooks or other written materials create or are intended to create an express or implied contract for employment; (c) nothing in the

{00012276}                                                                          4

Confidentiality & Inventions Agreement
Page 5

Agreement obligates the Company to hire, retain or promote Recipient; (d) all definitions, terms and conditions of this Agreement apply to Recipient only for the purposes of this Agreement, and for no other purpose, and do not alter or otherwise effect the at-will status of Recipient's employment with the Company; and (e) no representative of the Company has any authority to enter into any express or implied, oral or written agreements that are contrary to the terms and conditions of this Agreement or to enter into any express or implied contracts for employment (other than for at-will employment) except for the President of the Company and any agreement between Recipient and the President must be in writing and signed by Recipient and the President.

9.    Provisions relating to Third Parties.

(a)    Recipient represents that Recipient's performance of his or her obligations under this Agreement does not and will not breach any agreement to keep in confidence information acquired by Recipient in confidence or in trust. Recipient has not entered into, and Recipient agrees that Recipient will not enter into, any agreement, either written or oral, in conflict with this Agreement.

(b)    Recipient acknowledges that Company has received, and in the future will receive, from third parties confidential or proprietary information ("Third Party Information") subject to a duty on Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. Recipient will hold in confidence and not possess or use any Third Party Information except to the extent actually required to perform the duties of his or her employment with Company, and will not disclose any Third Party Information except as expressly permitted by this Agreement.

(c)    Recipient will not improperly use or disclose any confidential information or trade secrets, if any, of any former employer or any other person or entity to whom Recipient has an applicable obligation of confidentiality.

(d)    Recipient hereby consents to Company notifying any person or entity for whom Recipient works, now or in the future, of Recipient's obligations under this Agreement.

10.    Equitable Relief. Recipient acknowledges and agrees that due to the unique nature of the Confidential Information, any breach of this Agreement by Recipient would cause irreparable harm to Company for which damages would not be an adequate remedy, and that Company will therefore be entitled to seek injunctive and other equitable relief, in addition to all other remedies available at law, to the extent such remedy is consistent with any arbitration agreement entered into between the Parties.

11.    Continuing Obligation of Confidentiality. Recipient's obligations under this Agreement shall remain in force with respect to any particular Confidential Information during and after Recipient's employment with Company ends unless and until Recipient can document that such information falls into one of the exceptions expressly set forth in Paragraph 2 above.

12.    No Interference. While Recipient is employed by Company and for a period of two years after Recipient ceases to be employed by Company, Recipient will not, without the express prior written approval from the Company's President or CEO, attempt to employ, or solicit for

{00012276}                                                                                     5

Confidentiality & Inventions Agreement
Page 6

employment by Recipient or any third party, any individual who is then employed by Company or who was employed by Company during the 12 months immediately preceding. At no time shall Recipient engage in any of the following conduct: (a) make use of any trade secret or other Confidential Information to solicit or attempt to solicit, on Recipient's own behalf or on behalf of any person or entity other than Company, business from any Company Client; or (b) induce or attempt to induce, on Recipient's own behalf or on behalf of any person or entity other than Company, any consultant, independent contractor, licensee or other third party to sever any existing relationship with Company.

13.    Competing Activities. During Recipient's employment with the Company, Recipient shall not engage in any activity competitive with the Company anywhere in the world, whether or not for compensation. Prohibited activities include, without limitation: providing services or selling products similar to those provided or sold by the Company; offering, or soliciting or accepting an offer to provide such services or to sell such products; or taking any action to form, become employed by, or render assistance to any person or entity seeking to engage in any competitive activity with the Company.

14.    Governing Law. This Agreement is governed by the laws of the State of California without regard to conflicts-of-law principles.

15.    Successors and Assigns. Company may assign this Agreement, in whole or in part, to any third party, and this Agreement and all of the rights granted hereunder shall inure to the benefit of any successors, licensees and assignees. If such assignee assumes in writing the obligations of Company hereunder, Company shall be relieved and discharged from its obligations hereunder; if such assignee does not assume such obligations in writing, Company shall remain secondarily liable. Recipient may not assign this Agreement or delegate any of Recipient's rights, responsibilities or obligations hereunder, in whole or in part, without Company's prior written consent.

16.    Severability. If any provision of this Agreement is adjudged unenforceable, such adjudication shall in no way affect any other provision of this Agreement or the validity or enforcement of the remainder of this Agreement, and the provision affected shall be altered only to the minimum extent necessary to make it conform to the applicable law.

17.    No Waiver. The waiver by either Party of any breach of any provision of this Agreement by the other Party shall not be construed to be a waiver of any other or subsequent breach, nor shall it be construed as a continuing waiver. No waiver shall be effective unless it is set forth in writing and signed by the party against whom enforcement of the waiver is sought.

18.    Attorneys' Fees. The prevailing party in any legal action arising from or relating to this Agreement shall be entitled to recover its reasonable attorneys' fees and costs including those incurred in any related appeal.

19.    Entire Agreement. This Agreement constitutes the entire understanding with respect to the matters addressed herein. To the extent this Agreement conflicts with any provision of any prior or contemporaneous agreement between the Parties, whether oral or written, this Agreement shall supersede such provision and shall govern with respect to such conflict. This Agreement may only be modified or canceled by a writing signed by Recipient and Company's President or CEO.

{00012276}                                                                                          6

Confidentiality & Inventions Agreement
Page 7

20.   Counterparts. This Agreement may be executed in counterparts, each of which is deemed to be an original, but such counterparts together shall constitute one and the same instrument. This Agreement may be signed by facsimile signature, which shall be deemed effective for all purposes.

21.   Survival. The provisions of this Agreement shall survive the ending of Recipient's employment by Company and the assignment of this Agreement by Company to any successor in interest or other assignee.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement.

**IDEAL LIVING MANAGEMENT, LLC**        **"RECIPIENT"**
**"COMPANY"**

By: _____          Signature: _____

Title: _____CFO_____            Printed Name: __Myra Nishizaki__

Date: _____7/8/11_____            Date: ____6/29/11_____

{00012276}                                                          7