# EXHIBIT C

# EXHIBIT C

**STUBBS ALDERTON & MARKILES, LLP**
Michael A. Sherman (SBN 94783)
*masherman@stubbsalderton.com*
Alexander P. Manglinong (SBN 327730)
*amanglinong@stubbsalderton.com*
15620 Ventura Boulevard, 20th Floor
Sherman Oaks California 91403
Telephone: (818) 444-4528
Facsimile: (818) 444-6328

Attorneys for Plaintiffs
IDEAL LIVING, LLC, PETER SPIEGEL and
KATHLEEN WILLIAMS

Electronically FILED by
Superior Court of California,
County of Los Angeles
9/26/2023 4:37 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Salcedo, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| IDEAL LIVING, LLC, a Delaware limited liability company, PETER SPIEGEL, an individual, and KATHLEEN WILLIAMS, an individual,<br><br>        Plaintiffs,<br><br>v.<br><br>DAVID NAJAR, an individual, and DOES 1 through 10, inclusive,<br><br>        Defendants. | CASE NO.   23VECV04262<br><br>**COMPLAINT FOR:**<br><br>1) **CIVIL EXTORTION;**<br>2) **DURESS;**<br>3) **INTENTIONAL INTEFERENCE WITH CONTRACTUAL RELATIONS;**<br>4) **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; AND,**<br>5) **UNFAIR BUSINESS PRACTICE, BUSINESS & PROFESSIONS CODE SECTION – 17200**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs IDEAL LIVING, LLC ("Ideal Living"), PETER SPIEGEL ("Mr. Spiegel") and KATIE WILLIAMS ("Ms. Williams") (collectively "Plaintiffs"), file this Complaint to end a pattern of extortion, duress, harassment, interference with contractual relations, and to redress ongoing unfair business practices, by DAVID NAJAR ("Mr. Najar"), who is the boyfriend of a former Ideal Living employee.

## THE PARTIES

1.      Plaintiff Ideal Living, LLC is a Delaware LLC, lawfully registered to do business in the State of California, with its business location in Sherman Oaks, California.

2.      Plaintiffs Peter Spiegel and Kathleen "Katie" Williams are residents of Los Angeles County, California.

3.      Plaintiffs are informed and believe that Defendant David Najar is a resident of Los Angeles County, California.

4.      The true names and capacities of Defendants sued as DOES 1 through 10 are unknown to Plaintiffs.  Plaintiffs are informed and believe and on that basis allege that these persons are responsible for the harms alleged below.  Plaintiffs will seek leave to amend this Complaint once their true names and capacities are ascertained.

5.      Plaintiffs are informed and believe and thereon allege that each Defendant is now, and at all relevant times was, (i) joint-venturers with each of the other Defendants, (ii) conspiring with and/or working in concert with each of the other Defendants, or (iii) the agent, employee or servant of each of the other Defendants, and in doing the things alleged below, was acting within the course and scope of such concerted activity, employment, agency, servitude or related relationship.

6.      Plaintiffs are further informed and believe and on that basis allege each of the Defendants aided and abetted each of the other Defendants in the commission of the acts alleged herein and/or ratified the acts of each of the other Defendants in the commission of the acts alleged herein.

## FACTUAL BACKGROUND

7.      Mr. Spiegel founded Ideal Living over 20 years ago, a direct-to-consumer marketing company located in Sherman Oaks, California.  One of the first businesses of its kind, Ideal Living (occasionally referred to as "Company") is recognized as a pioneer in the direct-to-consumer industry.  Today, Ideal Living employs over eighty people and is promoted by international healthcare professionals

2

COMPLAINT AND DEMAND FOR JURY TRIAL

and consumers, and still maintains its headquarters locally in Sherman Oaks.  Ideal Living product lines today include its own designed, engineered and manufactured products: "Air Doctor®," – an air filtration system; "AquaTru®,"—a water filtration system for access to clean, healthy and pure drinking water; and "Therabotanics®"—natural supplements for healthier living.

