Jie Li (SBN 354432)
Tianyu Ju (SBN: 323817)
Glacier Law LLP
251 South Lake Ave Suite 910
Pasadena, California 91101
Telephone: 312.448.7772
Facsimile: 312.801.4587
Email: iris.ju@glacier.law
        jie.li@glacier.law

Dandan Pan (PHV admitted)
Glacier Law LLP
41 Madison Avenue, Ste. 2529
New York, NY 10010
Telephone: 212-927-5033
Email: dandan.pan@glacier.law

Kevin J. O'Connor (PHV admitted)
Peckar & Abramson, P.C.
70 Grand Avenue
River Edge, NJ 07661
Telephone: (201) 343-3434
Email: koconnor@pecklaw.com
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIRDOCTOR, LLC, a Delaware Limited Liability Company,<br><br>    Plaintiff,<br><br>    v.<br><br>LONNI, et al.,<br><br>    Defendants. | Case No.: 2:23−cv−00353−GW−AS<br><br>**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO *EX PARTE* APPLICATION FOR PROTECTIVE ORDER**<br><br>Judge: Hon. George H. Wu<br>Magistrate: Hon. Alka Sagar<br><br>Deposition Date: September 29, 2025<br>Fact Discovery Cutoff: September 30, 2025 |

-1-

DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION FOR PROTECTIVE ORDER

# TABLE OF CONTENTS

**I.    INTRODUCTION.** ................................................................................5

**II.   LEGAL STANDARD**...........................................................................8

   **A.   Movants Have Abused the *Ex parte* Procedure by Fabricating an Emergency of Their Own Making.**.......................................................8

   **B.   Movants Lack Standing To Move To Quash the Subpoena**.......................9

   **C.   Neither Movants' Attempt to Quash the Subpoena Nor Their Protective Order Argument Has Merit**.................................................................11

   **D.   Movants Unduly Delayed, and Have Waived, Objections to the Subpoena by Changing the Grounds Upon Which They Objected to the Subpoena, and then Passing the Statutory Deadline.** ...................................16

**III.   CONCLUSION**..................................................................................17

DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION FOR PROTECTIVE ORDER

# TABLE OF AUTHORITIES

**CASES**

*California Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*,
   299 F.R.D. 638 (E.D. Cal. 2014) ...................................................................9

*Clark v. Time Warner Cable*,
   No. CV–07–1797–VBF(RCx), 2007 WL 1334965 (C.D. Cal. May 3, 2007)...5, 8

*Creative Gifts, Inc. v. UFO*,
   183 F.R.D. 568 (D.N.M.1998) ......................................................................17

*Doe v. Princeton Univ.*,
   349 F.R.D. 92 (D.N.J. 2025) .........................................................................12

*Eclat Pharms., LLC v. West-Ward Pharm. Corp.*,
   2014 WL 12607663 (C.D. Cal. March 26, 2014) .................................................11

*ELT Sight, Inc. v. EyeLight, Inc.*,
   2019 WL 7166063 (C.D. Cal. Oct. 29, 2019)......................................................8

*Erickson v. Microaire Surgical Instruments LLC*,
   No. C08-5745BHS, 2010 WL 1881946, at (W.D. Wash. May 6, 2010).10, 11, 12

*Gonzales v. Google, Inc.*,
   234 F.R.D. 674 (N.D.Cal.2006)....................................................................16

*Horne v. Wells Fargo Bank, N.A.*,
   969 F. Supp. 2d 1203 (C.D. Cal. 2013) .......................................................5, 9

*Id.*..............................................................................................................8

*In re DG Acquisition Corp.*,
   151 F.3d 75 (2d Cir.1998)............................................................................17

*In re Intermagnetics Am., Inc.*,
   101 B.R. 191 (C.D. Cal. 1989) ......................................................................5

*In Re Rule 45 Subpoena Issued to JP Morgan Chase Bank, N.A.*,
   319 F.R.D. 132 (S.D.N.Y 2016) ....................................................................9

*Mission Power Eng'g Co. v. Continental Cas. Co.*,
   883 F. Supp. 488 (C.D. Cal. 1995) ...............................................................8

*Nicholson v. City of Los Angeles*,
   2017 WL 10575213 (C.D. Cal. Jan. 4, 2017) ..................................................9

*Pennwalt Corp. v. Durand–Wayland, Inc.*,
   708 F.2d 492 (9th Cir.1983) ........................................................................17

DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION FOR PROTECTIVE ORDER

*S.M. v. Tamaqua Area Sch. Dist.*,
    2023 U.S. Dist. LEXIS 93017, 2023 WL 3689607 (M.D. Pa. May 26, 2023)....12

**STATUTES**

Cal. Code of Civil Procedure § 1001 ........................................................................11

**RULES**

Fed. R. Civ. P. 26(b)(1) .........................................................................................12

Fed. R. Civ. P. 45(c)(2)(B)......................................................................................16

Fed. R. Civ. P. 45(c)(3)(A)....................................................................................9, 16

DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION FOR PROTECTIVE ORDER

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Defendants, Lonni, Inc. ("Lonni"), Shenzhen Dazhan Pengtu Internet Co., Ltd. ("Dazhan"), Shenzhen Mingdao Youshu Ecommerce Co., Ltd. ("Mingdao") and Dongguanshilianruizhongxinwangluokejiyouxiangongsi ("Lianrui") (collectively, "Defendants"), by and through their counsel, hereby respectfully submit this Memorandum of Law in opposition to an *ex parte* application for a protective order, or in the alternative to quash, a subpoena issued nearly a month ago on non-party Myra Nishizaki.  This application by Plaintiff Airdoctor, LLC ("Plaintiff" or "AirDoctor") and non-party Ideal Living Management LLC's ("Ideal Living", along with AirDoctor, "Movants") is just the latest salvo in a months' long effort by Movants to obfuscate, frustrate and delay the search for truth as concerns Plaintiff's baseless claims of false advertising.

### I.    <u>INTRODUCTION.</u>

This motion is *not* an emergency—it is litigation gamesmanship, and Plaintiff's tactics literally know no bounds at all. Movants have filed a motion that is replete with outright false information, half-truths, and misrepresentations. Movants have manufactured the timing pressure concerning a subpoena they received nearly a month ago, and then waited to invoke the extraordinary *ex parte* procedure to exploit the discovery deadline and block a deposition they cannot defeat on the merits.

*Ex parte* relief is "nearly always improper," and is available only upon a showing of irreparable prejudice and an absence of fault in creating the crisis. *In re Intermagnetics Am., Inc.*, 101 B.R. 191, 192–93 (C.D. Cal. 1989); *Horne v. Wells Fargo Bank, N.A.*, 969 F. Supp. 2d 1203, 1205 (C.D. Cal. 2013); *Clark v. Time Warner Cable*, No. CV–07–1797–VBF(RCx), 2007 WL 1334965 (C.D. Cal. May 3, 2007).  This motion satisfies none of these standards, as shown by even a cursory glance at the case law cited by Movants which, in every respect, commands denial of this application.

DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION FOR PROTECTIVE ORDER

The record is clear and undisputed. Defendants served a third-party subpoena on September 2, 2025, noticing the deposition for September 23, 2025. (Dkt. 183-5.) Plaintiff waited until September 5, 2025 to send a Rule 37 letter (Dkt. 183-10) in which it took the position that Ms. Nishizaki could not testify to the subjects in the subpoena because such matters were "privileged". Defendants responded on September 15, 2025 –the very deadline asked for by Plaintiff. (*Id*.; Declaration of Kevin J. O'Connor ("O'Connor Decl."), Ex. A). To accommodate a request by Plaintiff's counsel on account of a religious holiday, Defendants agreed to reschedule the deposition to September 29, 2025, and have confirmed that date with the witness. (Dkt. 183-11 at 4–5.)

During the September 18, 2025 meet-and-confer, Defendants were asked to consider withdrawing the subpoena without prejudice, provided that Plaintiff promptly identified and made available for deposition on a convenient date, a fully prepared and competent witness to testify on the Rule 30(b)(6) topics that Plaintiff's previously produced corporate designees wholly failed to address. This was confirmed in an email the very next day. (*Id*.) Plaintiff, however, stalled until September 23, 2025, and offered only a vague "half-day slot" without disclosing a witness name, on a date in October 2025 falling well after the fact-discovery cutoff. (*Id.* at 2.) It then raced off to Court with this *ex parte* application, when it was explained to them that this "proposal" was unworkable and not in keeping with what was offered to them.

