Jie Li (SBN 354432)
Tianyu Ju (SBN: 323817)
Glacier Law LLP
251 South Lake Ave Suite 910
Pasadena, California 91101
Telephone: 312.448.7772
Facsimile: 312.801.4587
Email: iris.ju@glacier.law
       jie.li@glacier.law

Dandan Pan (PHV admitted)
Glacier Law LLP
41 Madison Avenue, Ste. 2529
New York, NY 10010
Telephone: 212-927-5033
Email: dandan.pan@glacier.law

Kevin J. O'Connor (PHV admitted)
Peckar & Abramson, P.C.
70 Grand Avenue
River Edge, NJ 07661
Telephone: (201) 343-3434
Email: koconnor@pecklaw.com
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIRDOCTOR, LLC, a Delaware Limited Liability Company,<br><br>      Plaintiff,<br><br>      v.<br><br>LONNI, et. al,<br><br>      Defendants. | Case No.: 2:23−cv−00353−GW−AS<br><br>**DECLARATION OF KEVIN J. O'CONNOR IN OPPOSITION TO *EX PARTE* APPLICATION FOR PROTECTIVE ORDER**<br><br>Judge: Hon. George H. Wu<br>Magistrate: Hon. Alka Sagar |

-1-

I, Kevin J. O'Connor, under penalty of perjury, declare as follows:

1.     I am an attorney at law duly licensed to practice in the jurisdictions of New York, New Jersey, and Pennsylvania. I have served as co-counsel for Defendants, Lonni, Inc., Shenzhen Mingdao Youshu E-Commerce Co., Ltd., Shenzhen Dazhan Pengtu Internet Co., Ltd., and Dongguanshilianruizhongxinwang Luokejiyouxiangongsi in the above-captioned matter since February 26, 2025, when I was admitted *pro hac vice* in this matter.

2.     I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently to such facts under oath.

3.     In their *ex parte* application to quash the subpoena issued on September 2, 2025 to non-party witness Myra Nishizaki, Plaintiff Air Doctor, LLC ("Plaintiff") claims that the subpoena is served for an improper purpose, and seeks information that has already been obtained from Plaintiff in this action.  Both assertions are untrue.

4.     I have spoken to the witness who is prepared to be deposed on September 29, 2025, at 9:00 am. PT.

5.     Plaintiff's Answers to Interrogatories in this matter identified a scant three individuals with knowledge of the facts.  We have deposed them all.

6.     In over thirty years of practice, never have I seen witnesses appear for deposition as corporate designees who were so thoroughly unprepared to testify about basic information that is needed in order for Plaintiff to sustain its claims.

7.     We deposed, in order, the following persons:  1) Michael Pedersen, an engineer employed by Ideal Living identified as having knowledge of Plaintiff's air filter products at issue in this case, manufacturing, and testing; 2) Mohan Ahaus, a marketing and finance individual identified by Plaintiff as having the most knowledge

of its claims for damages and related topics; and 3) Jeremy Sweet, identified as "Director of Legal Affairs" (who is a non-lawyer), who certified to the discovery responses in this case that were required to be provided under oath.

8.     In addition, we served a subpoena on LMS, and deposed a witness from that company, which was identified in Plaintiff's interrogatory responses as a purported "third-party, independent testing" company.

9.     The list of things that Plaintiff's designees could not answer is long. Topics relevant to the subpoena include:

a. An inability by Pedersen to explain in detail the manufacturing process for the air filters and source of them, including an inability to identify manufacturers, and a complete inability of Pedersen to explain the interrelationship between Plaintiff and its affiliates;

b. An inability by Pedersen to say whether Plaintiff has even a single employee, a single bank account, or any tax returns of any kind;

c. An inability by Pedersen to describe the process of marketing, and costs associated with same (which is highly relevant to the claim by Plaintiff of "lost profits");

d. While the First Amended Complaint ("FAC") includes all sorts of allegations about the reputation of Plaintiff's air filters among its customers, Pedersen had no knowledge at all to support these claims;

