Jie Li (SBN 354432)
Tianyu Ju (SBN: 323817)
Glacier Law LLP
251 South Lake Ave Suite 910
Pasadena, California 91101
Telephone: 312.448.7772
Facsimile: 312.801.4587
Email: iris.ju@glacier.law
        jie.li@glacier.law

Dandan Pan (PHV admitted)
Glacier Law LLP
41 Madison Avenue, Ste. 2529
New York, NY 10010
Telephone: 212-927-5033
Email: dandan.pan@glacier.law

Kevin J. O'Connor (PHV admitted)
Peckar & Abramson, P.C.
70 Grand Avenue
River Edge, NJ 07661
Telephone: (201) 343-3434
Email: koconnor@pecklaw.com
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIRDOCTOR, LLC, a Delaware Limited Liability Company, <br><br> Plaintiff, <br><br> v. <br><br> LONNI., et. al, <br><br> Defendants. | Case No.: 2:23−cv−00353−GW−AS <br><br> **DEFENDANTS' COUNTERCLAIMS** <br><br> JUDGE: Hon George H. Wu <br><br> Complaint Filed: January 18, 2023 <br> First Amended Complaint Filed: July 15, 2024 |

-1-
COUNTERCLAIMS

LONNI, INC., SHENZHEN DAZHAN PENGTU INTERNET CO., LTD., and DONGGUANSHILIANRUIZHONGXINWANGLUOKEJIYOUXIANGONGSI

 *Counterclaim Plaintiffs*,

 v.

AIRDOCTOR, LLC, IDEAL LIVING, LLC, RESPONSE PRODUCTS, LLC D/B/A IDEAL LIVING DIRECT, IDEAL LIVING MANAGEMENT LLC

 *Counterclaim Defendants*.

## COUNTERCLAIMS

Counterclaim Plaintiffs Lonni, Inc. ("Lonni"), Shenzhen Dazhan Pengtu Internet Co., Ltd. ("Dazhan") and DONGGUANSHILIANRUIZHONGXINWANGLUOKEJIYOUXIANGONGSI ("Lianrui") (collectively, "Counterclaim Plaintiffs") by and through their undersigned counsel, hereby bring the below Counterclaims against AirDoctor, LLC ( "AirDoctor"), Ideal Living, LLC, and Response Products, LLC d/b/a Ideal Living Direct, and Ideal Living Management LLC (collectively, "Counterclaim Defendants"), alleging the following on personal knowledge or, where Counterclaim Plaintiffs lack personal knowledge, upon information and belief.

## INTRODUCTION

1. This is an action seeking redress for (I) False Advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a), (II) violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq., (III) violations of the California False Advertising Law (Cal. Bus. & Prof. Code § 17500 *et seq.*).

## PARTIES

2. Lonni is a Colorado corporation with its principal place of business located at 320 S Main St, Hasty, CO 81044.

3. Dazhan is a Chinese entity with an address of 407, Building 11, Bai Men Qian Industrial Zone, Longgang District, Shenzhen City, Guangdong Province, 518144 China.

4. Lianrui is a Chinese entity with an address of Baxingfang Village Road, Room 302, No. 33 Daoxia Road, Baxingfang Village, Humen Town, Dongguan City, Guangdong Province, 523899 China.

5. Upon information and belief, AirDoctor is a Delaware limited liability company with its principal place of business located in Sherman Oaks, California.

6. Upon information and belief, Ideal Living, LLC is a California limited liability company with its principal place of business located at 14724 Ventura Blvd Ste 200, Sherman Oaks, CA 91403.

7. Upon information and belief, Ideal Living, LLC owns and operates the website https://enterprise.idealliving.com/ that markets and distributes for sale certain Airdoctor replacement air filters. During the time period relevant to these Counterclaims, Ideal Living, LLC has conducted substantial business throughout the United States, and in this District, including through the above-referenced website.

8. Upon information and belief, Response Products, LLC ("Response Products") is a California limited liability company with its principal place of business located at 14724 Ventura Blvd, Ste. 200, Sherman Oaks, CA 91403.

9. Upon information and belief, Response Products owns and operates the Amazon storefront Ideal Living Direct that markets and distributes for sale certain Airdoctor replacement air filters. During the time period relevant to these Counterclaims, Response Products has conducted substantial business throughout the United States, and this District, including on Amazon.com.

