**EPSTEIN DRANGEL LLP**
Ashly E. Sands (*pro hac vice*)
asands@ipcounselors.com
Danielle S. Futterman (*pro hac vice*)
dfutterman@ipcounselors.com
60 East 42nd Street, Suite 1250
New York, New York 10165
Telephone:  212-292-5390
Facsimile:   212-292-5391

Peter J. Farnese (SBN 251204)
pfarnese@ipcounselors.com
700 South Flower Street, Suite 1000
Los Angeles, California 90017
Telephone:  310-356-4668
Facsimile:   310-388-1232

Attorneys for Plaintiff,
AirDoctor, LLC

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIRDOCTOR, LLC,<br><br>              Plaintiff,<br><br>      v.<br><br>LONNI, INC., LONNI INC., d/b/a LONNIHOME, SHENZHEN MINGDAO YOUSHU E-COMMERCE CO., LTD., SHENZHEN DAZHAN PENGTU INTERNET CO., LTD., DONGGUANSHILIANRUIZHONGXINWANGLUOKEJIYOUXIANGONGSI d/b/a JORAIR-FILTER, JORAIR-FILTER and XINCHENG HOLDING (HK) CO., LIMITED,<br>Defendants. | CASE NO. 23-cv-353-GW-ASx<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>1.   VIOLATION OF LANHAM ACT (15. U.S.C. § 1125(a))<br><br>2.   VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code, § 17200, et seq.)<br><br>3.   VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW (Cal. Bus. & Prof. Code § 17500, et seq.)<br><br>**JURY TRIAL DEMANDED** |

Plaintiff AirDoctor, LLC ("Plaintiff" or "AirDoctor") hereby complains against Lonni, Inc., Lonni, Inc. d/b/a LONNIHOME (collectively, "Lonni"), Shenzhen Mingdao Youshu E-Commerce Co., Ltd. ("Shenzhen Mingdao"), Shenzhen Dazhan Pengtu Internet Co., Ltd. ("Shenzhen Dazhan"), DongGuanShiLianRuiZhongXinWangLuoKeJiYouXianGongSi d/b/a JORAIR-FILTER, JORAIR-FILTER and Xincheng Holding (HK) Co., Limited ("Xincheng") (hereinafter collectively referred to as "Defendants") and alleges as follows:

**INTRODUCTION**

1.       This is an action seeking injunctive relief and damages to halt Defendants' false and misleading advertising of purported "replacement" air filters for Plaintiff's popular AirDoctor 3000 mechanical air purifiers which are designed with a 3-Stage Filtration System, including a UltraHEPA filter that captures the ultra-fine contaminants such as dust, pollen, mold spores, smoke, pet hair, and dander, bacteria and viruses which are sold under Plaintiff's AIRDOCTOR brand and trademark (as defined *infra*) (hereinafter, "AirDoctor Air Purifiers" and "AirDoctor Brand," respectively).

2.       "HEPA" is an acronym for "high efficiency particulate air [filter]" defined by the U.S. Dept. of Energy to "remove <u>at least</u> 99.97% of dust, pollen, mold, bacteria, and any airborne particles with a size of 0.3 microns." (emphasis added).[1]

3.       Plaintiff's genuine UltraHEPA filters, sold under the ULTRAHEPA Mark (as defined infra), are made especially for its AirDoctor Air Purifiers, and are designed to meet or exceed the U.S. Dept. of Energy HEPA standard ("AirDoctor UltraHEPA Filters").

4.       Plaintiff's AirDoctor Air Purifiers have earned the trust of health-conscious consumers, allergy sufferers, and others with medical or respiratory conditions, to provide powerful and effective air filtration for their homes and businesses.

---

[1] https://www.epa.gov/indoor-air-quality-iaq/what-hepa-filter.

- 1 -      CASE NO. 23-cv-353-GW-ASx
SECOND AMENDED COMPLAINT

5.    In fact, unlike many competitors, Plaintiff advertises independent third-party laboratory testing showing the AirDoctor Air Purifiers' effectiveness-- allowing consumers to view the testing results on the AirDoctor website, https://airdoctorpro.com/ ("AirDoctor Website").  For instance, AirDoctor advertises that:

a.    AirDoctor 3000[2] is tested and proven to remove 99.97% of the live SARS-CoV-2 virus from the air in a controlled test chamber (*See* **Exhibit B**);

b.    AirDoctor 3000 is tested and proven to remove 99.99% of tested bacteria & viruses, including H1N1 (*See* **Exhibit C**);

c.    AirDoctor 3000 is tested and proven to capture airborne particles as small as 0.003 microns in size (*See* **Exhibit D**).

6.    Plaintiff AirDoctor owns all registered and unregistered intellectual property rights in and to its AirDoctor Brand and AirDoctor Air Purifiers and AirDoctor UltraHEPA Filters, including both registered and unregistered copyrights and trademarks.

7.    Plaintiff AirDoctor has protected its valuable rights by filing for, and obtaining, federal trademark registrations covering its AIRDOCTOR and ULTRAHEPA trademark. For example, Plaintiff AirDoctor owns U.S. Trademark Reg. No. 5177385 for AIRDOCTOR in Class 11 ("AIRDOCTOR Registration" and "AIRDOCTOR Mark", respectively)[3] and U.S. Trademark Reg. No. 6300545 for ULTRAHEPA in Class 11 ("ULTRAHEPA Registration" and "ULTRAHEPA Mark", respectively).

