**EPSTEIN DRANGEL LLP**
Ashly E. Sands (*pro hac vice*)
asands@ipcounselors.com
Danielle S. Futterman (*pro hac vice*)
dfutterman@ipcounselors.com
60 East 42nd Street, Suite 1250
New York, New York 10165
Telephone:   212-292-5390
Facsimile:   212-292-5391

Peter J. Farnese (SBN 251204)
pfarnese@ipcounselors.com
700 South Flower Street, Suite 1000
Los Angeles, California 90017
Telephone:   310-356-4668
Facsimile:   310-388-1232

Attorneys for Plaintiff,
AirDoctor, LLC

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIRDOCTOR, LLC,<br><br>                     Plaintiff,<br><br>          v.<br><br>LONNI, INC., SHENZHEN MINGDAO YOUSHU E-COMMERCE CO., LTD., SHENZHEN DAZHAN PENGTU INTERNET CO., LTD., DONGGUAN LIANRUI ZHONGXIN NETWORK TECHNOLOGY CO., LTD. a/k/a DONGGUAN SHI LIANRUIZHONGXINWANGLUOKEJIYOUXIANGONGSI d/b/a JORAIR-FILTER, and XINCHENG HOLDING (HK) CO., LIMITED,<br><br>                     Defendants. | CASE NO. 23-cv-353-GW-ASx<br><br>**THIRD AMENDED COMPLAINT FOR:**<br><br>1.    VIOLATION OF LANHAM ACT (15. U.S.C. § 1125(a))<br><br>2.    VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code, § 17200, et seq.)<br><br>3.    VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW (Cal. Bus. & Prof. Code § 17500, et seq.)<br><br>**JURY TRIAL DEMANDED** |

Plaintiff AirDoctor, LLC ("Plaintiff" or "AirDoctor") hereby complains against Lonni, Inc., ( "Lonni"), Shenzhen Mingdao Youshu E-Commerce Co., Ltd. ("Mingdao"), Shenzhen Dazhan Pengtu Internet Co., Ltd. ("DP"), Dongguan Lianrui Zhongxin Network Technology Co., Ltd. a/k/a DongGuanShiLianRuiZhongXinWangLuoKeJiYouXianGongSi d/b/a JORAIR-FILTER (collectively, ("Lianrui") and Xincheng Holding (HK) Co., Limited ("Xincheng") (hereinafter collectively referred to as "Defendants") and alleges as follows:

## INTRODUCTION

1.    This is an action seeking injunctive relief and damages to halt and recover from Defendants' false and misleading advertising of purported "replacement" air filters for Plaintiff's popular AirDoctor 3000 (a/k/a AD3000) mechanical air purifiers which are designed with a 3-Stage Filtration System, including a UltraHEPA filter which are sold under Plaintiff's AIRDOCTOR brand and trademark (as defined *infra*) (hereinafter, "AirDoctor Air Purifiers" and "AirDoctor Brand," respectively).

2.    "HEPA" is an acronym for "high efficiency particulate air [filter]" defined by the U.S. Dept. of Energy to "remove at least 99.97% of dust, pollen, mold, bacteria, and any airborne particles with a size of 0.3 microns." (emphasis added).[1]

3.    Plaintiff's genuine UltraHEPA filters sold under the ULTRAHEPA Mark (as defined infra), that are made especially for its AirDoctor Air Purifiers which have a twelve (12) month filter life, are made with high-quality filter materials proper pleating (including total filter material area) and 138 pleats to meet Plaintiff's performance and efficiency standards, are designed to meet or exceed the DOE HEPA standard and capture contaminants such as dust, pollen, mold spores, smoke, pet hair, and dander, bacteria and viruses ("AirDoctor UltraHEPA Filters").

4.    Plaintiff's AirDoctor Air Purifiers have earned the trust of health-conscious consumers, allergy sufferers, and others with medical or respiratory conditions, to provide

---

[1] https://www.epa.gov/indoor-air-quality-iaq/what-hepa-filter.

powerful and effective air filtration for their homes and businesses with over one million units sold.

5. In fact, unlike many competitors, Plaintiff advertises independent third-party laboratory testing showing the AirDoctor Air Purifiers' effectiveness -- allowing consumers to view the testing results on the AirDoctor website, https://airdoctorpro.com/ ("AirDoctor Website"). For instance, AirDoctor advertises that:

   a. AirDoctor 3000 is tested and proven to remove 99.97% of the live SARS-CoV-2 virus from the air in a controlled test chamber (*See* **Exhibit A**);

   b. AirDoctor 3000 is tested and proven to remove 99.99% of tested bacteria & viruses, including H1N1 (*See* **Exhibit B**);

   c. AirDoctor 3000 is tested and proven to capture airborne particles as small as 0.003 microns in size (*See* **Exhibit C**).

6. Plaintiff owns all registered and unregistered intellectual property rights in and to its AirDoctor Brand, AirDoctor Air Purifiers and AirDoctor UltraHEPA Filters, including both registered and unregistered copyrights and trademarks.

7. Plaintiff has protected its valuable rights by filing for, and obtaining, federal trademark registrations covering its AIRDOCTOR and ULTRAHEPA trademark. For example, Plaintiff AirDoctor owns U.S. Trademark Reg. No. 5177385 for AIRDOCTOR in Class 11 ("AIRDOCTOR Registration" and "AIRDOCTOR Mark", respectively)[2] and U.S. Trademark Reg. No. 6300545 for ULTRAHEPA in Class 11 ("ULTRAHEPA Registration" and "ULTRAHEPA Mark", respectively).

8. True and correct copies of the AIRDOCTOR Registration and the ULTRAHEPA Registration are attached hereto as **Exhibit D** and incorporated herein by reference.

9. Upon information and belief, in an effort to delude consumers into the false belief that Defendants' Substandard Filters (as defined *infra*) are the equivalent or

[2] The AIRDOCTOR Registration was originally filed by one of Plaintiff's affiliates, Ideal Living Ventures Limited, and was assigned to Plaintiff on December 31, 2018.

superior to Plaintiff's AirDoctor UltraHEPA Filters and profit off of the success of Plaintiff's AirDoctor Brand, AirDoctor Air Purifiers and AirDoctor UltraHEPA Filters, Defendants have flooded the marketplace with cheap, substandard filters sold under the LINNIW Trademarks, isinlive Trademarks and/or JORAIR Trademarks ("LINNIW Substandard Filters," "isinlive Substandard Filters," and "JORAIR Substandard Filters", respectively). that they advertise can "replace" the AirDoctor UltraHEPA Filters; are "compatible with"; and/or "fit" Plaintiff's AirDoctor Air Purifiers; and/or meet the HEPA standard. The LINNIW Substandard Filters, isinlive Substandard Filters and JORAIR Substandard Filters are hereinafter collectively referred to as the "Substandard Filters".