8.    Myra Nishizaki ("Ms. Nishizaki") is a former employee of Ideal Living.  She worked for Ideal Living on and off since 2006, and was most recently employed by Ideal Living from 2019 to 2023. At Ms. Nishizaki's urging, in late 2020, she had persuaded Mr. Spiegel to contract with her boyfriend, Mr. Najar, as a commissioned, outside sales representative for Ideal Living, to sell "Air Doctor®" air purifier units to public schools on an "Enterprise" level.  The outside sales representative position did not work out as either Ideal Living or Mr. Najar expected, it ran its course with below-projected sales activity generated by Mr. Najar, and it was not renewed.  Thereafter, on occasion in 2022 and January 2023, Ms. Nishizaki lobbied other Company executives (*i.e.,* going around Mr. Spiegel) for other potential roles Mr. Najar might play within the Company—but her suggestions did not materialize in another job for Mr. Najar, and to a degree Ms. Nishizaki's efforts to promote Mr. Najar's hiring at the time, were not well received.  At no time did either Mr. Najar or Ms. Nishizaki disclose to Plaintiffs that Mr. Najar's employment background in schools, schooling and educational institutions included charges that in the early 1990's for a period of years he had repeatedly molested a minor, teenage girl in the school he had taught in, in Los Angeles, and had been known by school officials to be a sexual predator—all facts that first came to the attention of Plaintiffs after the events alleged below.

9.    On Tuesday, February 7, 2023, in an early afternoon meeting that Ms. Nishizaki had scheduled with Mr. Spiegel ostensibly to discuss Company product business matters, Ms. Nishizaki accused Mr. Spiegel of having engaged in criminal activities twelve years earlier, accused Mr. Spiegel and Ms. Williams of having covered-up the criminal wrongdoing, accused the Company of having false financial statements, and accused the two of them of concealing the true ownership of Ideal Living and asserted that she knew that the Company was owned and controlled by what she termed a "religious cult." Ms. Nishizaki continued on by telling Mr. Spiegel that she had shared her conclusions with two other Company employees and had persuaded those other employees to follow her lead.  After Ms. Nishizaki had presented this information to Mr. Spiegel, she indicated she was prepared to leave the Company and

COMPLAINT AND DEMAND FOR JURY TRIAL

demanded a substantial severance payment tied to the overall enterprise value of the Company, with Ms. Nishizaki implying that the payment she was demanding was at least in the tens of millions of dollars. By her words and conduct, Ms. Nishizaki conveyed to Mr. Spiegel that she needed an immediate answer by Mr. Spiegel and Ms. Williams agreeing to her demands or that the Company would "collapse" and "would not survive". Mr. Spiegel's response was one of complete bewilderment and surprise, disappointment with Ms. Nishizaki, and strong factual disagreement with all the assertions that Ms. Nishizaki was making (all of which are false). Mr. Spiegel indicated a disinterest in then capitulating to her extortionate demands and instead suggested severe misguidance on Ms. Nishizaki's part and recommending she reconsider everything she had just then conveyed.

10. Shortly after the conclusion of the Spiegel/Nishizaki meeting, mid-afternoon on February 7 Mr. Najar trespassed into Ideal Living's Sherman Oaks headquarters uninvited and accompanied by an employee friendly with Ms. Nishizaki, pounded on the door to Mr. Spiegel's office, in which Mr. Spiegel and a senior executive, Helen Christoni, had been meeting, with the employee proceeding to block the exit to Mr. Spiegel's office, trapping him and Ms. Christoni inside. Mr. Najar physically threatened Mr. Spiegel, and in a profanity-laced tirade yelled aggressively at him inches from his face and said that if Mr. Spiegel did not pay him and Ms. Nishizaki "nine figures," he would follow through on the extortionate demand that Ms. Nishizaki made shortly before. Mr. Spiegel and Ms. Christoni were shocked by Mr. Najar's threats and were placed in great fear for their safety. Ms. Christoni began dialing 911 on her mobile device and moments later Mr. Najar whispered some words into Mr. Spiegel's face then bolted from the conference room. On the following day, February 8, 2023, Mr. Spiegel filed a police report summarizing Mr. Najar's actions with the Los Angeles Police Department.

11. With Mr. Spiegel not having acceded to Ms. Nishizaki and Mr. Najar's extortionate demands/threats, Ms. Nishizaki commenced to unlawfully access Company computer systems to begin to follow through on the extortion by accessing Company information and proceeded to steal Company information. And, following the events of February 7, 2023 alleged above, various Company representatives, as well as Mr. Spiegel and Ms. Williams began to receive cryptic and threatening text messages from various unknown cell phone numbers—which messages continue. These messages include assertions to the effect that someone was going to publish defamatory and false statements, containing

content similar to the extortion practiced on Plaintiffs by Mr. Najar. The anonymous texts cryptically indicated that publication was imminent.