Plaintiff "buries the lead" in its motion when it tells the Court that it anticipates hearing from Defendants that Plaintiff's corporate deposition designees were woefully unprepared and lacked knowledge on virtually every subject imaginable. That is a gross understatement of the obfuscation and delay we have seen in this case. (*Id.* at 3, 5.; O'Connor Decl. ¶¶ 3-20) This is a quintessential "self-created emergency" that Local Rule 37 expressly forbids. Movants' inexplicable delay and their deliberate choice to frame this as an *ex parte* motion confirm that this

is a calculated tactic, not a genuine emergency. As this Court has emphasized: "Absent an emergency, *ex parte* applications are not an acceptable method of bringing a discovery dispute to the attention of the Court." The application should therefore be denied.

Even more troubling, Movants' maneuver is a transparent attempt to evade a fatal threshold defect: they lack standing to quash a third-party subpoena. Defendants advised Plaintiff of this bar, and the sheer folly of Plaintiff's prior (but since abandoned) claim that Ms. Nishizaki was somehow being asked to provide "privileged" information. (*See* O'Connor Decl., Ex. A.)  In response, Plaintiff simply rebranded their request as one for a "protective order" and sprinted, *ex parte*, to try to run out the clock. By proceeding in this manner,  Movants undoubtedly sought to accelerate briefing and convince the Court to issue an Order stopping the deposition on a scant, and rushed, record.

Further, despite the fact that the subpoena makes clear that the witness' testimony is sought on relevant topics (Dkt. 183-5 at 8)—which Movants themselves expressly acknowledge (Dkt. 183-1 at 4:8–10)—and despite repeated notice from Defendants' counsel confirming this scope (Dkt. 183-11 at 3, 5, O'Connor Decl. ¶¶16, 20), Movants now misrepresent the record by asserting that Defendants seek to probe prior allegations of discrimination by this long-standing employee of Movant Ideal Living. This distortion is baseless, contradicted by the record, and reflects a calculated attempt by Movants to mislead the Court.

Granting the application would effectively hand Movants what they seek by default: if the subpoena is stayed and, as this Court has noted, "Counsel should be mindful that the Magistrate Judge may not alter discovery cut-off deadlines set by the assigned District Judge," then the discovery cutoff will lapse, extinguishing Defendants' ability to depose this fact witness. The Court should not permit Movants to profit from such gamesmanship, particularly since Movants have not, and cannot,

DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION FOR PROTECTIVE ORDER

meet the requisite high bar for quashing the subpoena they received nearly a month ago.

## II.   LEGAL STANDARD

**A. Movants Have Abused the *Ex parte* Procedure by Fabricating an Emergency of Their Own Making.**

"[N]o discovery motions may be filed or heard on an ex parte basis absent a showing of irreparable injury or prejudice not attributable to the lack of diligence of the moving party."

L.R. 37-3 Hearing on Motion. "*Ex parte* applications are nearly always improper, and the opportunities for legitimate [ones] are extremely limited." *ELT Sight, Inc. v. EyeLight, Inc.*, 2019 WL 7166063, at *2 (C.D. Cal. Oct. 29, 2019) (modification in original). Unlike regularly noticed motions, applications for *ex parte* relief are "inherently unfair" and "pose a threat to the administration of justice" because "the parties' opportunities to prepare are grossly unbalanced." *Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). The opposing party "can rarely make its best presentation" on the short notice accompanying an *ex parte* application. *Id.* at 491.

Finally, "*[e]x parte* applications are not intended to save the day for parties who have failed to present requests when they should have...." *Id.* at 193. "Ex parte applications are a form of emergency relief that will only be granted upon an adequate showing of good cause or irreparable injury to the party seeking relief." *Clark,* 2007 WL 1334965 (citing *Mission Power*, 883 F.Supp. at 492). The moving party must be "without fault" in creating the need for *ex parte* relief or establish that the "crisis [necessitating the ex parte application] occurred as a result of excusable neglect." *Id.*

Here, Movants demonstrate none of these prerequisites. There is no "irreparable injury" or "emergency". Instead, the record shows only Movants' tactical delay, which they then used to justify rushing into court a few days before

the return date on a subpoena for a deposition that would have already occurred had it not been adjourned as a courtesy to Plaintiff's counsel. (O'Connor Decl. ¶¶7-17, ¶20) Movants—not Defendants—created this timeline. Movants also fail to establish any of the three elements necessary for *ex parte* relief: (1) an immediate or irreparable injury; (2) a danger that notice would result in the destruction of evidence or flight; or (3) a need for a routine procedural order that cannot be obtained through a regularly noticed motion (such as leave to file an overlong brief or shorten time). *See Horne*, 969 F. Supp. 2d 1203.