e. Similarly, an inability of Plaintiff's corporate designee, Mohan Ahaus to testify in any way about relationships with suppliers and manufacturers, contracts with them, or costs that would factor into any "lost profits" claim in this case;

f. An inability of Ahaus to even speak to the financial records of Plaintiff and "lost profits" documents we were supplied in this case, even though he was produced as the person most knowledgeable of those topics;

g. An inability of Ahaus to articulate, much less describe, the relationship between Plaintiff and its affiliates, including his employer, Ideal Living; and

h. As concerns Mr. Sweet, a wholesale inability to provide any meaningful information about the corporate relationship between Plaintiff and its broad range of affiliates, any plausible claim for damages in this case, or why it is that Plaintiff has failed to produce any meaningful financial or corporate records of any kind.

10.     Following the deposition of Mr. Ahaus, I spent hours negotiating with Plaintiff's counsel, through emails and phone calls, about getting another corporate designee to appear to answer to the myriad of topics on which Plaintiff's corporate designees had no knowledge.

11.     Indeed, just a few days after Ahaus' deposition, Plaintiff produced voluminous financial records after having told us prior to that deposition that Plaintiff's production was complete.   Those financial records, like the first batch, are incomprehensible.

12.     Plaintiff flatly refused to produce a corporate designee to address this belated production, except to tentatively offer to produce a witness that they refused to identify, for no more than an hour, and strictly limited to asking about the new (incomprehensible) documents.

13.     Weeks after we served the subpoena in question, I was approached by Plaintiff's counsel with a new proposal by them to withdraw the subpoena without prejudice provided Plaintiff would revisit its refusal to provide adequate and proper time with a new, fully prepared corporate designee on the topics that its multiple corporate designees never adequately addressed.

14.     As the Court can see from the communications, however, Plaintiff flatly refused to identify who this person would be; refused to confirm that an adequate amount of time would be provided; and refused to produce that witness prior to the discovery cut off.

15.     Attached hereto as **Exhibit A** is Defendants' September 15, 2025 response to Plaintiff's request for a meet and confer to discuss the subpoena.

16.     As we explained in the response, the subpoena was served to obtain background facts on a myriad of topics including facts concerning the manner of Plaintiff's marketing and business operations, Plaintiff's relationship with its affiliated

-4-

companies, and the manufacture, marketing and distribution of the AirDoctor replacement filters that are put at issue in the FAC.

17.    As I further explained in our letter, Mr. Sweet's testimony was astonishing.  This witness, having previously sworn to a state of facts in response to Requests for Admissions about the manner in which Plaintiff has operated, actually repudiated *his own* sworn RFA answers, stating that he was told to answer them that way.

18.    Movants provide the Court with a single page from the deposition of Mr. Sweet (Dkt. 183-8) and state that Mr. Sweet gave testimony that there was a "corporate restructuring" and that this somehow obviates the need to explore the corporate structure of Plaintiff at any time prior.  Attached hereto as **Exhibit B** is page 12 of the Sweet deposition transcript (omitted from Plaintiff's application), wherein the witness proceeded to admit he had no idea whatsoever what he was talking about.

19.    Attached as **Exhibit C** is a September 4, 2025 email and letter from Plaintiff's counsel wherein Defendants were informed that Plaintiff sought consent to amend the FAC to "file a Second Amended Complaint to add the new parent companies as Plaintiffs."

20.    We subsequently had a meet and confer with Plaintiff's counsel and reminded her that Mr. Sweet provided no actual details of any actual transaction, much less a transaction that would represent a change of control and would allow for a new plaintiff to be substituted in this case.  We left the call with Plaintiff committing to providing us with actual proof of any such "transaction."  We have not heard back at all from Plaintiff's counsel on this, nor have we received any such documents.

21.    Because there is simply no good reason to shield this non-party witness from being deposed, the *ex parte* application to delay her deposition should be denied.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 25th day of September 2025, in New Jersey.

By: ___/s/  Kevin J. O'Connor__
Kevin J. O'Connor