10. Upon information and belief, Ideal Living Management LLC ("Ideal Living Management") is a Delaware limited liability company with its principal place of business located in Sherman Oaks, California.

11. Upon information and belief, Ideal Living Holdings, LLC is the parent company of Ideal Living Management, LLC and AirDoctor.

12. Upon information and belief, at all times relevant hereto, each Counterclaim Defendant was the agent, servant, partner, alter ego, and/or joint venturer of the other Counterclaim Defendants, and acted within the course and scope of such relationship.

## JURISDICTION AND VENUE

13. This Court has personal jurisdiction over the parties to this action and venue is proper in this Court.

14. This is an action for False Advertising arising under the Lanham Act, 15 U.S.C. § 1125; to redress violations of California's Unfair Competition Law arising under Cal. Bus. & Prof. Code, § 17200, *et seq.*; and pursuant to California False Advertising Law under Cal. Bus. & Prof. Code, § 17500, *et seq.*

15. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), and 15 U.S.C. § 1121(a). This Court also has supplemental jurisdiction over the state law claims set forth in these Counterclaims pursuant to 28 U.S.C. § 1367.

16. This Court has personal jurisdiction over Airdoctor because Airdoctor has operated in this District, has its principal place of business in this District, and because the claims asserted herein arose in this judicial district. This Court has personal jurisdiction over Ideal Living, LLC and Response Products because, on information and belief, they are California limited liability companies with their principal place of business in Sherman Oaks, California and have substantial business operations in this District.

17. This Court has personal jurisdiction over Ideal Living Management because, on information and belief, this entity have its principal place of business in this District and have substantially operated in this district.

2. This Court has personal jurisdiction over each of the Counterclaim Defendants, on information and belief, each of whom has engaged in business activities in this District and the State of California, offered for sale certain replacement air filters in this District and in the State of California, knowingly and purposefully directed business activities to this District and the State of California, and availed themselves of the benefits afforded by California laws, and committed

tortious acts, knowing that Counterclaim Plaintiffs would suffer injuries in this District and the State of California.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. Counterclaim Defendants have conducted, and continue to conduct, business in this District, and a substantial part of the events or omissions, including Counterclaim Plaintiffs' injuries, giving rise to the claims occurred in this District.

## STATEMENT OF FACTS

4. On January 18, 2023, Airdoctor filed a Complaint which initiated this Civil Action No. 2:23-cv-00353-AB-MAR and filed its First Amended Complaint ("FAC") on July 15, 2024.

5. Upon information and belief, Airdoctor initiated this lawsuit in an improper attempt to eliminate competition for the replacement filters marketed and sold for use in certain Airdoctor air purifiers.

6. Upon information and belief, AirDoctor filed complaints with Amazon and caused Counterclaim Plaintiffs' filters to be delisted after the commencement of this litigation, as part of this concerted effort to eliminate competition through improper and unfair means. Counterclaim Plaintiffs wish to continue selling the delisted products.

### I. Airdoctor's filters sold by Counterclaim Defendants.

7. In its FAC, and consistent with its online marketing materials, Airdoctor has alleged that its filters meet or exceed the U.S. Department of Energy's HEPA standard, effectively removing "at least 99.97% of dust, pollen, mold, bacteria, and any airborne particles with a size of 0.3microns." *See* Dkt. No.86 ¶34.

8. Airdoctor alleges and advertises that its filters remove at least 99.99% of particles as small as 0.003 microns. *Id* ¶¶ 35, 39.

9. Airdoctor's website (available at https://airdoctorpro.com/3-reasons-why-you-should-never-buy-fake-or-generic-airdoctor-filters/?c=1709750487), Airdoctor

has long claimed that its UltraHEPA filters capture 99.99% of airborne particles as small as 0.003 microns.

10. This messaging is consistent with AirDoctor's advertising, labeling, and packaging for its  Airdoctor filters, wherein its claims that its products remove particles that are  100 times smaller than the standard HEPA filter requirement of 0.3 microns.

11. These and other claims are patently misleading and false, and give consumers a false sense of the filter's overall efficacy across all particle sizes, potentially exaggerating the performance of the product. *See* Exhibit A.