8.    True and correct copies of the AIRDOCTOR Registration and the ULTRAHEPA Registration are attached hereto as **Exhibit A** and incorporated herein by reference.

9.    In an effort to profit off Plaintiff's AirDoctor Brand, AIRDOCTOR Mark,

---

[2] Since the commencement of this action, AirDoctor updated its AirDoctor 3000 air purifier units, the current version is called AirDoctor 3500.

[3] The AIRDOCTOR Registration was originally filed by one of Plaintiff's affiliates, Ideal Living Ventures Limited, and was assigned to Plaintiff on December 31, 2018.

ULTRAHEPA Mark, AirDoctor Air Purifiers and AirDoctor UltraHEPA Filters, Defendants have flooded the marketplace with cheap, flimsy filters sold under the LINNIW Trademarks, isinlive Trademarks and/or JORAIR Trademarks that they advertise can "replace"; are "compatible with"; and/or "fit" Plaintiff's AirDoctor Air Purifiers; and/or meet the HEPA standard -- but they are neither "compatible with", nor properly "fit" in Plaintiff's AirDoctor Air Purifiers; nor do they meet the HEPA standard ("LINNIW Substandard Filters," "isinlive Substandard Filters," and "JORAIR Substandard Filters", respectively). The LINNIW Substandard Filters, isinlive Substandard Filters and JORAIR Substandard Filters are hereinafter collectively referred to as the "Substandard Filters".

10. By advertising that their filters "replace" genuine AirDoctor UltraHEPA Filters, are "compatible with" with AirDoctor Air Purifiers, and/or are "HEPA" grade filters, Defendants falsely claim that they provide the same filtration performance and efficiency as Plaintiff's AirDoctor UltraHEPA Filters.

11. In truth, Defendants' "replacement", "compatible with" and "HEPA" claims, are demonstrably false. Third-party laboratory testing of Defendants' Substandard Filters within the AirDoctor Air Purifiers confirms that they are made with ineffective materials that do not meet the minimum HEPA filtration standards, do not properly fit and seal within the AirDoctor Air Purifiers, and can cause inefficient air flow that may damage consumers' AirDoctor Air Purifiers.

12. Defendants' Substandard Filters do not meet the minimum industry standard for HEPA air filtration and are significantly inferior to genuine AirDoctor UltraHEPA Filters.

13. Defendants' conduct is causing irreparable harm to Plaintiff and its reputation. Further, Defendants are tricking AirDoctor's customers into purchasing Defendants' Substandard Filters with false promises that they provide the same level of filtration as genuine AirDoctor UltraHEPA Filters.

14. In sum, not only do Defendants' falsely advertised Substandard Filters decrease performance of the AirDoctor Air Purifiers and can cause damage to consumers' AirDoctor Air Purifiers, but Defendants' conduct poses potentially serious health risks for people with certain medical issues, including those with respiratory and allergy conditions, who rely on the high (HEPA and other) filtration standards and validated third party testing of the AirDoctor Air Purifiers and AirDoctor UltraHEPA Filters.

## PARTIES

15. Plaintiff AirDoctor, LLC is a Delaware limited liability company with its principal place of business in Sherman Oaks, California.

16. Upon information and belief, Defendant Lonni, Inc. ("Lonni") is a Colorado corporation with its principal place of business at 320 S Main St, Hasty, CO, 81044 and a business address at Upon information and belief, Defendant Lonni maintains a business address at 4301 S Valley View Suite 22, Las Vegas, NV 89103. Defendant Lonni operates the Amazon storefront "Lonnihome". Defendant Lonni is conducting substantial business throughout the United States, and this District, including on Amazon.com.

17. Upon information and belief, Defendant Shenzhen Mingdao is a Chinese entity that owns the isinlive Marks. Shenzhen Mingdao is conducting substantial business throughout the United States, and this District, including on Amazon.com.

18. Upon information and belief Defendant Shenzhen Dazhan is a Chinese entity and the owner of: the LINNIW Trademarks, the JORAIR Trademarks and the Amazon.com storefront "Joba 1" with an address of 407, Building 11, Bai Men Qian Industrial Zone, Longgang District, Shenzhen City, Guangdong Province, 518144 China. Defendant Dazhan Mingdao is conducting substantial business throughout the United States, and this District, including on Amazon.com.

19. Upon information and belief Defendant DongGuanShiLianRuiZhongXinWangLuoKeJiYouXianGongSi d/b/a JORAIR-FILTER is a Chinese entity that is operating the Amazon.com storefront "JORAIR-

FILTER" with an address of Baxingfang Village Road, Room 302, No. 33 Daoxia Road, Baxingfang Village, Humen Town, Dongguan City, Guangdong Province, 523899 China. Defendant DongGuanShiLianRuiZhongXinWangLuoKeJiYouXianGongSi d/b/a JORAIR-FILTER is conducting substantial business throughout the United States, and this District, including on Amazon.com.

20.     Upon information and belief, Defendant JORAIR-FILTER is a Chinese entity conducting substantial business throughout the United States, and this District, including on Amazon.com.