10.    But in reality, they are not "replacements for" the AirDoctor UltraHEPA Filters, nor are they "compatible with" the AirDoctor Air Purifier, nor do they properly "fit" in Plaintiff's AirDoctor Air Purifier; nor do they meet the HEPA standard or Plaintiff's own performance and efficiency standards.

11.    By advertising that their Substandard Filters "replace" genuine AirDoctor UltraHEPA Filters, are "compatible with", "fit" AirDoctor Air Purifiers, meet the HEPA standard, and/or that they meet any of AirDoctor's other advertised performance capabilities, Defendants falsely claim that they provide the same filtration performance and efficiency as Plaintiff's AirDoctor UltraHEPA Filters.

12.    In truth, Defendants' "replacement", "compatible with" and "HEPA" claims, are demonstrably false. Third-party laboratory testing of Defendants' Substandard Filters within and outside the AirDoctor Air Purifiers confirms that they are made with ineffective materials that do not meet AirDoctor's own performance and efficiency standards, do not meet the minimum HEPA filtration standards, do not properly fit and seal within the AirDoctor Air Purifiers, and can cause inefficient air flow that may damage consumers' AirDoctor Air Purifiers.

13.    Defendants' conduct has caused and is causing irreparable harm to Plaintiff and its reputation. Further, Defendants were and/or are tricking AirDoctor's customers

into purchasing Defendants' Substandard Filters with false promises that they provide the same level of filtration as genuine AirDoctor UltraHEPA Filters.

14. In sum, not only do Defendants' falsely advertised Substandard Filters decrease performance of the AirDoctor Air Purifiers and can cause damage to consumers' AirDoctor Air Purifiers, but using the Substandard Filters in an AirDoctor Air Purifier poses potentially serious health risks for people with certain medical issues, including those with respiratory and allergy conditions, who rely on the high (HEPA and other) filtration standards and validated third party testing of the AirDoctor Air Purifiers and AirDoctor UltraHEPA Filters.

## PARTIES

15. Plaintiff AirDoctor, LLC is a Delaware limited liability company with its principal place of business in Sherman Oaks, California.

16. Upon information and belief, Defendant Lonni is a Colorado corporation with its principal place of business at 320 S Main St, Hasty, CO, 81044 and a business address at 4301 S Valley View Suite 22, Las Vegas, NV 89103. Defendant Lonni operates the Amazon storefront "Lonnihome". Defendant Lonni is conducting substantial business throughout the United States, and this District, including on Amazon.com.

17. Upon information and belief, Defendant Mingdao is a Chinese entity that owns the isinlive Marks. Mingdao is conducting substantial business throughout the United States, and this District, including on Amazon.com.

18. Upon information and belief Defendant DP is a Chinese entity and the owner of: the LINNIW Trademarks, the JORAIR Trademarks and the Amazon.com storefront "Joba 1" with an address of 407, Building 11, Bai Men Qian Industrial Zone, Longgang District, Shenzhen City, Guangdong Province, 518144 China. Defendant DP is conducting substantial business throughout the United States, and this District, including on Amazon.com.

EPSTEIN DRANGEL LLP

- 4 -                                                CASE NO. 23-cv-353-GW-ASx

THIRD AMENDED COMPLAINT

19. Upon information and belief Defendant Lianrui is a Chinese entity that is operating the Amazon.com storefront "JORAIR-FILTER" with an address of Baxingfang Village Road, Room 302, No. 33 Daoxia Road, Baxingfang Village, Humen Town, Dongguan City, Guangdong Province, 523899 China. Defendant Lianrui is conducting substantial business throughout the United States, and this District, including on Amazon.com.

20. Upon information and belief, Defendant Xincheng Holding (HK) Co., Limited is a Chinese entity with an address of Rm. 09.27/F Ho King Comm Ctr. 2-16 Fa Yuen St Mongkok KLN Hong Kong and/or No.2-309 2/F, Chungking Express, Nos. 36 Nathan Road, TSIM SHA TSUI, Hong Kong. Defendant Xincheng is regularly conducting substantial business throughout the United States and this District including, without limitation, through its website Lubluebu.com and on Amazon.com.

21. Upon information and belief, at all times relevant hereto, each Defendant was the agent, servant, partner, alter ego, and/or joint venturer of the other Defendants, and acted within the course and scope of such relationship

22. Upon information and belief, Defendants are related and/or affiliated companies that have collectively engaged in the illegal conduct alleged herein, and have enriched themselves, while Plaintiff has suffered enormous financial injury.

## **JURISDICTION AND VENUE**

23. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

24. This Court has personal jurisdiction over each of the Defendants, each of whom has engaged in business activities in this District and the State of California, offered for sale their Substandard Filters in this District and the State of California, knowingly and purposefully directed business activities to this District and the State of California, and availed themselves of the benefits afforded by California laws, and committed tortious acts, knowing that Plaintiff would suffer injuries in this District and the State of

California.

25.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. Defendants have conducted, and continue to conduct, business in this District, and a substantial part of the events or omissions, including Plaintiff's injuries, giving rise to the claim occurred in this District.

## STATEMENT OF FACTS

### I.    Plaintiff and Its AirDoctor Air Purifiers

26.    The COVID-19 pandemic, which has now claimed over 1 million lives, along with the smoke generated by the surge in wildfires, has brought indoor air quality to the forefront for consumers in the last five years.

27.    More than just the pandemic and natural disasters, indoor air quality is critical to the health and wellness of millions worldwide. In 2019, asthma affected an estimated 262 million people in 2019 and caused 455,000 deaths throughout the world. *See* https://www.who.int/news-room/fact-sheets/detail/asthma.