12.   Additionally, beginning in or around July 2023 and continuing with greater frequency to the present, Mr. Spiegel and Ms. Williams have received emails from an ostensible anonymous sender. Similar e-mails have also been directed to other recipients from the Company, including the Company's SVP of Business Development, head of Human Resources, general counsel, an individual with whom the Company contracts to run a call center, and many others. The substance of these emails revolve around a series of recurring false statements, including the following: (1) That Mr. Spiegel and Ms. Williams are tied in to some secret, Hindu "cult" with operations in both the U.S. and India; (2) that the objective of Mr. Spiegel's and Ms. Williams' involvement in the so-called "cult" has been to prey on young women and girls; and (3) that Mr. Spiegel provided assistance and cover twelve years ago in 2011 to assist a criminally charged clergyman to enable him to flee the country after his conviction for sex crimes.

13.   In connection with these false claims, these ostensibly anonymously sent emails have also stated that (1) the sender is on the cusp of exposing all of these claims and bringing them to the attention of the world-wide media (many references to specific media sources including prominent attorneys such as Gloria Allred and prominent journalists such as Ronan Farrow) with the net effect being that Ideal Living will be destroyed; (2) in addition to media exposure the e-mail sender plans on contacting criminal authorities and the FBI; (3) the sender plans on directly contacting Ideal Living's social media/internet influencers (i.e., persons with whom Ideal Living maintains contractual business relationships, who assist in the marketing of Ideal Living's products); and (4) the only way Plaintiffs can stop this is by getting a "NDA"/non-disclosure agreement, and making a substantial, multi-million dollar payment.

14.   The text messages and emails are a follow up on Mr. Najar's prior of threats of extortion, meant to harm their business. On information and belief, Mr. Najar is either the sender of these text messages and emails, or his agents and those acting in concert with his, are the senders of said messages.

15.   On Tuesday, September 19, 2023, Mr. Spiegel also received a voice mail message from a person who identified himself as "David" and whose voice Mr. Spiegel recognized to be Mr. Najar's voice, with Mr. Najar's phone number associated with it. In this message, Mr. Najar stated that he would contact social media influencers with whom Ideal Living did business about "really, really bad new things"

concerning Mr. Spiegel if he did not call Mr. Najar back by 3:00 p.m. the following day, and implied in his message that he had been "casing" Mr. Spiegel and Ms. Williams' home residence. Mr. Najar followed up on this voicemail by sending Mr. Spiegel a text message stating "hi friend, check your voice messages . i'm here. I see you. [sic]" Mr. Spiegel perceived this voicemail and this message to be a continuation of Mr. Najar's campaign of terror to harm him, Ms. Williams, and Ideal Living, and to extort money from them under the threat of violence and publishing of defamatory and false statements.

16. More recently, Mr. Najar has begun to execute on his threats against Plaintiffs by, among other things, sending false and defamatory information about Plaintiffs to Plaintiffs' social media influencers, and posting defamatory content on the social media pages for Ideal Living and its influencers. After taking these actions, on Friday, September 22, 2023, Mr. Najar sent Mr. Spiegel and Ms. Williams another email in which he threatened to continue to release false and defamatory information concerning Plaintiffs, stating "I will not stop. So reply. Call me. My phone is on. Stop this now. It can go away." Over this past weekend, Saturday September 23 and Sunday September 24, Mr. Najar threatened to and ultimately acted to interfere with Mr. Spiegel's and Ms. Williams religious observances, and of fellow Hindu worshipers.

## **FIRST CAUSE OF ACTION**

### **(Civil Extortion)**

(By all Plaintiffs Against all Defendants)

17. Plaintiffs reallege and incorporate by reference each of the allegations contained in paragraphs one through sixteen of this Complaint, as if fully set forth herein.