**B. Movants Lack Standing To Move To Quash the Subpoena.**

Movants lack standing to move to quash the subpoena to Ideal Living's former long-standing marketing executive, as they are not the party subject to the subpoena. Under Federal Rule of Civil Procedure 45(c)(3)(A), only the party subject to the subpoena may bring a motion to quash. Fed. R. Civ. P. 45(c)(3)(A); *see also California Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 643 (E.D. Cal. 2014) (recognizing the general rule that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to documents being sought) (internal citations omitted.); *Nicholson v. City of Los Angeles*, 2017 WL 10575213, at *2 (C.D. Cal. Jan. 4, 2017) ("Plaintiffs present an argument relating only to timeliness, not any privilege, and therefore do not have standing.") (citing *In Re Rule 45 Subpoena Issued to JP Morgan Chase Bank, N.A.*, 319 F.R.D. 132, at *3 (S.D.N.Y 2016) (stating that a movant "lack[ed] standing to object to [a third party's] compliance simply because, in his view, [the requesting party] could also have obtained the records elsewhere or in a more timely fashion")).

Plaintiff appears to have done its homework only after it sent the Rule 37 letter because, therein, it frivolously claimed that the subpoena was improper because it sought "privileged" information from Ms. Nishizaki. (Dkt. 183-10, Farnese Decl., Ex. G, at 2 (asserting that the subpoena "is a transparent 'sidestep' to obtain privileged information from Plaintiff and/or Ideal Living through Ms. Nishizaki").

DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION FOR PROTECTIVE ORDER

The Court has likely noticed that Plaintiff has jettisoned this argument on the current application.

Of course, there is no conceivable "privilege" that applies to anticipated testimony from this witness. As concerns the alleged confidentiality agreement the witness signed with Ideal Living, Plaintiff lacks standing to invoke it as a basis to block discovery. (Dkt. 183-3.) Even if the agreement were relevant, in compliance with applicable law, it expressly disclaims any restriction on disclosure of confidential information in response to a valid subpoena. (*Id.* at 3.) Courts have consistently rejected a party's effort to use the existence of a confidentiality agreement to shield a witness from being questioned. *See Erickson v. Microaire Surgical Instruments LLC*, No. C08-5745BHS, 2010 WL 1881946, at *3 (W.D. Wash. May 6, 2010) (In the event the provision provides that documents may be produced and testimony given pursuant to a subpoena or court order, then the Ericksons' claim of confidentiality fails.). Moreover, there is a Stipulated Discovery Order in place in this case, should it need to be invoked.

Lastly, it bears mentioning that while the Farnese Declaration asserts in paragraph 20 that there is a purported "settlement agreement" between the witness and Ideal Living "which included a confidentiality provision related to proprietary information stemming from Ms. Nishizaki's prior employment agreement with Ideal Living," (Dkt. 183-4, at 3), this argument must be disregarded for multiple reasons. First, it was not asserted as part of any Rule 37 letter we received. Second, that agreement has not been furnished to the Court or to Defendants. *See Erickson*, 2010 WL 1881946 at 3 (rejecting a similar attempt to quash a subpoena based on a confidentiality provision where the moving party failed to provide the agreement, noting that "[t]he party who moves to quash a subpoena has the burden of persuasion").

Third, while Mr. Farnese claims that the witness had an "employment agreement" with Ideal Living, no such agreement is provided to the Court, and such

DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION FOR PROTECTIVE ORDER

an assertion is belied by the other materials in the record which appear to conclusively show that she was an at will employee.  Lastly, it bears mentioning that California law narrowly proscribes an employer's ability to include strict confidentiality in a settlement agreement in connection with a discrimination claim. *See, e.g.*, Cal. Code of Civil Procedure § 1001 (rendering void "a provision within a settlement agreement that prevents or restricts the disclosure of factual information related to a claim [for workplace harassment or discrimination] filed in a civil action or a complaint filed in an administrative action…").

Movants' failure to provide any alleged agreement as part of their application prohibits any serious consideration of their vague argument that the witness could violate her agreement by answering questions truthfully about her experiences at Ideal Living and its overall relation to the Plaintiff in this action, its corporate structure during the time she worked there; and how replacement air filter products were manufactured, marketed and sold.