Our genuine AirDoctor filters are third-party tested and proven to remove at least 99.99% of particles as small as 0.003 microns, 100 times smaller than the HEPA standard! We've also invested in independent testing to prove AirDoctor captures 99.97% of the live SARS-CoV-2 virus, as well as a range of bacteria, viruses and VOCs like formaldehyde.*

12. Response Products has advertised that its "UltraHEPA filters removes 99.99% of particles at .003 microns" in its advertising, labeling, and packaging of the Airdoctor filters on Amazon, the same platform on which Movants have historically sold replacement air filters. *See* Exhibit B; *See also* https://www.amazon.com/AIRDOCTOR-AD3000-AD3500-Replacement-Filter/dp/B0CCJYH1FF/ref=sr_1_5?crid=2UVO47VQOHC5T&dib=eyJ2IjoiMSJ%E2%80%A6&th=1.



13. Ideal Living, LLC has advertised the following in its advertising, labeling, and packaging of the Airdoctor filters: "UltraHEPA™ filter … captures an impressive 99.99% of ultra-fine particles as small as .003 microns – 100 times smaller than the standard HEPA filter. AirDoctor's air purifiers also remove 99.97% of the COVID-19 virus." . *See* Exhibit C; *See also* https://enterprise.idealliving.com/air-solution-health-wellness/.



14. Upon information and belief, Ideal Living Management LLC is the parent company of AirDoctor and has played an active role in the manufacture and distribution of Airdoctor filters.

15. Independent laboratory testing of Airdoctor's filters by an international testing firm, Intertek, has shown that the fractional efficiency of AirDoctor's air filters is 99.94% for 0.05um particles. *See* Exhibit D. Therefore, for particles as small as 0.003 microns, the fractional efficiency could not possibly be higher than 99.94%.

16. Accordingly, Counterclaim Defendants' advertisements that Airdoctor UltraHEPA filters capture 99.99% of airborne particles as small as 0.003 microns are false.

**Test result**

| Table 1 | Filtration performance | | --- |
| --- | --- | --- |
| Normal air volume flow rate m³/h | 161 | |
| Test aerosol substances | Latex beads, Neutralized | |
| Particle size range (µm) | 0.05 | |
| Sample No. | Δ Pa | Fractional efficiency (%) |
| 0240515-32 | 17 | 99.94 |

Results summary:
One sample was tested, fractional efficiency is 99.94% for 0.05um particles.

17. Intertek testing of AirDoctor's filter further demonstrates that, for particles measuring 0.3 microns, the fractional efficiency was 99.961%, which falls short of the U.S. Department of Energy's HEPA standard requiring a minimum efficiency of 99.97%. Therefore, AirDoctor's filters do not meet HEPA standard.

| | Test air flow rates, m³/h | | 161 | | Pressure loss av., Pa | | 17 | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| No. | Pressure loss, Pa | Port | Particles: 10l at (in nanometers) | | | | | |
| | | | 50 | 80 | 90 | 100 | 150 | 200 | 300 |
| 1 | 17 | Upstream | 69763 | 64275 | 62488 | 57575 | 47850 | 40700 | 35000 |
| 2 | 17 | Downstream | 42 | 35 | 37 | 32 | 24 | 18 | 12 |
| Upstream, 95% min | | | 69889 | 64397 | 62608 | 57690 | 47955 | 40797 | 35090 |
| Downstream, 95% max | | | 45 | 38 | 40 | 34 | 26 | 20 | 14 |
| Efficiency, E % | | | 99.940 | 99.946 | 99.941 | 99.945 | 99.950 | 99.955 | 99.966 |
| Efficiency, E$_{95\%}$ min, % | | | 99.935 | 99.941 | 99.937 | 99.940 | 99.945 | 99.950 | 99.961 |

COUNTERCLAIMS

18. AirDoctor's website asserts that "fake" or "generic" filters do not meet HEPA standards and that only AirDoctor-certified filters provide "true HEPA performance." This claim misleads consumers into believing that other HEPA certified filters, such as those sold by Counterclaim Plaintiffs, are ineffective. *See* Exhibit A.