21.     Upon information and belief, Defendant Xincheng Holding (HK) Co., Limited is a Chinese entity with an address of Rm. 09.27/F Ho King Comm Ctr. 2-16 Fa Yuen St Mongkok KLN Hong Kong and/or No.2-309 2/F, Chungking Express, Nos.36 Nathan Road, TSIM SHA TSUI, Hong Kong. Defendant Xincheng is conducting substantial business throughout the United States and this District.

22.     Upon information and belief, Defendants are related and/or affiliated companies that have collectively engaged in the illegal conduct alleged herein, and have enriched themselves, while Plaintiff has suffered enormous financial injury.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

24.     This Court has personal jurisdiction over each of the Defendants, each of whom has engaged in business activities in this District and the State of California, offered for sale their Substandard Filters in this District and the State of California, knowingly and purposefully directed business activities to this District and the State of California, and availed themselves of the benefits afforded by California laws, and committed tortious acts, knowing that Plaintiff would suffer injuries in this District and the State of California.

25.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

EPSTEIN
DRANGEL LLP

CASE NO. 23-cv-353-GW-ASx
SECOND AMENDED COMPLAINT

Defendants have conducted, and continue to conduct, business in this District, and a substantial part of the events or omissions, including Plaintiff's injuries, giving rise to the claim occurred in this District.

## STATEMENT OF FACTS

### I.   Plaintiff and Its AirDoctor Air Purifiers

26.   The COVID-19 pandemic, which has now claimed over 1 million lives, along with the smoke generated by the surge in wildfires, has brought indoor air quality to the forefront for consumers in the last three years.

27.   More than just the pandemic and natural disasters, indoor air quality is critical to the health and wellness of millions worldwide.  In 2019, asthma affected an estimated 262 million people in 2019 and caused 455,000 deaths throughout the world. *See* https://www.who.int/news-room/fact-sheets/detail/asthma.

28.   More than 50 million people across the United States suffer from at least one type of allergy. *See* https://www.aafa.org/allergy-facts/. Allergies are the sixth leading chronic illness in the country. Many studies show that homes can have more allergens indoors than outdoors.

29.   Plaintiff AirDoctor is a purpose-driven consumer goods company based in Sherman Oaks, California. Plaintiff's mission is to create affordable and accessible products, relying on science and independent third-party testing.

30.   Plaintiff's research-driven approach helps create the most cutting-edge and effective air filtration solutions for consumers at affordable prices.

31.   One of Plaintiff's most popular and trusted products is its professional-grade AirDoctor Air Purifiers.

32.   Plaintiff has invested millions of dollars in the development and promotion of the AirDoctor Air Purifiers and its AirDoctor UltraHEPA Filters.

33.     The AirDoctor Air Purifiers are mechanical air purifiers that incorporate a 3-Stage filtration system that combines a cleanable pre-filter with AirDoctor's UltraHEPA filter and proprietary dual-action Carbon/Gas Trap/VOC filter:



Total 3-Stage Filtration + Quiet Performance

1. Cleanable Pre-Filter

2. Dual-Action, Carbon/Gas Trap/VOC Filter

3. UltraHEPA™ Filter

4. Whisper-Jet Fans

34.     The gold-standard of mechanical air filters are so-called "HEPA" filters. As defined by the U.S. Dept. of Energy ("DOE"), high-efficiency particulate air ("HEPA") filters work by forcing air through a fine mesh. Through a combination of diffusion, interception, and impaction, HEPA filters trap harmful airborne particles.

35.     Plaintiff's AirDoctor UltraHEPA Filters capture dust, pollen, pet dander, smoke, mold spores, volatile organic compounds, and household odors with an efficiency exceeding the DOE standard to "remove <u>at least</u> 99.97% of dust, pollen, mold, bacteria, and any airborne particles with a size of 0.3 microns."

36.     Independent laboratory testing of the AirDoctor Air Purifiers and AirDoctor UltraHEPA Filters confirms that they not only meet the HEPA standard (*See* **Exhibits E-F**), but also remove at least 99.99% of particles as small as 0.003 microns (or 100 times smaller than the HEPA standard).

37.     In order to achieve such a high efficiency, Plaintiff designed the AirDoctor Air Purifiers as a sealed system. A sealed system is critical for air purification because if unfiltered through gaps between the filter and the unit it decreases the effectiveness of the filter and the air purifier.

38.     In order to maintain a sealed system for the AirDoctor Air Purifiers, Plaintiff's genuine AirDoctor UltraHEPA Filter frames are designed and constructed with

high-quality plastic and rubber to create an air-tight seal with AirDoctor Air Purifiers' housing to ensure that all the air that passes through the unit is filtered through AirDoctor's 3-Stage filtration system.

39. In addition to AirDoctor's unique design, consumers choose the AirDoctor Air Purifiers because their performance is backed by rigorous, third-party laboratory testing. AirDoctor is one of the few companies in the industry to test and publish its products' effectiveness in removing bacteria and viruses, including SARS-CoV-2, and H1N1.

40. The AirDoctor Website allows consumers to view the laboratory test results:



*See* The AirDoctor Website (last accessed: October 23, 2025).

41. In order to ensure that the AirDoctor Air Purifiers function as designed and maintain a sealed system, Plaintiff recommends that its customers replace the filters in their AirDoctor Air Purifiers approximately once a year or every six (6) months, depending on usage or other indoor conditions. The six (6) month lifespan is supported by the documents attached hereto as **Exhibit G**.