28.    More than 50 million people across the United States suffer from at least one type of allergy. *See* https://www.aafa.org/allergy-facts/. Allergies are the sixth leading chronic illness in the country. Many studies show that homes can have more allergens indoors than outdoors.

29.    Plaintiff AirDoctor is a purpose-driven consumer goods company based in Sherman Oaks, California. Plaintiff's mission is to create affordable and accessible products, relying on science and independent third-party testing.

30.    Plaintiff's research-driven approach helps create the most cutting-edge and effective air filtration solutions for consumers at affordable prices.

31.    One of Plaintiff's most popular and trusted products is its AirDoctor Air Purifier.

32.    Plaintiff has invested millions of dollars in the development and promotion of the AirDoctor Air Purifiers and its AirDoctor UltraHEPA Filters.

33.    The AirDoctor Air Purifiers are mechanical air purifiers that incorporate a 3-Stage filtration system that combines a cleanable pre-filter with AirDoctor's UltraHEPA filter and proprietary dual-action Carbon/Gas Trap/VOC filter:



Total 3-Stage Filtration + Quiet Performance

1. Cleanable Pre-Filter

2. Dual-Action, Carbon/Gas Trap/VOC Filter

3. UltraHEPA™ Filter

4. Whisper-Jet Fans

34.    The gold-standard of mechanical air filters are so-called "HEPA" filters. As defined by the U.S. Dept. of Energy ("DOE"), high-efficiency particulate air ("HEPA") filters work by forcing air through a fine mesh. Through a combination of diffusion, interception, and impaction, HEPA filters trap harmful airborne particles.

35.    Plaintiff's AirDoctor UltraHEPA Filters capture dust, pollen, pet dander, smoke, mold spores, volatile organic compounds, and household odors with an efficiency exceeding the DOE standard to "remove at least 99.97% of dust, pollen, mold, bacteria, and any airborne particles with a size of 0.3 microns."

36.    Independent laboratory testing of the AirDoctor Air Purifiers and AirDoctor UltraHEPA Filters confirms that they not only meet the HEPA standard (*See* **Exhibits E-F**) but also remove at least 99.99% of particles as small as 0.003 microns (or 100 times smaller than the HEPA standard).

37.    In order to achieve such a high efficiency, Plaintiff designed the AirDoctor Air Purifiers as a sealed system. A sealed system is critical for air purification because if unfiltered through gaps between the filter and the unit it decreases the effectiveness of the filter and the air purifier.

38.    In order to maintain a sealed system for the AirDoctor Air Purifiers, Plaintiff's genuine AirDoctor UltraHEPA Filter frames are designed and constructed with

high-quality plastic and rubber to create an air-tight seal with AirDoctor Air Purifiers' housing to ensure that all the air that passes through the unit is filtered through AirDoctor's 3-Stage filtration system.

39.     In addition to AirDoctor's unique design, consumers choose the AirDoctor Air Purifiers because their performance is backed by rigorous, third-party laboratory testing. AirDoctor is one of the few companies in the industry to test and publish its products' effectiveness in removing bacteria and viruses.

40.     In addition, at all relevant times, Plaintiff's AirDoctor Air Purifier, which includes the AirDoctor UltraHEPA Filter was ENERGY STAR certified. Notably, such certification was obtained through testing that was done with Plaintiff's UltraHEPA Filters. A true and correct Certificate of Conformity is attached hereto as **Exhibit G**.

41.     An ENERGY STAR certification and any certification by the Association of Home Appliance Manufacturers ("AHAM") is done with AirDoctor's UltraHEPA Filters and does not apply when other replacement filters are used unless the AirDoctor Air Purifier is tested with such filers.

42.     Clean Air Delivery Rate testing ("CADR") is a method standardized by AHAM to measure an air purifier's effectiveness at removing specific particles from the air. The CADR test, which is American National Standards Institute ("ANSI")-accredited and used by the U.S. Environmental Protection Agency's ("EPA") ENERGY STAR program, introduces contaminants like smoke, pollen, and dust into a sealed room and measures how quickly the purifier filters them out. The result is a numerical rating for each pollutant, with a higher number indicating a faster rate of cleaning.

43.     CADR for smoke, dust and pollen is determined by AHAM's AC-1 test.

44.     CADR is a measure of how quickly an air purifier filters pollutants, while the ENERGY STAR certification indicates that the product is energy-efficient. To qualify for the use of the ENERGY STAR label, an air cleaner must meet a minimum CADR-to-Watt ratio, which means it delivers a high rate of clean air for the amount of energy it consumes.

45.     ENERGY STAR certified indicates that a product or building meets strict energy efficiency guidelines set by the EPA. This label signifies that the item uses less energy, which can lead to lower utility bills and a reduced environmental impact.

46.     To earn the ENERGY STAR certification label for products, manufacturers are required to sign a formal agreement with EPA and products must be third-party certified against strict performance requirements.

47.     The EPA also oversees post-market testing of a subset of all products each year to ensure product performance, as well as periodic audits of product labeling on shelves at major retailers to monitor use of the ENERGY STAR certification label. This testing involves secret purchase of the product by an anonymous buyer, thus eliminating the competitive advantage associated with possible cheating and preserves the ENERGY STAR certification label's value in the marketplace.

48.     The below chart demonstrates the performance of the AirDoctor Air Purifier in terms of CADR and that it meets ENERGY STAR standards. This establishes base performance levels with the AirDoctor UltraHEPA Filter. True and correct copies of CADR testing of the AirDoctor Air Purifier are attached hereto as **Exhibit H.**

| | | Smoke | Dust | Pollen | |
|---|---|---|---|---|---|
| Air Doctor CADR Test result | 2016 | 326 | 343 | 373 | Original |
| 210330083GZU -001 | 2021 | 340 | 328 | 377 | Improved version (new motor) |

49.     It is fraudulent for another company to claim that it had a replacement filter compatible with an air purifier unit, if they had no data to show that it would perform equivalently to this.

50.     In order to ensure that the AirDoctor Air Purifiers function as designed and maintain a sealed system, Plaintiff recommends that its customers replace the AirDoctor UltraHEPA Filters in their AirDoctor Air Purifiers approximately once a year for AirDoctor UltraHEPA Filters and every six (6) months for the Carbon/VOC, depending

EPSTEIN
DRANGEL LLP

- 9 -                                          CASE NO. 23-cv-353-GW-ASx

THIRD AMENDED COMPLAINT

on usage or other indoor conditions. The lifespan of the AirDoctor UltraHEPA Filters is based on testing reported in the documents attached hereto as **Exhibit I**.