18. As described in more detail above, on February 7, 2023, Mr. Najar personally extorted and threatened Plaintiffs that unless money was paid to him and Ms. Nishizaki pursuant to their demands, he would publish false and defamatory statements concerning Plaintiffs. Mr. Najar's agent Ms. Nishizaki then began to follow through on the object of the extortion by stealing Company confidential documents. Following Mr. Najar's actions on February 7, 2023, Mr. Najar further followed up on these threats by sending Plaintiffs threatening text messages and emails, which messages continue. Additionally, on Tuesday, September 19, 2023, Mr. Najar left Mr. Spiegel a voice mail message threatening to disclose

COMPLAINT AND DEMAND FOR JURY TRIAL

"really, really bad" information concerning Mr. Spiegel to Ideal's Living's business partners if he did not call him back the following day.

19.    Defendants intended to use the fear of exposure of false accusations, threats of criminal prosecution, and threat of physical harm to induce Plaintiffs to pay them substantial sums of money (and when they demurred, to steal Company confidential information).

20.    As a result of Defendants' acts of extortion, Plaintiffs have suffered damages, including but not limited to, the attorneys' fees incurred to respond to and mitigate the harm of the extortion, all in an amount to be determined according to proof.

21.    Further, Defendants' actions were taken willfully, maliciously and with a conscious and reckless disregard for Plaintiffs' rights, such as to constitute oppression, fraud or malice, entitling Plaintiffs to exemplary and punitive damages in an amount appropriate to punish or set an example of Defendants and to deter such conduct in the future.

## SECOND CAUSE OF ACTION

### (Duress)

(By all Plaintiffs Against all Defendants)

22.    Plaintiffs reallege and incorporate by reference each of the allegations contained in paragraphs one through sixteen of this Complaint, as if fully set forth herein.

23.    As described in more detail above, on February 7, 2023, Mr. Najar personally extorted and threatened Plaintiffs that unless money was paid to him and Ms. Nishizaki pursuant to their demands, he would publish false and defamatory statements concerning Plaintiffs.  Following Mr. Najar's actions on February 7, 2023, Ms. Nishizaki began to follow through on the object of the extortion by stealing Company confidential documents.  Mr. Najar followed up on these threats by sending Plaintiffs threatening text messages and emails, which messages continue.  Additionally, on Tuesday, September 19, 2023, Mr. Najar left Mr. Spiegel a voice mail message threatening to disclose "really, really bad" information concerning Mr. Spiegel to Ideal's Living's business partners if he did not call him back the following day.

24.    Defendants intended to use the fear of exposure of false accusations, threats of criminal prosecution, and threat of physical harm to induce Plaintiffs to pay them substantial sums of money.

///

25.    As a result of Defendants' acts constituting duress, Plaintiffs have suffered damages, including but not limited to, the attorneys' fees incurred to respond to and mitigate the harm of the duress practiced on them, all in an amount to be determined according to proof.

26.    Further, Defendants' actions were taken willfully, maliciously and with a conscious and reckless disregard for Plaintiffs' rights, such as to constitute oppression, fraud or malice, entitling Plaintiffs to exemplary and punitive damages in an amount appropriate to punish or set an example of Defendants and to deter such conduct in the future.

## THIRD CAUSE OF ACTION

### (Intentional Interference with Contractual Relations)

(By Ideal Living Against all Defendants)

27.    Plaintiff realleges and incorporates by reference each of the allegations contained in paragraphs one through sixteen of this Complaint, as if fully set forth herein.

28.    Plaintiff enjoys and is benefitted by contracts and business relationships with Ideal Living's social media/internet influencers.  These influencers assist in the marketing of Ideal Living's products through affiliate marketing and social media awareness campaigns.

29.    Defendants know of the existence of these contracts and business relationships.

30.    Defendants' conduct alleged herein, including contacting Plaintiff's influencers in the unprivileged manner herein alleged, has been undertaken intentionally by Defendants, with the net effect of thereby preventing performance of these contracts and business relationships, and/or making performance more expensive or difficult.

31.    Plaintiff has been harmed by Defendants' conduct alleged herein.

32.    Defendants' conduct was a substantial factor in causing Plaintiff's harm.

33.    Further, Defendants' actions were taken willfully, maliciously and with a conscious and reckless disregard for Plaintiff's rights, such as to constitute oppression, fraud or malice, entitling Plaintiff to exemplary and punitive damages in an amount appropriate to punish or set an example of Defendants and to deter such conduct in the future.