**C. Neither Movants' Attempt to Quash the Subpoena Nor Their Protective Order Argument Has Merit**

Movants also lack standing to object to the Nishizaki subpoena on the basis that it purportedly seeks "irrelevant, overbroad, or disproportionate" information. Courts in this Circuit have consistently rejected such attempts, and this is shown in spades in each of the cases upon which Movants erroneously rely. *See Eclat Pharms., LLC v. West-Ward Pharm. Corp.*, 2014 WL 12607663, at *1 (C.D. Cal. March 26, 2014) (denying motion to quash subpoenas on the grounds that they are overbroad, not properly limited in time, and seek irrelevant and duplicative information because defendants did not have standing to move to quash the subpoenas served on the third parties on the proffered bases); *see also Erickson*, 2010 WL 1881946, at *2  (A party generally does not have standing to object to a subpoena served on a nonparty on grounds of the undue burden imposed on the nonparty, especially where the nonparty itself has not objected.).

-11-
DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION FOR PROTECTIVE ORDER

Movants may not properly invoke "irrelevance" or "burden" objections that belong, if at all, to the non-party witness. *See id.* (where relevance is in doubt, the Court should be permissive in allowing discovery); *see also* Fed. R. Civ. P. 26(b)(1). The witness has confirmed her availability to testify and is willing to comply on the date her deposition was arranged, after consulting with Plaintiff as to the convenience of said date.

In any event and putting aside this standing problem, the subpoena topics are not irrelevant, overbroad, or burdensome. To the contrary, they are narrowly tailored, directly relevant to the claims and defenses, and proportional to the needs of the case. Rule 26 permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). This Rule clearly "establishes a liberal discovery policy." *S.M. v. Tamaqua Area Sch. Dist.*, 2023 U.S. Dist. LEXIS 93017, 2023 WL 3689607, at *1 (M.D. Pa. May 26, 2023). The federal courts have long permitted broad and liberal discovery. *Doe v. Princeton Univ.*, 349 F.R.D. 92, 96 (D.N.J. 2025). Defendants' anticipated examination is confined to identifying the key players within the Plaintiff's company and its affiliates during the relevant period (whom the Court can easily see involve Ideal Living), clarifying their interrelationships, determining the scope and extent of financial and marketing records that the witness knew to exist when she worked there (very little of which have ever been produced, despite demand), and determining who possesses relevant knowledge (Dkt. 183-5 at 8)—subjects squarely within the scope of permissible discovery. (O'Connor Decl. ¶¶7, 9, 10, 16).

To show the type of gamesmanship being employed here, Movants seek to confuse the Court into thinking that the recipient of the subpoena is not knowledgeable of operations at Movants' companies during the relevant period (2021 through 2023). For this argument, they cite to her testimony (Dkt. 183-9) where she gives the approximate number of employees in the organization when she left in 2023. Because she conceded, on February 25, 2025, that she did not as of that

DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION FOR PROTECTIVE ORDER

date know how many employees the companies had (*id*), she is somehow deemed by Movants not to have any knowledge on any topic. Just to state this argument shows its absurdity.

Critically, the information sought from this non-party witness is in multiple areas that three of Plaintiff's designated Rule 30(b)(6) witnesses woefully failed to provide competent testimony about in a series of depositions that were taken in this case. There is a long list of topics that those witnesses failed and refused to testify to, despite days of depositions. (O'Connor Decl., ¶ 9). Against this factual backdrop, Movants' argument that "Defendants cannot use a non-party subpoena to sidestep party discovery" (Dkt. 183-1 at 10, 11) is entirely disingenuous. Far from sidestepping, third-party discovery is necessitated by Plaintiff's own failure to produce knowledgeable witnesses, making Ms. Nishizaki's testimony not only proper, but essential.

Further, Ms. Nishizaki has personal knowledge of Movants' combined operations and, in particular, will be essential in establishing that Plaintiff is not the real party in interest in this case. As will be made abundantly clear in future dispositive motion practice, Defendants believe they will show that this action was filed by the wrong party. Plaintiff seeks to recover damages for alleged false advertising, but discovery (including, upon information and belief, what this witness will further corroborate) shows that no damages could be proven and, even if there were actual damages, any economic injury was suffered not by Plaintiff, but by a group of affiliated companies *that are not plaintiffs* in this action. Efforts to get information from Plaintiff's corporate designees have not been fruitful as each and every one of them has eschewed any knowledge at all of the relationship, or how Plaintiff could claim even a penny of damages.