> **2. Fake Filters Don't Capture Key Contaminants**
>
> Genuine AirDoctor filters like our UltraHEPA filter are tested & proven to capture the ultra-fine, microscopic contaminants you can't see like PM 2.5. That means particles that are 2.5 microns are smaller. AirDoctor is tested and proven to capture particles as small as 0.003 microns in size. That includes particles like dust, pollen, mold spores, smoke, pet hair, pet dander, bacteria, and viruses. Remember, ultra-fine particles are the ones that are most harmful to human health because they are capable of passing through your lungs and directly into your bloodstream.
>
> And AirDoctor's Gas Trap Carbon filter uses a proprietary blend of activated carbon and potassium permanganate to capture invisible gasses and chemicals you can't see like ozone and formaldehyde. We use a unique blend of this material in our Carbon filters that is more expensive than generic activated carbon so that it actually removes volatile organic compounds (VOCs) like formaldehyde.
>
> Generic filters may look similar to genuine AirDoctor filters, but they fail in comparison when it comes to performance. This leaves you exposed to dangerous contaminants that you invested in your AirDoctor to protect you against.

19. AirDoctor has allowed false advertisement to remain online and to also continue to distribute it through online channels like Amazon, even after the falsity of such advertising was identified by Lonni on September 26, 2024.

20. Counterclaim Plaintiffs have suffered damages and will continue to suffer damages due to Counterclaim Defendants' false advertising and the delistings resulting from Airdoctor's complaints to Amazon, which delistings were themselves predicated on false and erroneous information.

## II. Counterclaim Defendants' Alleged "Independent Third-Party Laboratory Testing."

21. In its FAC, and consistent with its long-standing marketing tactics on Amazon and through internet sales, Airdoctor has claimed that it "advertises independent third-party laboratory testing showing the AirDoctor Air Purifiers' effectiveness …" *See* Dkt. No. 86 ¶5.

22. Airdoctor further alleges that it "rel[ies] on science and independent third-party testing." Dkt. No. 86 ¶28.

23. Airdoctor further alleges that "Independent laboratory testing of the AirDoctor Air Purifiers and AirDoctor UltraHEPA Filters confirms that they not only meet the HEPA standard (*See* Exhibits E), but also remove at least 99.99% of particles as small as 0.003 microns (or 100 times smaller than the HEPA standard)." Dkt No. 86 ¶35.

24. Paragraph 38 of the FAC, consistent with extensive marketing materials distributed by Airdoctor, claims that Airdoctor's claims are backed by "rigorous, third-party laboratory testing." *Id*., ¶ 38.

25. Exhibit D to the FAC is a testing report from LMS Technologies, Inc. ("LMS"), dated May 11, 2017, concerning the alleged AirDoctor filter, showing that LMS tested the Airdoctor air filter utilizing a flow rate of 60 fpm (30 cm/s). Dkt No. 86-5.

26. Exhibit E to the FAC is a testing report from LMS , dated November 16, 2021, concerning the alleged AirDoctor filter, showing that LMS utilized a flow rate of 95 cfm / 63.5 fpm in testing Airdoctor's filters. Dkt No. 86-5.

27. Exhibit F to the FAC is a testing report from LMS, dated January 25, 2022, concerning the alleged AirDoctor filter, showing a flow rate of 340 cfm was used in testing Airdoctor's air filters. Dkt. No. 86-6.

28. Exhibit M to the FAC is a testing report from LMS, dated April 10, 2023, concerning the alleged isinlive filter, showing a flow rate of 95 cfm, Dkt. No. 86-13.

29. Exhibit P to the FAC is a testing report from LMS, dated May 5, 2023, concerning the alleged Jorair filter, showing a flow rate of 340 cfm with the filter tested inside the unit. Dkt. No. 86-16.

30. Airdoctor further alleges "[t]he AirDoctor Website allows consumers to view the laboratory test results." Dkt. No. 86 ¶39.