42.     Plaintiff sells genuine replacement AirDoctor UltraHEPA Filters on the AirDoctor Website and third-party sites such as Amazon.com. *See* **Exhibit H**.

43.     Plaintiff advises consumers that the failure to use Plaintiff's genuine AirDoctor UltraHEPA Filters specifically designed for the AirDoctor Air Purifiers can damage the unit and voids the warranty for the product.

## II.     Defendants' Unfair, Unlawful and Misleading Business Practices

44.     In an effort to capitalize and profit off the goodwill and success of Plaintiff's AirDoctor Brand, AIRDOCTOR Mark, ULTRAHEPA Mark, AirDoctor Air Purifiers and AirDoctor UltraHEPA Filters, Defendants have flooded the marketplace, chiefly on Amazon.com, with Substandard Filters that Defendants claim are "replacements" or "compatible with" or "fit" AirDoctor Air Purifiers, as well as are HEPA-grade, in order to trick Plaintiff's customers into purchasing Defendants' Substandard Filters.

45.     As set forth below, Defendants' Substandard Filters use ineffective materials and, unlike genuine AirDoctor UltraHEPA Filters, do not create the proper seal in the AirDoctor Air Purifiers because the frames made of inexpensive paper and foam and/or other ineffective materials. Defendants' use of ineffective materials, coupled with the lack of a proper seal, allows unfiltered air to pass directly between and/or around the frame and filter materials, thereby further reducing the ability meet HEPA standards or properly filter when used in the AirDoctor Air Purifiers.

46.     Plaintiff purchased Defendants' Substandard Filters in this District through Amazon.com and had them tested by an independent third-party laboratory. The testing confirmed that Defendants' advertising claims are false and Defendants' Substandard Filters fall well short of the HEPA standard (not to mention AirDoctor's own performance and efficiency standards) when used within the AirDoctor Air Purifiers.

47.     Defendants' have used these false and misleading advertisements for their Substandard Filters to sell, as of the filing of this first amended complaint ("FAC"), millions of dollars' worth of knockoff filters on Amazon.com, alone, including $1,255,595.40 of LINNIW Substandard Filters, $148,947.74 of isinlive Substandard

Filters and $70,024.41 of JORAIR Substandard Filters.

48.    Defendants' conduct has directly diverted sales of Plaintiff's genuine AirDoctor UltraHEPA Filters from Plaintiff to Defendants' Substandard Filters and has harmed Plaintiff's goodwill and reputation.

49.    One or more of the Defendants falsely advertise and sell a variety of purported replacement air filters, including the Substandard Filters under the "LINNIW", "isinlive" and "JORAIR" Marks on Amazon.com.

50.    Defendant Lonni owned U.S. Trademark Reg. Nos. 5,830,125 for "LINNIW" for a variety of goods in Class 24 and 5,930,694 for " LINNIW " for a variety of goods in Class 21 (collectively, "LINNIW Registrations") and U.S. Trademark Application Serial No. 98/226,128 for "LINNIW" for a variety of goods in Class 11 (the "LINNIW Application") (the LINNIW Registrations and LINNIW Application are hereinafter collectively referred to as the, "LINNIW Marks"), at the time the Complaint was filed in this action.

51.    Defendant Lonni was and still is the owner and operator of the "Lonnihome" Amazon.com storefront through which it falsely advertised and/or sold the isinlive Substandard Filters.[4]

52.    On August 10, 2023, only two weeks after Plaintiff filed supplemental briefing on Defendant Lonni's Motion to Dismiss, presenting evidence that the LINNIW Marks connected Lonni to the LINNIW Substandard Filters that form the basis for this action, Lonni assigned the LINNIW Marks to Defendant Shenzhen Dazhan.

53.    Defendant Shenzhen Dazhan owns U.S. Trademark Reg. Nos. 5,873,138 for "JORAIR" covering goods in Class 21, 7,648,464 for "JORAIR" covering goods in Class 11 and 7,703,411 for "JORAIR" for goods in Class 21 ("JORAIR Marks").

---

[4] *See* https://www.amazon.com/sp?ie=UTF8&seller=A2ZBQLIMVNTIIJ&asin=B08GC3FK8P&ref_=dp_merchant_link&isAmazonFulfilled=1 (last accessed: October 23, 2025).

54.     Defendant Shenzhen Dazhan is the owner and operator of the "Joba-1" Amazon.com storefront through which it falsely advertises and sells LINNIW Substandard Filters.[5]

55.     Defendant Shenzhen Mingdao owns U.S. Trademark Reg. Nos. 6,777,146 for "iSinlive" covering goods in Class 7; 5,448,261 for "iSinlive" covering goods in Class 21; 5,334,404 for "isinlive" covering goods in Class 21 and 7,501,898 for "isinlive" covering goods in Class 11 (hereinafter "isinlive Marks").

56.     Defendants DongGuanShiLianRuiZhongXinWangLuoKeJiYouXianGongSi d/b/a JORAIR-FILTER are the owners and operators of the "JORAIR-FILTER" Amazon.com storefront through which they falsely advertise and sell JORAIR Substandard Filters.[6]

57.     On Amazon.com, one or more Defendants advertise that their LINNIW Substandard Filters are "HEPA" grade, are "premium H13 true HEPA", have "upgraded HEPA smart technology", are "compatible" with AirDoctor Air Purifiers and "replace" Plaintiff's AirDoctor UltraHEPA Filters, and have "perfect compatibility" with the AirDoctor Air Purifier.  *See* **Exhibit I**.