51.    In order to meet Plaintiff's performance and efficiency standards the filter used in the AirDoctor Air Purifier must use high quality filter material, proper pleating (including total filter material area) and a sufficient number of pleats.

52.    The AirDoctor UltraHEPA Filters have 138 pleats and are specifically designed to have the proper filter material area size and utilize high quality filter material.

53.    Plaintiff sells its genuine replacement AirDoctor UltraHEPA Filters on the AirDoctor Website and third-party sites such as Amazon.com. *See* **Exhibit J**.

54.    The AirDoctor Website allows consumers to view the laboratory test results:



*See* The AirDoctor Website (last accessed: December 10, 2025).

55.    Plaintiff advises consumers that the failure to use Plaintiff's genuine AirDoctor UltraHEPA Filters specifically designed for the AirDoctor Air Purifiers can damage the unit and may void the warranty for the product.

## II.    Defendants' Unfair, Unlawful and Misleading Business Practices

56. In an effort to capitalize and profit off the goodwill and success of Plaintiff's AirDoctor Brand, AIRDOCTOR Mark, ULTRAHEPA Mark, AirDoctor Air Purifiers and AirDoctor UltraHEPA Filters, Defendants have flooded the marketplace, chiefly on Amazon.com, with Substandard Filters that Defendants claim are "replacements" or "compatible with" or "fit" AirDoctor Air Purifiers, as well as that they meet the industry accepted HEPA standard, in order to trick Plaintiff's customers into purchasing Defendants' Substandard Filters.

57. As set forth below, upon information and belief, Defendants' Substandard Filters use cheaper and ineffective materials in the frames for Substandard Filters, have a smaller pleat area than the UltraHEPA Filters and, also unlike genuine AirDoctor UltraHEPA Filters, do not create the proper seal in the AirDoctor Air Purifiers.

58. Prior to offering the Substandard Filters for sale, Defendants failed to conduct proper testing on the Substandard Filters to ensure that they are compatible with the Air Doctor Air Purifiers.

59. Defendants' use of cheaper, ineffective materials, coupled with the lack of a proper seal in the AirDoctor Air Purifiers, allows unfiltered air to pass directly between and/or around the frame and filter materials, thereby further reducing the ability to meet the Plaintiff's performance and efficiency standards, the industry accepted HEPA standard or properly filter air when used in the AirDoctor Air Purifiers.

60. Plaintiff purchased Defendants' Substandard Filters in this District in 2021 and 2024 through Amazon.com and had them tested by an independent third-party laboratory. The testing confirmed that Defendants' advertising claims are false and Defendants' Substandard Filters are not replacements for AirDoctor UltraHEPA Filters.

61. Further the Substandard Filters also fall short of AirDoctor's own performance and efficiency standards when used within the AirDoctor Air Purifiers in that they lack testing to show they would maintain the performance necessary for an ENERGY STAR certification, have less pleats, a smaller filter area, are made out of inferior materials, have a shorter lifespan, and accordingly, the Substandard Filters are

not a "replacement for" genuine AirDoctor UltraHEPA Filters, are not "compatible with" with AirDoctor Air Purifiers, and/or do not meet the "HEPA" standard.

62.     In addition, one or more of Defendants' advertisements admit that they last six (6) months as compared to Plaintiff's AD3000 AirDoctor Air Purifiers which last for approximately a year for its AirDoctor UltraHEPA Filters.[3]

63.     One or more of Defendants' Substandard Filters are incompatible with Plaintiff's AirDoctor Air Purifier filter indicator, which is set for filters that last twelve (12) months.

64.     Upon information and belief, Defendants' own testing filed in connection with Defendants' counterclaims was performed on different filters than the Substandard Filters that they offered for sale beginning in 2021 under the isinlive Marks and those sold beginning in 2023 under the LINNIW Marks and JORAIR Marks on Amazon.com.

65.     One or more of the Defendants falsely advertised and sold a variety of purported replacement air filters, including the Substandard Filters under the "LINNIW", "isinlive" and "JORAIR" Marks on Amazon.com between 2021 and 2024.

66.     Defendant Lonni owned U.S. Trademark Reg. Nos. 5,830,125 for "LINNIW" for a variety of goods in Class 24 and 5,930,694 for " *LiNNIW* " for a variety of goods in Class 21 (collectively, "LINNIW Registrations") and U.S. Trademark Application Serial No. 98/226,128 for "LINNIW" for a variety of goods in Class 11 (the "LINNIW Application") (the LINNIW Registrations and LINNIW Application are hereinafter collectively referred to as the, "LINNIW Marks"), at the time the Complaint was filed in this action.

67.     At all relevant times, Defendant Lonni was and still is the owner and operator of the "Lonnihome" Amazon.com storefront through which it falsely advertised and sold

---

[3] Its Carbon/VOC may last for six (6) months, depending on usage or other indoor conditions.

the isinlive Substandard Filters.[4]

68. On August 10, 2023, only two weeks after Plaintiff filed supplemental briefing on Defendant Lonni's Motion to Dismiss, presenting evidence that the LINNIW Marks connected Lonni to the LINNIW Substandard Filters that form the basis for this action, Lonni assigned the LINNIW Marks to Defendant Shenzhen Dazhan.

69. Defendant Shenzhen Dazhan owns U.S. Trademark Reg. Nos. 5,873,138 for "**JORAIR**" covering goods in Class 21, 7,648,464 for "**JORAIR**" covering goods in Class 11 and 7,703,411 for "JORAIR" for goods in Class 21 ("JORAIR Marks").

70. At all relevant times, Defendant Shenzhen Dazhan was and still is the owner and operator of the "Joba-1" Amazon.com storefront through which it falsely advertised and sold the LINNIW Substandard Filters.[5]

71. Defendant Mingdao owns U.S. Trademark Reg. Nos. 6,777,146 for " iSinlive " covering goods in Class 7; 5,448,261 for "iSinlive " covering goods in Class 21; 5,334,404 for "isinlive" covering goods in Class 21 and 7,501,898 for " isinlive " covering goods in Class 11 (hereinafter "isinlive Marks").