/ / /

/ / /

COMPLAINT AND DEMAND FOR JURY TRIAL

# FOURTH CAUSE OF ACTION

## (Intentional Infliction of Emotional Distress)

### (By Mr. Spiegel and Ms. Williams Against all Defendants)

34. Plaintiffs reallege and incorporate by reference each of the allegations contained in paragraphs one through sixteen of this Complaint, as if fully set forth herein.

35. Defendant engaged in extreme and outrageous conduct, as described in more detail above. In particular, Mr. Najar (1) criminally trespassed on the Company's offices to assault Mr. Spiegel and , Ms. Christoni, (2) personally extorted and threatened Plaintiffs that unless money was paid to him and Ms. Nishizaki pursuant to their demands, he would publish false and defamatory statements concerning Plaintiffs; (3) followed up on these threats by sending Plaintiffs threatening text messages and emails, which messages continue; 4) left Mr. Spiegel a voice mail message on September 19, 2023 threatening to disclose "really, really bad" information concerning Mr. Spiegel to Ideal's Living's business partners; and (5) left Ms. Williams a voice mail message on September 21, 2023 threatening to take action that Ideal Living "the company is going to go away, the company is going to go away …it's all over."

36. By their conduct, Defendants intended to cause Mr. Spiegel and Ms. Williams emotional distress.

37. As a direct and proximate result of Defendants' conduct, Mr. Spiegel and Ms. Williams have suffered physical and great mental distress.

38. Further, Defendants' actions were taken willfully, maliciously and with a conscious and reckless disregard for Plaintiffs' rights, such as to constitute oppression, fraud or malice, entitling Plaintiffs to exemplary and punitive damages in an amount appropriate to punish or set an example of Defendants and to deter such conduct in the future.

# FIFTH CAUSE OF ACTION

## (Unfair Business Practice, Business & Professions Code Section – 17200)

### (By all Plaintiffs Against all Defendants)

39. Plaintiffs reallege and incorporate by reference each of the allegations contained in paragraphs one through sixteen of this Complaint as if fully set forth herein.

40.     Business and Professions Code section 17200 prohibits unfair competition that takes the form of any unlawful, unfair or fraudulent business act or practice.

41.     Defendants committed unfair, unlawful and fraudulent business practices, prohibited by Business and Professions Code §§17200, *et. seq.*, by engaging in conduct including but not limited to the following:

a.   Committing acts of criminal trespass and assault.

b.   Threatening to publish false and defamatory statements concerning Plaintiffs if Plaintiffs did not pay a substantial sum of money in response to Defendants' demands.

c.   Defendants' participation in the sending of threatening and harassing texts, emails, and voice mail messages.

42.     By reason of Defendants' unfair, unlawful and fraudulent business practices, Defendants are entitled to restitution of all property that Defendants have unlawfully acquired.

43.     By reason of Defendants' unfair, unlawful and fraudulent business practices, Defendants should be both preliminarily and permanently enjoined from continuing to engage in these wrongful acts.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

10

COMPLAINT AND DEMAND FOR JURY TRIAL

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. For temporary restraining orders, and preliminary and permanent injunctive relief enjoining the wrongful and criminal misconduct;

2. For actual and consequential damages in an amount to be proven at trial;

3. For punitive damages;

4. For restitution;

5. For reasonable attorneys' fees;

6. For costs of suit;

7. For prejudgment interest; and

8. For all such other relief as the Court deems fair and equitable.

DATED:  September 26, 2023

**STUBBS ALDERTON & MARKILES, LLP**

By: _____
Michael A. Sherman
Alexander P. Manglinong

Attorneys for Plaintiffs
IDEAL LIVING, LLC, PETER SPIEGEL and
KATHLEEN WILLIAMS

11
COMPLAINT AND DEMAND FOR JURY TRIAL

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial as to the causes of action set forth in the Complaint.

DATED:  September 26, 2023

**STUBBS ALDERTON & MARKILES, LLP**

By: _____

Michael A. Sherman
Alexander P. Manglinong

Attorneys for Plaintiffs
IDEAL LIVING, LLC, PETER SPIEGEL and
KATHLEEN WILLIAMS

COMPLAINT AND DEMAND FOR JURY TRIAL