Under the Lanham Act and Rule 17 of the Federal Rules of Civil Procedure, only the entity that sustains a direct commercial injury is the proper plaintiff. This witness will likely assist Defendants in further cementing the fact that Plaintiff has

been unable to show a loss of sales, damage to reputation, and damage to goodwill, precisely because *it is not even an operating company.* As is shown by her complaint against Ideal Living (Dkt. 183-7), she was a long-time, trusted employee of Ideal Living (Senior Brand Manager) who "expressed concerns to her superiors about potential financial and illegal improprieties within the company." (*Id.*, ¶ 12). Ideal Living even acknowledged in its complaint against David Najar that Ms. Nishizaki "worked for Ideal Living on and off since 2006, and was most recently employed by Ideal Living from 2019 to 2023." (Dkt. 183-6, ¶ 8). In her complaint against Ideal Living, Ms. Nishizaki alleged that the manner in which the company was keeping its financial records and its relationship with affiliates was done to avoid income tax liability. (Dkt. 183-7, ¶ 13).

Having worked for the companies around eight years, this employee is uniquely positioned to provide information concerning the affiliations between the entities, the preparation and maintenance of financial records, the individuals with the most relevant knowledge (including a long list of employees who have since departed) concerning the testing and marketing of products, the true nature of the manufacturing and distribution process, and the role of certain undisclosed persons in China in that process. None of this critical information was elicited from the three unprepared corporate designees Plaintiff produced. (Dkt. 183-11, O'Connor Decl., ¶9).

Movants disingenuously suggest that Ms. Nishizaki has no knowledge of the Air Doctor filters because she does not mention the filters specifically in her complaint of discrimination. (Dkt. 183-1, at 7)("In fact, the complaint in the Nishizaki Lawsuit does not use the word "AirDoctor" one time."). Ostensibly this argument was made in the hopes the Court did not examine the complaint filed by Ideal Living against Mr. Najar wherein Ideal Living affirmatively stated that *it* was the true owner of the AirDoctor "engineered and manufactured products" (the very antithesis of what is alleged in Plaintiff's operative complaint) and wherein Ideal

Living laid out in detail Ms. Nishizaki's alleged involvement in recruiting Najar "as a commissioned, outside sales representative for Ideal Living, to sell "AirDoctor®" air purifier units…" (Dkt. 183-6, ¶ 8). That same pleading alleges that Ms. Nishizaki had accused Plaintiff's owner of "having false financial statements" and of "concealing the true ownership of Ideal Living…" (*Id.*, ¶ 9).

Equally without merit is the new assertion by Movants that Ms. Nishizaki's testimony is not relevant because Mr. Sweet belatedly disclosed on September 3, 2025 that there was some alleged "restructuring" that occurred this past summer, rendering "irrelevant" the structuring of the company prior. This argument is, frankly, absurd.

First of all, the Court has likely noticed that in the highly redacted excerpt of Mr. Sweet's testimony (Dkt. 183-8), Plaintiff disclosed for the first time the existence of a vague transaction whereby a "third-party investor" allegedly purchased a "minority share" of Ideal Living Holdings. When pressed for any details, the witness feigned ignorance altogether, as is shown by the page that Movants conveniently left out of the record. (O'Connor Decl., Ex. B). As is set forth in the enclosed Declaration, after the Sweet deposition, Defendants received a Rule 37 letter wherein Plaintiff mysteriously suggested that there had been a "restructuring" such that it wished to now switch up who the Plaintiff is. A meet and confer ensued, and Plaintiff has thus far failed and refused to provide any actual evidence of any so-called "restructuring." In the weeks that have followed, Plaintiff has now abandoned its efforts to amend the complaint. (*Id.*, ¶¶ 18-20).

Yet, now the Court is expected to accept as true that this limited testimony about a vague "investment" of an unnamed "minority purchaser" somehow changes the need to explore who the real party in interest is in this case, how that entity was "damaged," what "lost profits" that entity is claiming to have, etc.