31. Consistent with what is claimed in the FAC, AirDoctor advertises on its website that its product is "backed by rigorous third-party testing for superior performance and peace of mind". *See* Exhibit E; *See also* https://airdoctorpro.com/. Upon review of the test report directly linked to the advertising that it was "Independently tested and scientifically proven to capture airborne particles as small as 0.003 microns", a testing report from LMS, dated May 11, 2017, reflects that Airdoctor directed LMS to utilize an artificially low flow rate of 60 fpm when testing its air filters. *See* Exhibit E; *See also* https://cdn.builder.io/o/assets%2F907dedd21ad54876a62d88580a060f2b%2F2efb23a77e2240359654d954cc9713a7?alt=media&token=707e9d7f-5f49-442e-b0ff-e4f07de074d1&apiKey=907dedd21ad54876a62d88580a060f2b.

32. Contrary to the alleged "rigorous" and "independent," "third-party laboratory testing" that Airdoctor and its affiliates have told the public about in its marketing materials for its replacement air filters, LMS is neither "independent" of Airdoctor and its affiliate, nor could anyone in good conscience claim that it was rigorous in the testing standards and methodologies that it has applied to the testing of AirDoctor's air filters.

33. In point of fact, LMS has taken direction from Counterclaim Defendants on what protocols to use in the testing of air filters, including but not limited to taking specific direction on which speed to utilize when testing air filters, and intentionally utilizing a slow speed when testing Airdoctor's air filters, but utilizing a fast speed when conducting supposed "independent testing" to be used to bring claims against competitors like Counterclaim Plaintiffs. *See* Exhibit F.

34. Discovery has likewise shown that, contrary to being "independent," LMS in fact gave draft testing reports to Airdoctor and its affiliates such that they were permitted to edit same. *See* Exhibit G.

35. LMS has confirmed that, despite its counseling to Airdoctor and its affiliates that a more rigorous process existed for testing including a certification process, Airdoctor instead opted for a bare bones/cheap alternative wherein it paid approximately $500 for each test. *See* Exhibit I, Vatine Tr., at 20:22-21:4; 61:12-16.

36. These cheaper, "noncertified" tests resulted in LMS conveniently discarding the relevant testing materials in just one month, which means that it did not retain the testing materials allegedly utilized in the so called "rigorous testing" that forms the basis for AirDoctor's claims used in its marketing materials, other than the test report itself. *Id.*

37. Indeed, as noted above, discovery has conclusively shown that Counterclaim Defendants knowingly applied higher flow rates when testing Counterclaim Plaintiffs' filters, while contending that those higher flow rates are proper. However, the very LMS May 11, 2017 testing results which have, for years, formed the basis for Airdoctor's false claims of superiority over its competitors, applied a significantly lower flow rate in direct contravention of applicable testing standards.

38. Notwithstanding that Counterclaim Defendants were aware for a long period of time that they utilized the wrong flow rates in this 2017 testing, Counterclaim Defendants have allowed these erroneous test results and associated advertisements to remain in place in their various marketing materials. *See* Exhibit J, Pedersen Tr., at 65:23-70:11.

39. The alleged rigorous testing by LMS is further undermined by the testimony of LMS's principal owner, who testified that one filter can be tested 50 times without any effect, *See* Exhibit I, Vatine Tr., at 54:24-55:5, while experienced and truly independent laboratories (such as SGS) will require multiple sample filters to conduct just one test.

40. Moreover, if it were not clear enough that LMS is far from "independent" of Airdoctor, Counterclaim Defendants withheld communications they had with LMS in discovery, and when this was discovered belatedly placed communications with LMS on a privilege log, claiming that its communications with LMS were "work product protected." *See* Exhibit H.

41. Through Counterclaim Defendants' concerted actions, as aforesaid, Counterclaim Plaintiffs have suffered damages and will continue to suffer damages due to Counterclaim Defendants' false advertising and related misconduct.

## COUNT I

### False Advertising In Violation Of The Lanham Act, 15 U.S.C. § 1125(A) Against All Counterclaim Defendants

42. Counterclaim Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

43. Counterclaim Plaintiffs and Counterclaim Defendants are direct competitors in the market for the sale of consumer replacement filters for air purifiers.

44. Counterclaim Defendants have made, and continues to make, false and/or misleading claims in commercial advertising. For example, and without limitation, Counterclaim Defendants have falsely represented that their UltraHEPA filters capture 99.99% of airborne particles as small as 0.003 microns, their filters meet HEPA standard, and that their filters are allegedly supported by rigorous and independent third-party laboratory testing.