58.     Defendants also include the "HEPA" claim on the filters themselves, and

---

[5] *See* https://www.amazon.com/sp?ie=UTF8&seller=A39AOEFQGOYZS1&asin=B0B42SDDWZ&ref_=dp_merchant_link&isAmazonFulfilled=1 (last accessed: October 23, 2025).

[6] *See* https://www.amazon.com/s?me=A1SFJ5GVE2IHC&marketplaceID=ATVPDKIKX0DER (last accessed: October 23, 2025).

Plaintiff's AirDoctor Air Purifier model number "AD3000 H13 True HEPA Filter…" as well as the "HEPA" claim on the packaging for the LINNIW Substandard Filters as depicted below:




59.    In their advertising, labeling, and packaging, one or more Defendants convey the message to consumers that their LINNIW Substandard Filters meet the HEPA standard to trap 99.97% of airborne particles with a size of 0.3 microns. Moreover, by claiming their LINNIW Substandard Filters are "compatible" and "fit" AirDoctor Air Purifiers, Defendants indicate that their LINNIW Substandard Filters perform just as Plaintiff's genuine AirDoctor UltraHEPA Filters do within the AirDoctor Air Purifiers, and that they properly fit in the AirDoctor Air Purifiers to maintain a sealed system.

60.    Consumer comments on Amazon.com confirm that Defendants' advertising of the LINNIW Substandard Filters conveys the express message to consumers that the LINNIW Substandard Filters meet HEPA standards, provide equivalent performance to genuine AirDoctor UltraHEPA Filters, and fit properly in the AirDoctor Air Purifiers. For example:

*See* Exhibit I.

61.    Further, by using the terms "AIR DOCTOR." and "AD3000" and "Replacement Filters Compatible with AIRDOCTOR 4-in-1 Home Air Purifier AIR DR. AD3000", Defendants' advertising for the LINNIW Substandard Filters seeks to create a false association with AirDoctor and conveys the express claims to consumers that their LINNIW Substandard Filters provide the equivalent performance to AirDoctor UltraHEPA Filters when used in the AirDoctor Air Purifiers.

62.    However, independent, third-party laboratory testing of the LINNIW Substandard Filters confirms that Defendants' advertising is demonstrably false. Namely, testing of Defendants' LINNIW Substandard Filters confirms that its performance fails to meet the minimum HEPA standard to filter 99.97% of particles as small as 0.3 microns. *See* **Exhibits J** (test purchase) and **K** (lab testing results). In other words, the LINNIW Substandard Filters does not meet the performance and efficiency of genuine AirDoctor UltraHEPA Filters, does not "replace" Air Doctor AirDoctor UltraHEPA Filters, and are not "compatible" or "replacements".

63.    Also, on Amazon.com, one or more Defendants advertise that their isinlive Substandard Filters are "HEPA" grade, are "compatible" with Plaintiff's AirDoctor Air Purifiers. *See* **Exhibit L**.

64.    On Amazon.com, one or more Defendants directly compete with Plaintiff and specifically advertise that the isinlive Substandard Filters:

    a.    【FULL COMPATIBILITY】 -- Our High Quality AD3000 Replacement filter is compatible with AIRDOCTOR 4-in-1 AD3000

EPSTEIN
DRANGEL LLP

Air Puri-fier for Home and Large Rooms models AD3000, AD3000M, AD3000pro, Replace Part No. ADF3001, ADF3002. NOTE: Please check your model fit for AD3000 replacement filter before purchasing.

b. 【PREMIUM QUALITY】-- The AD3000 filter set for AIRDOCTOR air puri-fier is design with true HEPA filter including 1 H13 TRUE HEPA Filter + 2 Activated Carbon Filter + 4 Pre-filters (Note:2 Pre-filters have been attached to the carbon filter meet your needs and bring convenience).

c. 【H13 TRUE HEPA FILTER】-- High Performance AD3000 replacement filter with H13 True HEPA 3-Stage system made of high quality material, can effectively attaching 99.97% of all airborne particles as tiny as 0.3 microns, including all pet odors,cooking odors, dust, hairs, pet fur, lint and gases from your home to improve the air quality and your health.

*See* **Exhibit L** (emphasis added).

65.    Defendants also emphasize that the isinlive Substandard Filters meets the HEPA standard and is a "Premium True HEPA Filter" and "H13 True HEPA Filter" and "3-Stage [] Filtration" (*See* Exhibit L):



66.    Defendants state that their filters meet the "HEPA" standard on the isinlive Substandard Filters themselves as depicted below:



67.    In addition, Defendants advertise "full compatibility" and "perfect match" for the AirDoctor Air Purifiers:



68.    In their advertising, labeling and packaging, one or more Defendants convey the message to consumers that their isinlive Substandard Filters meet the HEPA standard. Moreover, by claiming their isinlive Substandard Filters are "compatible" with AirDoctor Air Purifiers, Defendants indicate that their insinlive Substandard Filters perform just as Plaintiff's genuine AirDoctor UltraHEPA Filters do within the AirDoctor Air Purifiers, and that they properly fit in the AirDoctor Air Purifiers to maintain a sealed system.