72. At all relevant times, Defendant Lianrui was and still is the owner and operator of the "JORAIR-FILTER" Amazon.com storefront through which it falsely advertised and sold JORAIR Substandard Filters.[6]

73. Upon information and belief, Defendant Lonni's manager is also employed

---

[4] *See* https://www.amazon.com/sp?ie=UTF8&seller=A2ZBQLIMVNTIIJ&asin=B08GC3FK8P&ref_=dp_merchant_link&isAmazonFulfilled=1 (last accessed: December 10, 2025).

[5] *See* https://www.amazon.com/sp?ie=UTF8&seller=A39AOEFQGOYZS1&asin=B0B42SDDWZ&ref_=dp_merchant_link&isAmazonFulfilled=1 (last accessed: December 10, 2025).

[6]*See* https://www.amazon.com/s?me=A1SFJ5GVE2IHC&marketplaceID=ATVPDKIKX0DER (last accessed: December 10, 2025).

by Defendant Xincheng.

74.     Upon information and belief, Xincheng is directly involved in, and exercises substantial control over, Defendants' business operations.

75.     Upon information and belief, Xincheng performs critical functions such as filing Defendants' taxes, handling trademark registrations and assignments (including the assignment of several of the trademarks under which Defendants' Substandard Filters were sold), coordinating the ordering and shipping of Substandard Filters for sale to Amazon in the United States, and coordinating and preparing documents Defendants produced in response to Plaintiff's discovery demands in response to the FAC.

76.     Upon information and belief, Xincheng chooses which products are sold by one or more of the Defendants.

77.     Upon information and belief, Xincheng purchases all of the Substandard Filters from the manufacturer and Xincheng directs that the Substandard Filters are shipped from the manufacturer to Amazon fulfillment centers in the United States.

78.     Upon information and belief, Xincheng organized and attended meetings between the manufacturer and Defendants in this case regarding the Substandard Filters at issue in this action.

79.     Upon information and belief Xincheng is not only aware of how the Substandard Filters are advertised and marketed but is directly involved in assisting Defendants' in and/or creating the false advertising alleged herein.

80.     Upon information and belief, Xincheng arranged for HEPA testing of Defendants' Substandard Filters for purposes of sale on Amazon and for purposes of this litigation, including, without limitation, coordinating shipment of Defendants' Substandard Filters to the respective testing facilities.

81.     Upon information and belief, Xincheng directs and coordinates the production of the Substandard Filters by the factory.

82.     On Amazon.com, one or more Defendants advertised that their LINNIW Substandard Filters are "HEPA" grade, are "premium H13 true HEPA", have "upgraded

HEPA smart technology", are "compatible" with AirDoctor Air Purifiers and "replace" Plaintiff's AirDoctor UltraHEPA Filters, and have "perfect compatibility" with the AirDoctor Air Purifier in 2023 and 2024.  *See* **Exhibit K**.



83.    Defendants also include the "HEPA" claim on the filters themselves, and Plaintiff's AirDoctor Air Purifier model number "AD3000 H13 True HEPA Filter…" as well as the "HEPA" claim on the packaging for the LINNIW Substandard Filters as depicted below:

 

84.    In their advertising, labeling, and packaging, one or more Defendants convey the message to consumers that their LINNIW Substandard Filters meet Plaintiff's performance and efficiency standards and meet the HEPA standard to trap 99.97% of airborne particles with a size of 0.3 microns. Moreover, by claiming their LINNIW Substandard Filters are "compatible" and "fit" AirDoctor Air Purifiers, Defendants indicate that their LINNIW Substandard Filters perform just as Plaintiff's genuine AirDoctor UltraHEPA Filters do within the AirDoctor Air Purifiers, and that they

properly fit in the AirDoctor Air Purifiers to maintain a sealed system.

85. Consumer comments on Amazon.com confirm that Defendants' advertising of the LINNIW Substandard Filters conveyed the express message to consumers that the LINNIW Substandard Filters meet HEPA standards, provide equivalent performance to genuine AirDoctor UltraHEPA Filters, and fit properly in the AirDoctor Air Purifiers.



*See* Exhibit K.

86. Further, by using the terms "AIR DOCTOR." and "AD3000" and "Replacement Filters Compatible with AIRDOCTOR 4-in-1 Home Air Purifier AIR DR. AD3000", Defendants' advertising for the LINNIW Substandard Filters conveyed the express claims to consumers that their LINNIW Substandard Filters provide the equivalent performance to AirDoctor UltraHEPA Filters when used in the AirDoctor Air Purifiers.

87. However, independent, third-party laboratory testing of the LINNIW Substandard Filters confirms that Defendants' advertising is demonstrably false. Namely, testing of Defendants' LINNIW Substandard Filters confirms that their performance fails to meet AirDoctor's performance and efficiency standards and the minimum HEPA standard to filter 99.97% of particles as small as 0.3 microns. *See* **Exhibits L** (test purchase) and **M** (lab testing results). In other words, the LINNIW Substandard Filters does not meet the performance and efficiency of genuine AirDoctor UltraHEPA Filters, does not "replace" Air Doctor AirDoctor UltraHEPA Filters, and are not "compatible" or "replacements".

88. Also, on Amazon.com, one or more Defendants advertised that their isinlive

Substandard Filters are "HEPA" grade, are "compatible" with Plaintiff's AirDoctor Air Purifiers between 2021 and 2024. *See* **Exhibit N**.

89. On Amazon.com, between 2021 and 2024 one or more Defendants directly competed with Plaintiff and specifically advertised that the isinlive Substandard Filters:

      a. 【FULL COMPATIBILITY】 -- Our High Quality AD3000 Replacement filter is compatible with AIRDOCTOR 4-in-1 AD3000 Air Puri-fier for Home and Large Rooms models AD3000, AD3000M, AD3000pro, Replace Part No. ADF3001, ADF3002. NOTE: Please check your model fit for AD3000 replacement filter before purchasing.

      b. 【PREMIUM QUALITY】 -- The AD3000 filter set for AIRDOCTOR air puri-fier is design with true HEPA filter including 1 H13 TRUE HEPA Filter + 2 Activated Carbon Filter + 4 Pre-filters (Note:2 Pre-filters have been attached to the carbon filter meet your needs and bring convenience).

      c. 【H13 TRUE HEPA FILTER】 -- High Performance AD3000 replacement filter with H13 True HEPA 3-Stage system made of high quality material, can effectively attaching 99.97% of all airborne particles as tiny as 0.3 microns, including all pet odors,cooking odors, dust, hairs, pet fur, lint and gases from your home to improve the air quality and your health.