In sum, while Movants emphasize alleged "corporate restructuring" that allegedly occurred in July 2025, and putting aside that the witness had no knowledge

DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION FOR PROTECTIVE ORDER

at all of what that was, such "restructuring" does not diminish the critical relevance of the pre-2023 operations at issue in this case. What matters for purposes of discovery is Plaintiff's operations, their affiliates, the facts surrounding the manufacture of Plaintiff's supposedly superior air filters and the alleged "rigorous, independent third-party testing" that supposedly sets it apart from Defendants' filters, and why it is that Plaintiff is unable to furnish financial records that make any sense at all.

Ms. Nishizaki, who remained with Ideal Living until February 2023 (Dkt. 183-1 at 9:18–19) and was employed by at least July 2011 as reflected in the purported confidentiality agreement (Dkt. 183-3 at 8), has first-hand knowledge of precisely these subjects. To be sure, Ms. Nishizaki is not being questioned on alleged "restructuring" form a few months ago that Plaintiff's own "Direct of Legal Affairs" could not even explain to us.

Accordingly, Defendants have shown a substantial need for this testimony. *See Gonzales v. Google, Inc.*, 234 F.R.D. 674 (N.D.Cal.2006).  Movants' attempt to recharacterize these narrowly focused topics as improper is nothing more than an effort to conceal deficiencies in their own corporate testimony. Blocking the subpoena would reward that non-compliance and perpetuate an asymmetry of information that the Federal Rules of Civil Procedure are designed to prevent. Granting the motion will only serve to reward a disturbing pattern of obfuscation, frustration and delay that should never be countenanced.

**D. Movants Unduly Delayed, and Have Waived, Objections to the Subpoena by Changing the Grounds Upon Which They Objected to the Subpoena, and then Passing the Statutory Deadline.**

Under Rule 45, a non-party served with a subpoena *duces tecum* must serve objections "before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(c)(2)(B). Only upon a timely motion may the court quash or modify a subpoena. Fed. R. Civ. P. 45(c)(3)(A). "Once the person subpoenaed objects to the subpoena ... the provisions of Rule 45 come into play."

*Pennwalt Corp. v. Durand–Wayland, Inc.*, 708 F.2d 492, 494 n. 5 (9th Cir.1983). A nonparty's failure to timely make objections to a Rule 45 subpoena *duces tecum* generally requires the court to find that any objections have been waived. *See In re DG Acquisition Corp.,* 151 F.3d 75, 81 (2d Cir.1998); *Creative Gifts, Inc. v. UFO*, 183 F.R.D. 568, 570 (D.N.M.1998).

Here, Movants—not the subpoenaed witness—delayed until well after the 14-day deadline and then sought *ex parte* relief on the eve of the adjourned date of deposition (past the original return date of that subpoena). This delay is fatal. Movants have not shown, nor can they show, any justification for their untimely objections. The subpoena is narrowly tailored and squarely within the permissible scope of discovery. Movants' strategic delay therefore results in waiver, and their objections should not be heard.

### III.   **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Movants' *ex parte* application for a protective order, or in the alternative to quash, the subpoena issued non-party Myra Nishizaki in its entirety.

Date: 9/25/2025

/s/ Jie Li

Jie Li (SBN 354432)
Tianyu Ju (SBN: 323817)
Glacier Law LLP
251 South Lake Ave Suite 910
Pasadena, California 91101
Telephone: 312.448.7772
Facsimile: 312.801.4587
Email: iris.ju@glacier.law
         jie.li@glacier.law

Dandan Pan (PHV admitted)
Glacier Law LLP
41 Madison Avenue, Ste. 2529
New York, NY 10010

DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION FOR PROTECTIVE ORDER

Telephone: 212-927-5033
Email: dandan.pan@glacier.law

Kevin J. O'Connor (PHV admitted)
Peckar & Abramson, P.C.
70 Grand Avenue
River Edge, NJ 07661
Telephone: (201) 343-3434
Email: koconnor@pecklaw.com

*Attorney for Defendants and
Counterclaim Plaintiffs*

DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION FOR PROTECTIVE ORDER

# **CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of September 2025, I caused the foregoing to be filed electronically with the Clerk of Court and to be served via the Court's Electronic Filing System upon all counsel of record.


Date: 9/25/2025                          /s/ Jie Li
                                         Jie Li
                                         Glacier Law LLP
                                         *Attorney for Defendants and*
                                         *Counterclaim Plaintiffs*

DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION FOR PROTECTIVE ORDER