45. Such commercial advertising by Counterclaim Defendants constitutes false and misleading statements of fact that misrepresent the nature, qualities, and characteristics of their filters and those of Counterclaim Plaintiffs in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

46. Counterclaim Defendants have disseminated these false and misleading advertising claims throughout the United States, and these claims were made in interstate commerce.

47. Counterclaim Defendants' false and misleading advertising is material, in that it has actually deceived, has a tendency to deceive, and/or is likely to deceive consumers and influence a consumer's purchasing decision.

48. As a direct and proximate result of Counterclaim Defendants' false advertising, Counterclaim Plaintiffs have suffered and will continue to suffer significant damages to its business reputation, goodwill, and market share, loss of sales, and profits due to the direct diversion of sales from Counterclaim Plaintiffs.

49. Counterclaim Defendants have acted in bad faith and have knowingly, willfully, and deliberately engaged in false advertising with the intent to deceive the public and injure their competitors, including Counterclaim Plaintiffs.

50. Counterclaim Plaintiffs have suffered and are likely to continue to suffer irreparable injury and have no adequate remedy at law, and thus are entitled to injunctive relief.

51. Counterclaim Plaintiffs are also entitled to the recovery of all available damages, including but not limited to, lost profits, attorneys' fees, costs of the action, and Counterclaim Defendants' profits, in an amount to be proven at trial.

52. This is an exceptional case within the meaning of Section 35 of the Lanham Act, 15 U.S.C. § 1117, entitling Counterclaim Plaintiffs to treble damages and recovery of attorneys' fees.

### COUNT II
### Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq Against All Counterclaim Defendants

53. Counterclaim Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

54. Counterclaim Defendants' false advertising constitutes unlawful, unfair, and fraudulent business practices under California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 et seq. Counterclaim Defendants made or disseminated, or caused to be made or disseminated, before the public in this State, deceptive, untrue or misleading statements in connection with the sale of their filters, that Counterclaim Defendants knew, or in the exercise of reasonable care should have known were deceptive, untrue or misleading concerning the sale of Counterclaim Defendants' product and were likely to mislead or deceive a reasonable consumer.

55. Counterclaim Plaintiffs and Counterclaim Defendants are direct competitors in the market for the sale of consumer replacement filters for air purifiers.

56. Counterclaim Defendants' conduct constitutes "unfair", "fraudulent" and "unlawful" business practices as they have gained an unjust competitive advantage by misrepresenting the quality and performance of their own products and by falsely asserting that filters sold by competitors, including Counterclaim Plaintiffs, are inferior and substandard.

57. These actions harmed Counterclaim Plaintiffs' business and reputation and misled consumers, causing competitive injury that outweighs any benefit.

58. By reason of Counterclaim Defendants' acts of unfair competition, Counterclaim Plaintiffs has suffered and will continue to suffer irreparable injury unless and until this Court enters an order enjoining Counterclaim Defendants from any further acts of unfair competition. Counterclaim Defendants' continuing acts of unfair competition, unless enjoined, will cause irreparable damage to Counterclaim Plaintiffs in that they will have no adequate remedy at law to compel Counterclaim Defendants to cease such acts, and no way to determine their losses proximately caused by such acts of Counterclaim Defendants. Counterclaim Plaintiffs are therefore entitled to a preliminary injunction and a permanent

injunction enjoining Counterclaim Defendants from engaging in further unlawful, unfair, or fraudulent business practices, as well as removal of all false and misleading advertising, labeling, packaging, and promotional materials.

59. As a result of Counterclaim Defendants' unlawful, unfair, and fraudulent business practices, Counterclaim Plaintiffs have suffered and continue to suffer economic injury, including lost sales, reduced market share, and reputational harm.

## COUNT III
## Violation of California False Advertising Law (Cal. Bus. & Prof. Code § 17500 et seq.) Against All Counterclaim Defendants

60. Counterclaim Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

61. Counterclaim Plaintiffs and Counterclaim Defendants are direct competitors in the market for the sale of consumer replacement filters for air purifiers.

62. Counterclaim Defendants have engaged in false and misleading advertising in violation of Cal. Bus. & Prof. Code § 17500 et seq by making or disseminating, or causing to be made or disseminated, before the public in this State, deceptive, untrue or misleading statements in connection with the sale of their filters, that Counterclaim Defendants knew, or in the exercise of reasonable care should have known were deceptive, untrue or misleading concerning the sale of Counterclaim Defendants' product and were likely to mislead or deceive a reasonable consumer.