69.    Consumer reviews on Amazon.com confirm that Defendants' advertising for the isinlive Substandard Filters conveys the express message to consumers that the isinlive Substandard Filters meet HEPA standards, provide equivalent performance to genuine AirDoctor UltraHEPA Filters, and fit properly in the AirDoctor Air Purifiers. For example:

Susette H.
★★★★★ **Perfect**
Reviewed in the United States 🇺🇸 on June 22, 2023
**Verified Purchase**
Works very good with my air doctor and a better price.

Helpful  |  Report

David P.
★★★★★ **Good replacement**
Reviewed in the United States 🇺🇸 on April 15, 2023
**Verified Purchase**
Bought these as replacements for originals with Air Doctor and they worked great. Save yourself some money and get these!

One person found this helpful

Helpful  |  Report

70.    Further, by using the terms "AirDoctor" and "AD3000" and "AD3000, AD3000M, AD3000pro, Replace Part No. ADF3001, ADF3002", Defendants' advertising for their isinlive Substandard Filters seeks to create a false association with AirDoctor and conveys the express claims to consumers that their isinlive Substandard Filters provide the equivalent performance to AirDoctor UltraHEPA Filters when used in

the AirDoctor Air Purifiers.

71.   However, independent, third-party laboratory testing of Defendants' isinlive Substandard Filters confirms that Defendants' advertising for the isinlive Substandard Filters is demonstrably false. Namely, testing of Defendants' isinlive Substandard Filters inside the AirDoctor Air Purifiers confirms that it fails to create an airtight seal and its performance fails to meet the minimum HEPA standard to filter 99.97% of particles as small as 0.3 microns. *See* **Exhibits M** (test purchase) and **N** (lab testing results). In other words, the isinlive Substandard Filters does not meet the performance and efficiency of genuine AirDoctor UltraHEPA Filters.

72.   Finally, also on Amazon.com one or more Defendants advertises its JORAIR Substandard Filters as "medical grade H13 true HEPA filter," that provide "H13 True HEPA -- 99.97% High-Efficincy Filtration", and are "Compatible" with Plaintiff's AirDoctor Air Purifiers, and "AD3000 Replacement Filters For AIR DOCTOR 1 pack H13 True HEPA." *See* **Exhibit O**.



- 🌀 【H13 True HEPA -- 99.97% High-Efficiency Filtration】 These AD3000 replacement filters use medical grade H13 true HEPA filter , which meets the high-Efficiency Particulate Air (HEPA) standard. It can filter 99.97% of airborne parti cles larger than 0.3 microns.

73.   Defendants also include the "HEPA" claim on the JORAIR Substandard Filters themselves, on the product packaging, *see* **Exhibit O**.



74.     In their advertising, labeling, and packaging, Defendants convey the message to consumers that its JORAIR Substandard Filters meet the HEPA standard to trap 99.97% of airborne particles with a size of 0.3 microns. Moreover, by claiming their JORAIR Substandard Filters are "compatible with" and "for" AirDoctor Air Purifiers, Defendants indicate that its JORAIR Substandard Filters perform just as Plaintiff's genuine AirDoctor UltraHEPA Filters do within the AirDoctor Air Purifiers, and that they properly fit in the AirDoctor Air Purifiers to maintain a sealed system.

75.     Consumer reviews on Amazon.com confirm that Defendants' advertising for the JORAIR Substandard Filters conveys the express message to consumers that the JORAIR Substandard Filters meet HEPA standards, provide equivalent performance to genuine AirDoctor UltraHEPA Filters, and fit properly in the AirDoctor Air Purifiers. For example:



76.     Moreover, in addition to claiming their JORAIR Substandard Filters are

"compatible with" a "replacement" for genuine AirDoctor UltraHEPA Filters and are "for" AirDoctor Air Purifiers, Defendants include a photo showing the distinctive housing of the AirDoctor Air Purifier with Defendants' JORAIR Substandard Filters to further convince consumers that its JORAIR Substandard Filters are "compatible" and properly fit in the AirDoctor Air Purifiers to maintain a sealed system. *See* **Exhibit O**.



77.    Defendants' false advertising has harmed (and continues to harm) AirDoctor, its sales, its goodwill and its reputation.  Moreover, Defendants have deceived AirDoctor's customers in purchasing filters that Defendants claim are equivalent to genuine AirDoctor UltraHEPA Filters, when they are not.

78.    Defendants also include AirDoctor part numbers "ADF3001, ADF3002" in their description of the JORAIR Substandard Filters to further convince users that their JORAIR Substandard Filters are the same quality and provide the same benefits as genuine AirDoctor UltraHEPA Filters.

**About this item**

- 🎁 【Application】 AD3000 Replacement Filters Combo Compatible with AIRDOCTOR For AIR DOCTOR 4-in-1 Home AIR DR. AD3000 AD3000M 3000PRO, Compare to Part NO.:  ADF3001, ADF3002

*See* **Exhibit O**.

79.    By using the terms "Air Doctor," "AD3000," "AD3000M," "AD3000pro,"

"AD3000 Replacement Filters Combo Compatible with AIRDOCTOR For AIR DOCTOR 4-in-1 Home," and indicating that its products are a "AD3000 replacement filter set for AIRDOCTOR," along with AirDoctor part numbers, Defendants' advertising seeks to create a false association with AirDoctor and genuine AirDoctor Air Purifiers and AirDoctor UltraHEPA Filters to support its express claims to consumers that its JORAIR Substandard Filters provide the same quality and equivalent performance to AirDoctor UltraHEPA Filters when used in the AirDoctor Air Purifiers.