*See* **Exhibit N** (emphasis added).

90. Defendants also emphasized that the isinlive Substandard Filters meet the HEPA standard and is a "Premium True HEPA Filter" and "H13 True HEPA Filter" and "3-Stage [] Filtration" (*See* Exhibit M):



91.     Defendants stated that their filters meet the "HEPA" standard on the isinlive Substandard Filters themselves as depicted below:



92.     In addition, Defendants advertised "full compatibility" and "perfect match" for the AirDoctor Air Purifiers:



93.     In their advertising, labeling and packaging, one or more Defendants conveyed the message to consumers that their isinlive Substandard Filters meet Plaintiff's performance and efficiency standards and the HEPA standard. Moreover, by claiming their isinlive Substandard Filters are "compatible" with AirDoctor Air Purifiers, Defendants indicated that their insinlive Substandard Filters perform just as Plaintiff's genuine AirDoctor UltraHEPA Filters do within the AirDoctor Air Purifiers, and that they properly fit in the AirDoctor Air Purifiers to maintain a sealed system.

94.     Consumer reviews on Amazon.com confirm that Defendants' advertising for the isinlive Substandard Filters conveyed the express message to consumers that the isinlive Substandard Filters meet HEPA standards, provide equivalent performance to genuine AirDoctor UltraHEPA Filters, and fit properly in the AirDoctor Air Purifiers. For example:



95.     Further, by using the terms "AirDoctor" and "AD3000" and "AD3000, AD3000M, AD3000pro, Replace Part No. ADF3001, ADF3002", Defendants' advertising for their isinlive Substandard Filters conveyed the express claims to consumers that their isinlive Substandard Filters provide the equivalent performance to

AirDoctor UltraHEPA Filters when used in the AirDoctor Air Purifiers.

96.    However, independent, third-party laboratory testing of Defendants' isinlive Substandard Filters confirms that Defendants' advertising for the isinlive Substandard Filters is demonstrably false. Namely, testing of Defendants' isinlive Substandard Filters inside the AirDoctor Air Purifiers confirms that they fail to create an airtight seal and their performance fails to meet AirDoctor's performance and efficiency standards and the minimum HEPA standard to filter 99.97% of particles as small as 0.3 microns. *See* **Exhibits O** (test purchase) and **P** (lab testing results). In other words, the isinlive Substandard Filters do not meet the performance and efficiency of genuine AirDoctor UltraHEPA Filters.

97.    Finally, also on Amazon.com, in 2023 and 2024 one or more Defendants advertised their JORAIR Substandard Filters as "medical grade H13 true HEPA filter," that provide "H13 True HEPA -- 99.97% High-Efficincy Filtration", and are "Compatible" with Plaintiff's AirDoctor Air Purifiers, and "AD3000 Replacement Filters For AIR DOCTOR 1 pack H13 True HEPA." *See* **Exhibit Q**.



- 🌀 【H13 True HEPA -- 99.97% High-Efficincy Filtration】 These AD3000 replacement filters use medical grade H13 true HEPA filter , which meets the high-Efficiency Particulate Air (HEPA) standard. It can filter 99.97% of airborne parti cles larger than 0.3 microns.

98.    Defendants also included the "HEPA" claim on the JORAIR Substandard Filters themselves, on the product packaging, *see* **Exhibit Q**.

99. In their advertising, labeling, and packaging, Defendants conveyed the message to consumers that its JORAIR Substandard Filters meet AirDoctor's performance and efficiency standards and the HEPA standard to trap 99.97% of airborne particles with a size of 0.3 microns. Moreover, by claiming their JORAIR Substandard Filters are "compatible with" and "for" AirDoctor Air Purifiers, Defendants indicate that their JORAIR Substandard Filters perform just as Plaintiff's genuine AirDoctor UltraHEPA Filters do within the AirDoctor Air Purifiers, and that they properly fit in the AirDoctor Air Purifiers to maintain a sealed system.

100. Consumer reviews on Amazon.com confirm that Defendants' advertising for the JORAIR Substandard Filters conveyed the express message to consumers that the JORAIR Substandard Filters meet HEPA standards, provide equivalent performance to genuine AirDoctor UltraHEPA Filters, and fit properly in the AirDoctor Air Purifiers. For example:



101.    Moreover, in addition to claiming their JORAIR Substandard Filters are "compatible with" a "replacement" for genuine AirDoctor UltraHEPA Filters and are "for" AirDoctor Air Purifiers, Defendants included a photo showing the distinctive housing of the AirDoctor Air Purifier with Defendants' JORAIR Substandard Filters to further convince consumers that their JORAIR Substandard Filters are "compatible" and properly fit in the AirDoctor Air Purifiers to maintain a sealed system. *See* **Exhibit Q**.

102.    Defendants also included AirDoctor part numbers "ADF3001, ADF3002" in their description of the JORAIR Substandard Filters to further convince users that their

JORAIR Substandard Filters are the same quality and provide the same benefits as genuine AirDoctor UltraHEPA Filters.

**About this item**

- 🎁 【Application】 AD3000 Replacement Filters Combo Compatible with AIRDOCTOR For AIR DOCTOR 4-in-1 Home AIR DR. AD3000 AD3000M 3000PRO, Compare to Part NO.: ADF3001, ADF3002

*See* **Exhibit Q**.

103.   By using the terms "Air Doctor," "AD3000," "AD3000M," "AD3000pro," "AD3000 Replacement Filters Combo Compatible with AIRDOCTOR For AIR DOCTOR 4-in-1 Home," and indicating that their products are a "AD3000 replacement filter set for AIRDOCTOR," along with AirDoctor part numbers, Defendants' advertising sought to support their express claims to consumers that their JORAIR Substandard Filters provide the same quality and equivalent performance to AirDoctor UltraHEPA Filters when used in the AirDoctor Air Purifiers.