63. Counterclaim Defendants' advertising constitutes a violation of California's False Advertising Law, as it involves statements of their filters that are untrue, misleading, and likely to deceive consumers. Counterclaim Defendants' conduct is unlawful, as their advertising was disseminated to the public with knowledge that the statements were false or with reckless disregard for the truth.

64. Such advertisements have deceived and are likely to deceive the consuming public, in violation of Business & Professions Code § 17500.

65. By reason of Counterclaim Defendants' acts of unfair competition, Counterclaim Plaintiffs has suffered and will continue to suffer irreparable injury unless and until this Court enters an order enjoining Counterclaim Defendants from any further acts of unfair competition. Counterclaim Defendants' continuing acts of unfair competition, unless enjoined, will cause irreparable damage to Counterclaim Plaintiffs in that they will have no adequate remedy at law to compel Counterclaim Defendants to cease such acts, and no way to determine their losses proximately caused by such acts of Counterclaim Defendants. Counterclaim Plaintiffs are therefore entitled to a preliminary injunction and a permanent injunction enjoining Counterclaim Defendants from engaging in further unlawful, unfair, or fraudulent business practices, as well as removal of all false and misleading advertising, labeling, packaging, and promotional materials.

66. Counterclaim Defendants' false advertising has caused significant harm to Counterclaim Plaintiffs. Consumers are misled into purchasing Counterclaim Defendants' products based on false or exaggerated performance claims.

67. As a direct and proximate result of Counterclaim Defendants' acts of deceptive, untrue, and misleading advertising, Counterclaim Defendants have wrongfully appropriated Counterclaim Plaintiffs' profits and substantial investments of time, effort, and money in their business, goodwill, and reputation.

68. Counterclaim Defendants' actions, as described above, constitute false and misleading descriptions and misrepresentations of fact in California which, in commercial advertising and promotion, misrepresent the nature, characteristics, and qualities of their products in violation of the False Advertising Law at Business & Professions Code § 17500, et seq.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiffs demand judgment in their favor and against Counterclaim Defendants as follows:

1. That Airdoctor take nothing by its complaint;

2. That the Court enter judgment against Counterclaim Defendants, jointly and severally, and in favor of Counterclaim Plaintiffs and that Airdoctor's claims be dismissed in their entirety, with prejudice; Finding that Counterclaim Defendants have violated the Lanham Act, the California Unfair Competition Law, and the California False Advertising Law; Temporarily, preliminarily, and permanently enjoining, restraining, and forbidding Counterclaim Defendants and their principals, servants, officers, directors, partners, agents, representatives, shareholders, employees, affiliates, successors, assignees, and all others acting in concert, or who participates with Counterclaim Defendants, from further violations of the Lanham Act, the California Unfair Competition Law, and the California False Advertising Law as alleged herein;

3. Requiring Counterclaim Defendants to disseminate, at their sole and exclusive cost, corrective advertising to consumers;

4. Awarding to Counterclaim Plaintiffs actual, compensatory, consequential, statutory, special, and/or punitive damages in an amount to be proven at trial and/or otherwise provided for by law;

5. Disgorgement of Counterclaim Defendants' sales and profits;

6. Compensation for all damages caused by Counterclaim Defendants;

7. Awarding Counterclaim Plaintiffs restitution;

8. Awarding Counterclaim Plaintiffs interest, costs, and reasonable attorneys' fees incurred by Counterclaim Plaintiffs in prosecuting and defending this action;

9. Declare that this is an "exceptional case" that warrants an award of attorney's fees against Counterclaim Defendants;

10. Granting Counterclaim Plaintiffs pre-and post-judgment interest on its damages, together with all costs and expenses;

11. Awarding Counterclaim Plaintiffs such other and further equitable relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Counterclaim Plaintiffs hereby request a jury trial for all issues triable by jury.

Date: 10/23/2025

/s/ Jie Li

Jie Li, Esq.
Jie.li@glacier.law
Glacier Law LLP
***Attorney for Counterclaim Plaintiffs***