80.     On Amazon.com, Defendants directly compete with Plaintiff and specifically advertise the JORAIR Substandard Filters as:

> a.  H13 True HEPA -- 99.97% High-Efficiency Filtration
>
> b.  These AD3000 replacement filters use medical grade H13 true HEPA filter, which meets the high-Efficiency Particulate Air (HEPA) standard. It can filter 99.97% of airborne particles larger than 0.3 microns.

*See* **Exhibit O**.

81.     However, independent, third-party laboratory testing of Defendants' JORAIR Substandard Filters confirms that Defendants' advertising is demonstrably false. Namely, testing of Defendants' JORAIR Substandard Filters confirms that their performance fails to meet the minimum HEPA standard to filter 99.97% of particles as small as 0.3 microns. *See* **Exhibits P** (test purchases) and **Q** (lab testing results). In other words, Defendants' JORAIR Substandard Filters do not meet the performance and efficiency of genuine AirDoctor UltraHEPA Filters, are not a "replacement" for AirDoctor UltraHEPA Filters, and are not "compatible" with AirDoctor Air Purifiers.

82.     Upon information and belief, Defendant Xincheng is the *de facto* operator of Defendants' businesses as it performs functions for Defendants including, without limitation, coordinating the manufacture and sale of the Substandard Filters, coordinating testing of the Substandard Filters, tax and financial services, registration and assignments of trademarks along with preparing and/or concealing documents for this litigation.

Xincheng additionally ships the Substandard Filters to Amazon in the United States for sale on Defendants' storefronts on Amazon.com.

## III.   Damages and Lost Profits

83.   Defendants' false advertising has harmed (and continues to harm) AirDoctor, its sales, its goodwill and its reputation. Moreover, Defendants have deceived AirDoctor's customers into purchasing Substandard Filters that Defendants claim are equivalent to genuine AirDoctor UltraHEPA Filters, when they are not.

84.   Defendants' conduct has injured AirDoctor, AirDoctor's customers, and placed the health of those customers at risk who depend on their AirDoctor Air Purifiers to perform at the appropriate and advertised efficiency.

85.   Plaintiff uses Helium-10's "Black Box" research tool to track sales of competitive products on Amazon.com.

86.   Helium-10's Black Box research tool pulls "data directly from Amazon and currently tracks the existing sales demand of over 450 million products." *See* https://www.helium10.com/tools/product-research/black-box/.

87.   Based on a comparison of Helium-10's data on the sales of Plaintiff's products with Plaintiff's own Amazon.com sales figures, Helium-10's data is extremely accurate within a six percent (6%) variance.

88.   Plaintiff used Helium-10's Black Box service to track the sales of Defendants' Substandard Filters. From December 2021 to April 2024, Helium-10 reported units sold, revenue by Defendant as follows: Defendants sold 27,179 units of LINNIW Substandard Filters resulting in revenues of $1,257,071.40; 3,207 units of isinlive Substandard Filters resulting in revenues of $148,947.74 and 1,484 units of JORAIR Substandard Filters $70,024.41 (collectively "Defendants' Revenue"). Due to Defendant Xincheng's involvement in Defendants' businesses, Xincheng is jointly and severally liable for the full amount of damages sustained by Plaintiff.

## CAUSES OF ACTION

## COUNT I
## VIOLATION OF LANHAM ACT
## FALSE ADVERTISING
## (15. U.S.C. § 1125(a))

89.     Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

90.     Plaintiff and Defendants are direct competitors in the market for the sale of replacement filters for Plaintiff's AirDoctor Air Purifiers.

91.     Defendants have used and, on information and belief, continue to use false and misleading descriptions and representations of fact in commercial advertising and promotion about the nature, characteristics, and qualities of their Substandard Filters. Those false and misleading descriptions and representations of fact have deceived or have the tendency to deceive a substantial portion of the relevant purchasing public.

92.     As alleged above, Defendants' advertising and promotion of purported replacement filters for Plaintiff's AirDoctor Air Purifiers contain demonstrably false statements and misrepresentations, which has caused, and continues to cause, Plaintiff to suffer damages to its business and goodwill, loss of sales, and profits it would have made but for Defendants' wrongful acts. These false and misleading statements by Defendants constitute false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

93.     Defendants cause, and have cause, their false and misleading advertising to enter interstate commerce, including by making false and misleading statements in advertisement and promotional materials to consumers and others in the distribution chain throughout the United States (including this District), including without limitation, on Amazon.com and on packaging and labeling for the Substandard Filters as well as on the Substandard Filters themselves.

94.     Defendants' false and misleading statements are material in that they have

influenced and are likely to influence the purchasing decisions of consumers and others in the distribution chain because they relate to inherent qualities or characteristics of Defendants' Substandard Filters.

95.     As a direct and proximate result of the wrongful acts of Defendants as alleged above, Plaintiff has suffered, and will continue to suffer, substantial damage to its business reputation, goodwill, and market share, as well as loss of profits in an amount not yet ascertained.