104.   On Amazon.com, Defendants directly competed with Plaintiff and specifically advertised the JORAIR Substandard Filters as:

      a. H13 True HEPA -- 99.97% High-Efficiency Filtration

      b. These AD3000 replacement filters use medical grade H13 true HEPA filter, which meets the high-Efficiency Particulate Air (HEPA) standard. It can filter 99.97% of airborne particles larger than 0.3 microns.

*See* **Exhibit Q**.

105.   However, independent, third-party laboratory testing of Defendants' JORAIR Substandard Filters confirms that Defendants' advertising is demonstrably false. Namely, testing of Defendants' JORAIR Substandard Filters confirms that their performance fails meet to AirDoctor's performance and efficiency standards and the minimum HEPA standard to filter 99.97% of particles as small as 0.3 microns. *See* **Exhibits R** (test purchases) and **S** (lab testing results). In other words, Defendants' JORAIR Substandard Filters do not meet the performance and efficiency of genuine

AirDoctor UltraHEPA Filters, are not a "replacement" for AirDoctor UltraHEPA Filters, and are not "compatible" with AirDoctor Air Purifiers.

### III.   Harm to Plaintiff

106. Defendants' false advertising has harmed (and continues to harm) AirDoctor, its sales, its goodwill and its reputation. Moreover, Defendants have deceived AirDoctor's customers in purchasing filters that Defendants claim are equivalent to genuine AirDoctor UltraHEPA Filters, when they are not.

107. Defendants' conduct has injured AirDoctor, AirDoctor's customers, and placed the health of those customers at risk who depend on their AirDoctor Air Purifiers to perform at the appropriate and advertised efficiency.

108. Defendants' conduct has directly diverted sales of Plaintiff's genuine AirDoctor UltraHEPA Filters from Plaintiff to Defendants' Substandard Filters and has harmed Plaintiff's goodwill and reputation.

109. During the relevant time period, AirDoctor's UltraHEPA Filters for the AirDoctor Air Purifier were typically sold to consumers for $157.00 for a combo pack.

110. During the relevant time period, Defendants' Substandard Filters were sold at substantially lower prices than AirDoctor's UltraHEPA Filters, for example the JORAIR Filters were sold for $44.99 for a combo pack, isinlive Substandard Filters were sold for $45.99 for a combo pack and LINNIW Substandard Filters were sold for $49.86 for a combo pack, all less than the price of the AirDoctor's UltraHEPA Filters.

111. Upon information and belief, Defendants' false advertising statements at issue herein have boosted the sales and profits of Defendants' Substandard Filters and have harmed Plaintiff's sales, profits and the goodwill associated with Plaintiff's AirDoctor's UltraHEPA Filters and the AirDoctor brand by diverting certain consumers away from AirDoctor's UltraHEPA Filters Defendants' lower priced Substandard Filters.

112. Upon information and belief, many consumers who would choose to spend their money to buy an AirDoctor Air Purifier are likely to choose to buy Defendants' lower priced Substandard Filters if they are induced by Defendants' advertising to believe

that the performance of Defendants' Substandard Filters are just as good, or better, than AirDoctor's UltraHEPA Filters as to a product attribute that is important to the consumer. Here, however, Defendants' statements of perfect compatibility are blatantly false.

113.   Upon information and belief, sales of AirDoctor's UltraHEPA Filters, and the resulting profits, have been lost, and will continue to be lost, as a result of consumers who otherwise would have purchased AirDoctor's UltraHEPA Filters choosing instead to purchase Defendants' Substandard Filters based on the mistaken belief, caused by Defendants' false advertising discussed herein, that Defendants' Substandard Filters meet AirDoctor's performance and efficiency standards.

114.   Upon information and belief, when Defendants' false claims of HEPA performance and perfect compatibility are combined with Defendants' lower purchase prices, they have, upon information and belief, induced and will continue to induce consumers to adopt the mistaken impression that AirDoctor's UltraHEPA Filters are overpriced or not worth the price charged for them. Upon information and belief, Defendants' false claims, for this reason, have significantly damaged and will continue to damage AirDoctor's goodwill.

115.   Upon information and belief, Defendants' foregoing actions were undertaken willfully and wantonly, and with a conscious disregard for AirDoctor's rights.

116.   As a direct and proximate result of Defendants' false and deceptive campaign, AirDoctor is suffering immediate and continuing irreparable injury for which there is no adequate remedy at law.

117.   As discussed above, Defendants' actions have caused and will likely continue to cause AirDoctor to suffer substantial damages, including loss of sales and profits of its AirDoctor's UltraHEPA Filters and loss of goodwill.

101.   The foregoing acts have occurred in, or in a manner affecting, interstate commerce.

## IV.   __Damages__

118.   Plaintiff uses Helium-10's "Black Box" research tool to track sales of competitive products on Amazon.com.

119. Helium-10's Black Box research tool pulls "data directly from Amazon and currently tracks the existing sales demand of over 450 million products." *See* https://www.helium10.com/tools/product-research/black-box/.

120. Based on a comparison of Helium-10's data on the sales of Plaintiff's products with Plaintiff's own Amazon.com sales figures, Helium-10's data is extremely accurate within a six percent (6%) variance.

121. Plaintiff used Helium-10's Black Box service to track the sales of Defendants' Substandard Filters. From December 2021 to April 2024, Helium-10 reported units sold, revenue by Defendant as follows: Defendants sold 27,179 units of LINNIW Substandard Filters resulting in revenues of $1,257,071.40; 3,207 units of isinlive Substandard Filters resulting in revenues of $148,947.74 and 1,484 units of JORAIR Substandard Filters $70,024.41 (collectively "Defendants' Revenue"). Due to Defendant Xincheng's involvement in Defendants' businesses, Xincheng is jointly and severally liable for the full amount of damages sustained by Plaintiff.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF LANHAM ACT
### FALSE ADVERTISING
### (15. U.S.C. § 1125(a))

122. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

123. Plaintiff and Defendants were and/or are direct competitors in the market for the sale of replacement filters for Plaintiff's AirDoctor Air Purifiers.

124. Defendants have used false and misleading descriptions and representations of fact in commercial advertising and promotion about the nature, characteristics, and qualities of their Substandard Filters. Those false and misleading descriptions and representations of fact have deceived or have the tendency to deceive a substantial portion of the relevant purchasing public.