96.     Defendants' false advertising will continue to harm Plaintiff (and Plaintiff's customers), causing irreparable injury for which there is no adequate remedy at law, unless permanently enjoined by this Court.

97.     Plaintiff is entitled to monetary damages in the amount of Plaintiff's actual damages or Defendants' profits resulting from Defendants' false advertising, in an amount to be proven at trial.

98.     Plaintiff is also entitled to an accounting of Defendants' profits resulting from its Lanham Act violations.

99.     Upon information and belief, Defendants' false advertising is willful, knowing, calculated to deceive, and was undertaken in bad faith. As a result, this Court should determine that this is an exceptional case and award Plaintiff enhanced damages, its attorneys' fees, and costs incurred in prosecuting this action.

## COUNT II
## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
### (Cal. Bus. & Prof. Code, § 17200, et seq.)

100.    Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

101.    California Business and Professions Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

102.    As alleged herein, Plaintiff has standing to pursue this claim as Plaintiff has

suffered injury in fact and has lost money or property as a result of Defendants' actions.

103. For the reasons discussed above, Defendants have engaged in unfair, deceptive, untrue and misleading advertising and unlawful, unfair and fraudulent business practices in violation of California Business & Professions Code §17200. Defendants' conduct caused substantial injury to Plaintiff. Plaintiff has suffered injury in fact and has lost money as a result of Defendants' unfair conduct.

104. Pursuant to section 17203 of the California Business & Professions Code, Plaintiff seeks an order of this court enjoining Defendants from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including, but not limited to: (a) selling, marketing, or advertising the Substandard Filters with false representations set forth above; (b) engaging in any of the illegal, fraudulent, misleading, unlawful, unfair and/or deceptive conduct described herein; and (c) engaging in any other conduct found by the Court to be illegal, fraudulent, misleading, unlawful, unfair and/or deceptive conduct.

105. In addition, Plaintiff requests that this Court enter such orders or judgments as may be necessary to restore Plaintiff any money which may have been acquired by means of such unlawful, unfair, or fraudulent practices as provided in Business & Professions Code § 17203, and for such other relief as set forth below.

## COUNT III
## VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW
### (Cal. Bus. & Prof. Code, § 17500, et seq.)

106. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

107. As alleged herein, Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendants' actions.

108. Defendants violated Business & Professions Code § 17500 by publicly disseminating false and misleading commercial advertising and promotions about the nature, characteristics, and qualities of their Substandard Filters.

109. Defendants' false and misleading advertisements were disseminated to increase the sales of the Substandard Filters.

110. Defendants knew or should have known that their advertisements for the Substandard Filters were false and misleading and that those advertisements would induce consumers to purchase the Substandard Filters. Such advertisements have deceived and are likely to deceive the consuming public, in violation of Business & Professions Code § 17500.

111. Defendants are aware, or by the exercise of reasonable care should have been aware, that the representations in the listings for the Substandard Filters, on the packaging and labeling for the Substandard Filters and on the Substandard Filters themselves were untrue or misleading.

112. Plaintiff has suffered injury in fact and has lost money as a result of Defendants' false representations and false advertising.

113. Pursuant to Business & Professions Code § 17535, Plaintiff seeks an order of this Court enjoining Defendants from continuing to engage, use, or employ their advertisement and sale of their purported replacements for genuine AirDoctor UltraHEPA Filters.

114. Plaintiff seeks an order requiring Defendants to disclose such misrepresentations, including all prior representations, and additionally requests an order awarding Plaintiff restitution of the money wrongfully acquired by Defendants by means of said misrepresentations and false advertising.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment against Defendants as follows:

A.     Finding that Defendants have violated the Lanham Act, the California Unfair Competition Law, and the California False Advertising Law;

B.     Entering Judgment in favor of Plaintiff;

C.     Temporarily, preliminarily, and permanently enjoining, restraining, and forbidding Defendants and their principals, servants, officers, directors, partners, agents,

EPSTEIN DRANGEL LLP

SECOND AMENDED COMPLAINT

representatives, shareholders, employees, affiliates, successors, assignees, and all others acting in concert, or who participates with Defendants, from further violations of the Lanham Act, the California Unfair Competition Law, and the California False Advertising Law as alleged herein;

D.   Requiring Defendants to disseminate, at their sole and exclusive cost, corrective advertising to consumers;

E.   Awarding to Plaintiff actual, compensatory, consequential, statutory, special, and/or punitive damages in an amount to be proven at trial and/or otherwise provided for by law in the amount of no less than either (1) Plaintiff's lost profits as of the date of this FAC, (2) Defendants' Revenue in the event of default, or (3) Defendants' profits in an amount to be proven at trial plus any lost profits, revenue or profits earned by Defendants and/or any other damages based on any and all additional sales of Substandard Filters discovered following the date of this FAC through trial  or summary or default judgment;

F.   Awarding Plaintiff restitution;

G.   Awarding Plaintiff interest, costs, and reasonable attorneys' fees incurred by Plaintiff in prosecuting this action; and

H.   Awarding any and all further relief that this Court deems just and proper.

Respectfully submitted,

DATED: October 24, 2025          EPSTEIN DRANGEL LLP

By:   *s/ Peter J. Farnese*
Peter J. Farnese

Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

DATED: October 24, 2025

EPSTEIN DRANGEL LLP

By:    *s/ Peter J. Farnese*
          Peter J. Farnese

Attorneys for Plaintiff