125. As alleged above, Defendants' advertising and promotion of purported replacement filters for Plaintiff's AirDoctor Air Purifiers contained demonstrably false statements and misrepresentations, which has caused, and continues to cause, Plaintiff to suffer damages to its business and goodwill, loss of sales, and profits it would have made but for Defendants' wrongful acts. These false and misleading statements by Defendants constitute false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

126. Defendants cause, and have caused, their false and misleading advertising to enter interstate commerce, including by making false and misleading statements in advertisement and promotional materials to consumers and others in the distribution chain throughout the United States (including this District), including without limitation, on Amazon.com and on packaging and labeling for the Substandard Filters as well as on the Substandard Filters themselves.

127. Defendants' false and misleading statements were and/or are material in that they have influenced and were and/or are likely to influence the purchasing decisions of consumers and others in the distribution chain because they relate to inherent qualities or characteristics of Defendants' Substandard Filters.

128. As a direct and proximate result of the wrongful acts of Defendants as alleged above, Plaintiff has suffered, and will continue to suffer, substantial damage to its business reputation, goodwill, and market share, as well as loss of profits in an amount not yet ascertained.

129. Defendants' false advertising will continue to harm Plaintiff (and Plaintiff's customers), causing irreparable injury for which there is no adequate remedy at law, unless permanently enjoined by this Court.

130. Plaintiff is entitled to monetary damages in the amount of Plaintiff's actual damages or Defendants' profits resulting from Defendants' false advertising, in an amount to be proven at trial.

131. Plaintiff is also entitled to an accounting of Defendants' profits resulting

from its Lanham Act violations.

132. Upon information and belief, Defendants' false advertising is willful, knowing, calculated to deceive, and was undertaken in bad faith. As a result, this Court should determine that this is an exceptional case and award Plaintiff enhanced damages, its attorneys' fees, and costs incurred in prosecuting this action.

## COUNT II
## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
### (Cal. Bus. & Prof. Code, § 17200, et seq.)

133. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

134. California Business and Professions Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

135. As alleged herein, Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendants' actions.

136. For the reasons discussed above, Defendants have engaged in unfair, deceptive, untrue and misleading advertising and unlawful, unfair and fraudulent business practices in violation of California Business & Professions Code §17200. Defendants' conduct caused substantial injury to Plaintiff. Plaintiff has suffered injury in fact and has lost money as a result of Defendants' unfair conduct.

137. Pursuant to section 17203 of the California Business & Professions Code, Plaintiff seeks an order of this court enjoining Defendants from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including, but not limited to: (a) selling, marketing, or advertising the Substandard Filters with false representations set forth above; (b) engaging in any of the illegal, fraudulent, misleading, unlawful, unfair and/or deceptive conduct described herein; and (c) engaging in any other conduct found by the Court to be illegal, fraudulent, misleading, unlawful, unfair and/or deceptive conduct.

138. In addition, Plaintiff requests that this Court enter such orders or judgments as may be necessary to restore Plaintiff any money which may have been acquired by means of such unlawful, unfair, or fraudulent practices as provided in Business & Professions Code § 17203, and for such other relief as set forth below.

## COUNT III
## VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW
### (Cal. Bus. & Prof. Code, § 17500, et seq.)

139. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

140. As alleged herein, Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendants' actions.

141. Defendants violated Business & Professions Code § 17500 by publicly disseminating false and misleading commercial advertising and promotions about the nature, characteristics, and qualities of their Substandard Filters.

142. Defendants' false and misleading advertisements were disseminated to increase the sales of the Substandard Filters.

143. Defendants knew or should have known that their advertisements for the Substandard Filters were false and misleading and that those advertisements would induce consumers to purchase the Substandard Filters. Such advertisements have deceived and are likely to deceive the consuming public, in violation of Business & Professions Code § 17500.

144. Defendants are aware, or by the exercise of reasonable care should have been aware, that the representations in the listings for the Substandard Filters, on the packaging and labeling for the Substandard Filters and on the Substandard Filters themselves were untrue or misleading.

145. Plaintiff has suffered injury in fact and has lost money as a result of Defendants' false representations and false advertising.

146. Pursuant to Business & Professions Code § 17535, Plaintiff seeks an order

of this Court enjoining Defendants from continuing to engage, use, or employ their advertisement and sale of their purported replacements for genuine AirDoctor UltraHEPA Filters.

147. Plaintiff seeks an order requiring Defendants to disclose such misrepresentations, including all prior representations, and additionally requests an order awarding Plaintiff restitution of the money wrongfully acquired by Defendants by means of said misrepresentations and false advertising.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment against Defendants as follows:

A.    Finding that Defendants have violated the Lanham Act, the California Unfair Competition Law, and the California False Advertising Law;

B.    Entering Judgment in favor of Plaintiff;

C.    Temporarily, preliminarily, and permanently enjoining, restraining, and forbidding Defendants and their principals, servants, officers, directors, partners, agents, representatives, shareholders, employees, affiliates, successors, assignees, and all others acting in concert, or who participates with Defendants, from further violations of the Lanham Act, the California Unfair Competition Law, and the California False Advertising Law as alleged herein;

D.    Requiring Defendants to disseminate, at their sole and exclusive cost, corrective advertising to consumers;

E.    Awarding to Plaintiff actual, compensatory, consequential, statutory, special, and/or punitive damages in an amount to be proven at trial and/or otherwise provided for by law in the amount of no less than either (1) Plaintiff's lost profits as of the date of this FAC, (2) Defendants' Revenue, or (3) Defendants' profits in an amount to be proven at trial plus any lost profits, revenue or profits earned by Defendants and/or any other damages based on any and all additional sales of Substandard Filters discovered following the date of this FAC through trial  or summary or default judgment;

F.    Awarding Plaintiff restitution;

G.     Awarding Plaintiff interest, costs, and reasonable attorneys' fees incurred by Plaintiff in prosecuting this action; and

H.     Awarding any and all further relief that this Court deems just and proper.

Respectfully submitted,

DATED: December 10, 2025          EPSTEIN DRANGEL LLP

By:     *s/ Peter J. Farnese*
        Peter J. Farnese

Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

DATED: December 10, 2025          EPSTEIN DRANGEL LLP

By:     *s/ Peter J. Farnese*
        Peter J. Farnese

Attorneys for Plaintiff